**Slip Op. 07-94**

UNITED STATES COURT OF INTERNATIONAL TRADE

_____

WILTON INDUSTRIES, INC.,                 :

                                        :

                         *Plaintiff*,

                                          :       Court No. 00-11-00528

             v.

                                        :

UNITED STATES,                           :

                                          :

                         *Defendant*.

_____:

[Plaintiff's Motion for Summary Judgment granted in part; Defendant's Cross-Motion granted in part; Judgment to enter accordingly.]

Dated: June 11, 2007

    <u>Neville Peterson LLP</u> (<u>John M. Peterson</u>, <u>Michael T. Cone</u>, and <u>Maria E. Celis</u>), for Plaintiff.

    <u>Peter D. Keisler</u>, Assistant Attorney General; <u>Barbara S. Williams</u>, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (<u>Mikki Graves Walser</u>); <u>Yelena Slepak</u>, Office of the Assistant Chief Counsel, International Trade Litigation, U.S. Customs and Border Protection, U.S. Department of Homeland Security, Of Counsel; for Defendant.

**OPINION**

RIDGWAY, Judge:

    At stake in this action is the tariff classification of more than 280 articles imported by plaintiff Wilton Industries, Inc. – including cake toppers, as well as wedding cake figurine/topper bases, separator plates, pillars, columns, plate legs, and plate pegs; wedding cake fresh flower holders, inserts, and bowls; place card holders; various models and styles of bakeware; cookie

cutters and cookie stamps; cake picks; and cake presses and cooking tools.  The merchandise was imported from the People's Republic of China through the Port of Chicago between May 5, 1999 and July 22, 1999.  All entries were liquidated between March 17, 2000 and June 2, 2000.

Over the course of litigation, the parties have reached agreement on the classification of 123 articles.  *See* Stipulation (Oct. 16, 2002).[1]  In addition, Wilton has abandoned its claims as to another 15 articles.  *See* Plaintiff's Amended Statement of Material Facts As To Which No Genuine Issue Exists ¶¶ 2-6.

Now pending before the Court are the parties' cross-motions for summary judgment as to the 158 articles still at issue.  Wilton contends that all remaining merchandise is properly classifiable as "festive articles" under heading 9505 of the Harmonized Tariff Schedule of the United States ("HTSUS"),[2] duty-free.  *See generally* Memorandum in Support of Plaintiff's Motion for Summary Judgment ("Pl.'s Brief"); Memorandum in Opposition to Defendant's Cross-Motion for Summary Judgment ("Pl.'s Reply Brief"); Supplement to Plaintiff's Memorandum of Points and Authorities ("Pl.'s Supp. Brief"); Plaintiff's Response to Defendant's Supplemental Memorandum ("Pl.'s Supp. Reply Brief").

According to the Government, however, the U.S. Customs Service properly classified the remaining merchandise under HTSUS heading 3924, heading 3926, heading 7615, or heading 7323

---

[1]The parties have agreed that their Stipulation is to be incorporated into the Judgment in this action.  All articles subject to the Stipulation are classified as "festive articles" under one of two subheadings of HTSUS heading 9505.  *See* Stipulation.

[2]All citations are to the 1999 version of the HTSUS (including all Section and Chapter Notes, and the General Rules of Interpretation).  In addition, except as otherwise noted, all citations to the Explanatory Notes are to the 1996 version, the relevant provisions of which were in effect in 1999.

(depending on the item at issue),[3] liquidating it at rates of duty ranging from 3.1% to 6.5% *ad valorem*. *See generally* Defendant's Opposition to Plaintiff's Motion for Summary Judgment and Cross-Motion for Summary Judgment ("Def.'s Brief"); Defendant's Reply to Plaintiff's Opposition to Defendant's Cross-Motion for Summary Judgment ("Def.'s Reply Brief"); Defendant's Supplemental Memorandum in Opposition to Plaintiff's Motion for Summary Judgment and In Support of Defendant's Cross-Motion for Summary Judgment ("Def.'s Supp. Brief"); Defendant's Reply to Plaintiff's Supplement to Plaintiff's Memorandum of Points and Authorities ("Def.'s Supp. Reply Brief").

For the reasons set forth below, both Plaintiff's Motion for Summary Judgment and Defendant's Cross-Motion for Summary Judgment are granted in part and denied in part.

## I. Background

On its website – an online paradise for the aspiring Martha Stewarts of the world – plaintiff Wilton Industries, Inc. promotes itself as "the number one preferred brand name in baking and cake decorating products for over 50 years."[4]  Wilton is both a retailer (selling directly to the public,

---

[3]HTSUS heading 3924 covers "Tableware, kitchenware, other household articles and toilet articles, of plastics," while heading 3926 covers "Other articles of plastics and articles of other materials of headings 3901 to 3914."  Heading 7615 covers "Table, kitchen or other household articles and parts thereof, of aluminum; pot scourers and scouring or polishing pads, gloves and the like, of aluminum; sanitary ware and parts thereof, of aluminum."  And heading 7323 covers "Table, kitchen or other household articles and parts thereof, of iron or steel; iron or steel wool; pot scourers and scouring or polishing pads, gloves and the like, of iron or steel."

[4]According to Wilton's website, the Illinois-based company markets a wide range of products.  Wilton's Online Store includes a Baby Shop, a Bakeware Shop, Books & Videos, a Cake Decorating Shop, a Candy Shop, a Cookie Shop, a Party Shop, a Seasonal Shop, a Theme & Character Shop, a Wedding Shop, and Stationery.

through its Online Store and its catalog, the "Yearbook of Cake Decorating") and a wholesaler

(selling to general merchandise and specialty stores, such as Target, Wal-Mart, and Michael's).[5]

_____

Among other things, Wilton's website also offers tips on cake decorating techniques, suggested party ideas, recommended recipes and projects, details about contests, information about Wilton's own School of Cake Decorating & Confectionary Art (as well as information on "Wilton Method" classes at locations nationwide), and an online "Discussion Forum" devoted to the exchange of ideas on cake decorating and similar arts.

[5]Except as otherwise noted, the information in this section is drawn generally from the Affirmation filed by Wilton, from the Statements of Material Facts Not in Dispute filed by the parties, and from the pages printed from Wilton's website and the pages from Wilton's Yearbook catalog which Wilton filed in support of its motion.

Throughout the course of litigation, the Government has criticized the quantum, the quality, and the timing of the submission of Wilton's evidence. Wilton, in turn, has criticized the Government for proffering no evidence of its own (and, indeed, apparently conducting little or no discovery in this matter). *See* Pl.'s Supp. Brief at 11-12; Pl.'s Supp. Reply Brief at 5-6.

In Defendant's Response to Plaintiff's Statement of Facts, for example, the Government emphasized that the exhibits filed with Wilton's opening brief did not include depictions of some of the bakeware and some of the cookie cutters and cookie stamps at issue (although the Government failed to specify which were missing). *See* Def.'s Response to Pl.'s Statement of Facts ¶¶ 8-9; *see also* Def.'s Reply Brief at 10 n.3. The Government similarly criticized Wilton for not filing affidavits in support of its case. *See* Def.'s Brief at 3, 21; Def.'s Reply Brief at 9.

When Wilton later sought to cure the deficiencies in its exhibits, however, the Government criticized Wilton's submissions as "belated." *See*, *e.g.*, Def.'s Supp. Reply Brief at 1-2; Letter to Court from Counsel for Defendant to Court (May 16, 2007). And the Government has argued that the affirmation that Wilton filed should be stricken from the record on various grounds. *See generally* Def.'s Reply Brief at 9-12.

To be sure, Wilton is obligated to submit proof documenting the nature of its merchandise; and, to be sure, it largely defaulted on that obligation until relatively recently. It is not the job of the court or opposing counsel to police the completeness of a party's evidence, and then notify that party of any deficiencies. The bottom line, however, is that the Government has not even alleged – much less demonstrated – any actual prejudice as a result of Wilton's belated submissions in this action.

The Government's objections to the affirmation that Wilton filed are also wide of the mark. Accordingly, the Government's motion to strike must be denied. The affirmation *is* "bare-bones," to put it charitably. But the Government's principal criticisms are that the affirmation is undated,

and that the affiant was not in Wilton's employ at the time of the events at issue here. *See generally* Def.'s Reply Brief at 9-12. As a general matter, however, "the absence of the formal requirements of a jurat in a sworn affidavit does not invalidate the statements [in the affidavit] or render them inadmissible." Peters v. United States, 408 F.2d 719, 722 (Ct. Cl. 1969) (*quoted in* Pfeil v. Rogers, 757 F.2d 850, 859 (7th Cir. 1985)). Thus, in the interests of justice, trial courts are admonished not to be "unnecessarily hypertechnical and overly harsh on a party who unintentionally fails to make certain that all technical, non-substantive requirements of execution are satisfied." Pfeil, 757 F.2d at 859 (holding that district court erred in rejecting affidavits for lack of notarial seal); 11 James Wm. Moore *et al.*, Moore's Federal Practice § 56.14[1][b] (3d ed. 2006). Certainly the Government has not suggested that the absence of a date on Wilton's affirmation casts doubt on the truth of any specific statement therein. *See generally* Pl.'s Supp. Brief at 12-13.

Moreover, the mere fact that the affiant was not in the employ of a company at the time of specific events does not *ipso facto* mean that the affiant lacks the personal knowledge required to attest to facts that predate his or her tenure at the company. *See* Def.'s Reply Brief at 9-10 (arguing that "there is no indication that [the affiant] has ever seen the merchandise at issue, which was imported approximately three years prior to her assuming the position of Vice President of Wilton"). "[C]orporate officers are presumed to have personal knowledge of acts of their corporation." *See* 11 Moore's Federal Practice § 56.14[1][c]. And it is clear beyond cavil that "[p]ersonal knowledge . . . does not require contemporaneous knowledge." *Id.* (*citing, inter alia,* Dalton v. FDIC, 987 F.2d 1216, 1223 (5th Cir. 1993) (affidavit of corporate officer was not defective simply because he learned of transaction after it had occurred)). Here, the Government has "produced no evidence to show that [Wilton's affiant] did not know what [s]he was talking about." Zayre Corp. v. S.M. & R. Co., 882 F.2d 1145, 1151 (7th Cir. 1989). Nor has the Government "produce[d] any evidence to specifically cast doubt on [the affiant's] credibility." *Id.*; *see generally* Pl.'s Supp. Brief at 12-13.

At the eleventh hour (in the course of supplemental briefing), the parties have traded barbs as to matters such as their respective evidentiary burdens and the effect of the presumption of correctness. *See* 28 U.S.C. § 2639(a)(1) (2000) (presumption of correctness). Wilton argues that "once the plaintiff has provided a *prima facie* case, the government has an obligation to provide its own evidentiary support for its claims that plaintiff's merchandise is not entitled to classification under Heading 9505." *See generally* Pl.'s Supp. Brief at 9-12. Wilton emphasizes: "[The Government] has not provided any factual evidence that the subject merchandise should not be classified under Heading 9505. It has simply criticized every aspect of [Wilton's] evidence and stated that whatever has been provided is not enough." *See* Pl.'s Supp. Reply Brief at 5-6.

The Government argues – for the first time in its Supplemental Brief – that it "is not required to produce evidence," because, it asserts, "Wilton has failed to meet its burden of contradicting Customs' presumptively correct factual finding that the imported articles are not 'festive articles.'" *See* Def.'s Supp. Brief at 15-16 (*quoting* Saab Cars USA, Inc. v. United States, 434 F.3d 1359, 1368

(Fed. Cir. 2006)).

In briefing these points, however, neither party has adequately addressed the interplay of all relevant principles and doctrines. For example, the Government fails to acknowledge that the parties are in agreement that no material facts are in dispute. *See, e.g.*, Pl.'s Brief at 13; Def.'s Brief at 2, 4, 6. And the statutory presumption of correctness attaches only to Customs' factual findings. Thus, where – as here – there are no disputes of material fact, the presumption of correctness has no practical effect. *See, e.g.*, Universal Elecs., Inc. v. United States, 112 F.3d 488, 492 (Fed. Cir. 1997) (*quoting* Marbury v. Madison, 5 U.S. 137, 177 (1803)); *id.* (*citing* Goodman Mfg., L.P. v. United States, 69 F.3d 505, 508 (Fed. Cir. 1995)) ("[W]e conclude that although the presumption of correctness applies to the ultimate classification decision, [plaintiff] properly interprets Goodman as standing for the proposition that, as a practical matter, the presumption carries no force as to questions of law.").

As Wilton emphasizes, the Government similarly fails to acknowledge that it has cross-moved for summary judgment, and ignores the implications of that fact. *See* Pl.'s Supp. Reply Brief at 6. It is one thing for a party to defeat a movant's motion for summary judgment; it is something else entirely to prevail as cross-movant.

Finally, Saab – on which the Government seeks to rely heavily – was not a classification case, and is thus distinguishable from the case at bar. *See* Saab, 434 F.3d at 1368. In classification cases, the Court has an independent obligation under Jarvis Clark to ascertain the proper classification of merchandise in dispute. *See* Jarvis Clark Co. v. United States, 733 F.2d 873, 876 (Fed. Cir. 1984). And, as officers of the court, counsel have a duty to assist the Court in that function. Even if Wilton had not made out a *prima facie* case for "festive articles" classification of any of its merchandise, neither party has argued that the Court would somehow be relieved of its Jarvis Clark obligation (and that the Government could somehow, in essence, prevail on its cross-motion by default).

Fortunately, there is no need to definitively resolve such issues here. Notwithstanding their posturing, the parties have steadfastly maintained throughout the course of litigation – despite countless opportunities to indicate to the contrary (before, during, and after oral argument) – that there are no disputes of material fact which would preclude summary judgment in favor of either party. And, although the existing evidentiary record is thin on a number of points, and does not afford the pristine basis for summary judgment that would be optimal (and which a court is certainly entitled to expect), it is also abundantly clear that a trial would serve no real purpose in this matter. *See, e.g.*, Pl.'s Brief at 13 (stating that "[t]here is no genuine dispute of material fact"); Def.'s Brief at 2 (noting that "[t]here is no dispute between the parties regarding what the merchandise is or how it is actually used"), 4 ("Summary judgment is proper as there are no material facts in dispute."), 6 ("Inasmuch as the parties agree as to what the merchandise is and how it is used, this action is ripe

Wilton sells the imported merchandise at issue (described in greater detail below) as seasonal goods, and as goods associated with certain special occasions.  All of the merchandise is imported and sold only in conjunction with holidays or other special occasions.  Many of the items are marketed in connection with a particular holiday – such as Christmas, Valentine's Day, or Halloween – and are designed and intended specifically for use in celebration of that holiday.  Other goods are marketed for  so-called "private festive occasions," such as birthdays, or weddings and anniversaries, and are similarly designed and intended specifically for use on such an occasion.

The merchandise that Wilton sells in connection with a holiday (such as Christmas, Valentine's Day, or Halloween) is advertised and marketed in the appropriate section of the "Seasonal Shop" of Wilton's Online Store (*e.g.*, the Christmas, Valentine's Day, or Halloween section), and in the appropriate section of Wilton's Yearbook catalog (*e.g.*, the Christmas, Valentine's Day, or Halloween section).  In stores such as Target, Wal-Mart, and Michael's, such holiday merchandise is displayed and sold in the seasonal section or festive products section of the store.  The stores display the holiday merchandise only in the weeks immediately preceding the holiday with which the merchandise is associated.  Thus, for example, shoppers will not find Christmas tree cookie cutters or Santa-shaped baking pans on display in stores in the summer months.  Nor does Wilton offer such merchandise in its Online Store or its Yearbook catalog, except in the Christmas sections.  In Wilton's Online Store, in its Yearbook catalog, and in the retail stores that carry Wilton's merchandise (*e.g.*, Target, Wal-Mart, and Michael's), Wilton's holiday-specific merchandise is displayed and marketed alongside other holiday merchandise, including festive

for summary judgment.").

cookware, kitchenware, and bakeware (such as Halloween cookie jars, Christmas dinnerware, or Valentine's Day mugs, depending on the holiday season).

Merchandise like the non-holiday merchandise at issue – wedding and anniversary merchandise, and birthday and other non-holiday bakeware, for example – is advertised and marketed in the "Wedding Shop," the "Theme & Character Shop," or the "Novelty Shaped Pans" section of the "Bakeware Shop" of Wilton's Online Store, and in the "Wedding," "Famous Characters," or "Novelty Pans" section of Wilton's Yearbook catalog (as appropriate).  Stores such as Target, Wal-Mart, and Michael's display such merchandise year-round in the "wedding" and/or the "birthday" or "party goods" sections of their stores (as appropriate).

As described in greater detail below, the remaining merchandise at issue includes various styles of wedding cake separator plates, pillars and columns, and plate legs; Cherub Place Card Holders; several dozen different items of bakeware, as well as cookie cutters and cookie stamps; and certain cake press sets.

## A.  The Merchandise At Issue

*Wedding Cake Separator Plates*, *Pillars/Columns*, *and Plate Legs*.  The wedding merchandise remaining at issue consists of wedding cake "separator plates," pillars and columns, and separator plate "legs."  All of the items are made of plastic, and are designed to be used together to separate the tiers of a multi-tiered wedding cake, to enhance the cake's appearance and appeal at wedding celebrations.[6]

---

[6]Multi-tiered wedding-type cakes are created using one of two methods – the "stacked" method (where one tier is stacked directly on top of the tier below it), or the "pillar construction"

Separator plates support each of the tiers of a multi-tiered wedding cake.  The separator plates are typically round (ranging from six to eighteen inches in diameter), but also come in other shapes, including square, hexagon, oval, and heart-shaped.  A separator plate can be converted to a "base plate" (used to support the bottom tier of a cake, generally the largest of the tiers) by the addition of one-inch plate "legs."  Plate "pegs" – which are no longer at issue in this action – are used to anchor the cake tiers themselves to the separator plates, and to prevent the tiers of the cake from slipping off the separator plates when the cake is cut.  The coordinating pillars and columns range from three to eleven inches tall, and are designed to snap onto the undersides of the separator plates, to separate and support each tier of the wedding cake.

Because they are visible parts of a tiered wedding cake as it is presented, items such as separator plates, pillars and columns, and plate legs must be not only strong, but also aesthetically pleasing.  Thus, descriptions of the items emphasize their beauty, as well as their strength and their stability.  And, while the separator plates, pillars and columns, and plate legs are actually made of plastic (and thus are inexpensive enough to be disposable), they are designed to look like they are made from finely-cut crystal and other expensive materials.  They are also sold in several different styles (some elegantly simple and others more ornate, some traditional and others more modern), to coordinate with one another,[7] and to appeal to the differing personal tastes of bridal couples by

method (where a tier is held aloft – above the tier below it – through the use of pillars or columns, in combination with separator plates).

[7]Thus, for example, pillars and/or columns are used to separate the tiers of a multi-tiered cake.  Pillars are offered in styles including "Crystal-Look," "Crystal-Look Spiked," "Grecian," "Grecian Spiked," "Arched," "Dancing Cupid," "Swan," and "Hidden."  Similarly, columns are offered in "Lattice" and "Roman" styles.

enhancing whatever overall look they are seeking to create with their wedding cake.

Although Wilton claims that the merchandise is properly classifiable as "festive articles" under HTSUS heading 9505, Customs liquidated the wedding cake separator plates, pillars, and columns as "Tableware, kitchenware, other household articles and toilet articles, of plastics: Tableware and kitchenware: Plates, cups, saucers, soup bowls, cereal bowls, sugar bowls, creamers, gravy boats, serving dishes and platters" and "Tableware, kitchenware, other household articles and toilet articles, of plastics: Tableware and kitchenware: Other," under subheadings 3924.10.20 and 3924.10.50, respectively.  The plate legs were liquidated as "Other articles of plastics . . . : Other: Other," under subheading 3926.90.98.[8]

*Cherub Place Card Holders*.  Wilton's Cherub Place Card Holders are classic, bisque white cherub figurines (approximately three-and-one-half inches tall), designed for use at wedding receptions to hold place cards designating guests' seating assignments or guests' places at their tables, and to coordinate with other stylistic and design elements of the nuptial celebration. Like the other wedding merchandise discussed above, the place card holders are made of plastic, so as to be

_____

All pillars and columns are available in a range of heights, and are specifically designed to coordinate with various styles of cake separator plates, including "Crystal-Look [Separator] Plates" and other wedding merchandise from Wilton's "Crystal-Look" line (for use with Crystal-Look and Crystal-Look Spiked Pillars), and "Decorator Preferred," "Baker's Best," "Square," "Heart," "Oval," and "Hexagon" separator plates (for use with other styles of pillars, as well as all columns).

[8]As Wilton pointedly observes, much of the merchandise that is the subject of the parties' Stipulation consists of wedding cake separator plates, columns, and pillars similar to those still at issue.  According to Wilton, there is "no reasonable basis" for distinguishing between the merchandise to which the parties have stipulated and that which remains in dispute.  *See* Stipulation; Pl.'s Brief at 21.  And the parties have agreed that all merchandise subject to the Stipulation should be classified as "festive articles" under heading 9505.  *See* Pl.'s Brief at 21; Pl.'s Reply Brief at 2; Pl.'s Supp. Reply Brief at 4-5.  *But see* Def.'s Brief at 17 n.10, 18 n.11; Def.'s Supp. Brief at 8-9.

inexpensive enough to be disposable.

Wilton contends that the Cherub Place Card Holders are properly classifiable as "festive articles" under HTSUS heading 9505.  However, Customs liquidated them under subheadings 3924.10.20 and 3926.90.98, as "Tableware, kitchenware, other household articles and toilet articles, of plastics: Table and kitchenware:  Plates, cups, saucers, soup bowls, cereal bowls, sugar bowls, creamers, gravy boats, serving dishes and platters" and "Other articles of plastics . . . : Other: Other," respectively.[9]

*Cake Press Sets*.  Cake presses are used to stamp or imprint special designs, messages, or greetings onto frosted cakes.  Typically, contrasting frosting or other edible material is then piped onto the design or lettering, to further highlight it.  The cake press sets at issue here feature greetings and sentiments such as "Merry Christmas," "Happy New Year," and "Congratulations," as well as presses of individual words to be used in combination to form messages and greetings, such as "Best" and "Wishes."  The cake presses are made of plastic, and thus are inexpensive enough to be disposable.

Although Wilton claims that the cake press sets are properly classifiable as "festive articles" under HTSUS heading 9505, Customs liquidated them under Chapter 39, "Plastics and Articles Thereof."[10]

---

[9]Customs liquidated different entries of the exact same merchandise under two different tariff provisions.  Contrary to the Government's claim (*see* Def.'s Brief at 29), the different classifications cannot be attributed to differences in "the material of which the article was comprised."

[10]The parties agree that the cake press sets were liquidated under Chapter 39 of the HTSUS.  However, there is a discrepancy in the record as to the precise heading and subheading under which the merchandise was liquidated.

*Bakeware*, *Cookie Cutters*, *and Cookie Stamps*.  The bakeware at issue consists of baking

pans which are made of aluminum (except for one pan), cookie cutters made of plastic (or, in one

instance, stainless steel), and plastic cookie stamps.

With holiday baking a tradition in many households, Wilton's line of bakeware predictably

includes pans marketed for specific holidays (including pans in shapes such as Santa, a snowman,

a heart, and a jack-o-lantern), as well as pans in a wide range of other shapes (including, *inter alia*,

a dinosaur, a football, a sports utility vehicle, and a horseshoe, as well as characters and themes with

special appeal for children, such as Blue's Clues and Barbie).  In addition to their special shapes,

a number of the pans also feature designs in "relief" or raised designs which are molded into the

pans themselves.  The baking pans can be filled with cake batter (or, in a few instances, cookie

dough or pie crust dough), and placed in the oven.  When removed from the pan after baking, the

cake or other treat takes the special shape of the pan, and may or may not be further decorated.

Like its baking pans, Wilton's cookie cutters are in assorted shapes such as Santa, a

gingerbread man, a snowflake, a jack-o-lantern, a ghost, and a heart.  The cookie cutters can be

pressed down on cookie dough, producing "cut-outs" that – after baking – yield cookies in the

shapes of the cutters.  The resulting cookies may or may not be further decorated.

Wilton's cookie stamps also feature a variety of designs and motifs such as a Christmas tree,

a gingerbread man, and a jack-o-lantern.  When a cookie stamp is pressed onto cookie dough, it

---

According to Wilton, Customs liquidated the cake press sets as "Tableware, kitchenware, other household articles and toilet articles, of plastics: Tableware and kitchenware: Other," under HTSUS subheading 3924.10.50.  *See, e.g.*, Pl.'s Brief at 7; Pl.'s Exh. G-1; Pl.'s Amended Exh. G-1. In contrast, the Government contends that the cake press sets were liquidated under subheading 3926.90.98, as "Other articles of plastics . . . : Other: Other."  *See, e.g.*, Def.'s Brief at 3, 29.

"stamps" the dough with an imprint of a design or motif.  The design or motif is then baked into the cookie itself.  As with cookies produced using cookie cutters, cookies featuring stamped designs or motifs may or may not be further decorated after baking.

Over Wilton's objections, Customs liquidated the bakeware as "Table, kitchen or other household articles . . . , of aluminum; . . . :  Table, kitchen or other household articles . . . :  Other: Cooking and kitchen ware: Not enameled or glazed and not containing nonstick interior finishes: Other" under subheading 7615.19.70, except for one pan, which was liquidated as "Table, kitchen or other household articles . . . , of iron or steel; . . . : Other: Other: Not coated or plated with precious metal: Other: Cookingware" under subheading 7323.99.70.  The cookie cutters and cookie stamps were liquidated as "Tableware, kitchenware, other household articles and toilet articles, of plastics: Tableware and kitchenware: Other," under subheading 3924.10.50 (with the exception of one material cookie cutter, which was liquidated as "Table, kitchen or other household articles . . . , of iron or steel; . . . : Other: Of stainless steel," under subheading 7323.93.00).  Wilton contends that all the merchandise is  properly classifiable as "festive articles" under HTSUS heading 9505.

## B.  "Festive Articles" Under Heading 9505

As discussed above, the Government maintains that Customs properly classified the merchandise at issue under various subheadings of HTSUS headings 3924, 3926, 7615, and 7323.  However, relevant Section and Chapter Notes specifically and expressly exclude merchandise from classification under those headings if – as Wilton contends – the merchandise is classifiable under

heading 9505.[11]  *See* Section Note 1(l) (excluding from classification under Section XV – including,

*inter alia*, headings under Chapters 73 and 76 – "[a]rticles of chapter 95"), Section XV ("Base

Metals and Articles of Base Metals"), HTSUS; Chapter Note 2(v) (excluding from classification

under headings under Chapter 39 "[a]rticles of chapter 95"), Chapter 39 ("Plastics and Articles

Thereof"), HTSUS; *see also* Midwest of Cannon Falls, Inc. v. United States, 122 F.3d 1423, 1429

(Fed. Cir. 1997) (discussing application of similar exclusionary Chapter Note, in "festive articles"

case); Park B. Smith, Ltd. v. United States, 347 F.3d 922, 926, 928 (Fed. Cir. 2003) (discussing

application of similar exclusionary Section Note, in "festive articles" case).  Accordingly, if the

merchandise at issue is classifiable under HTSUS heading 9505, the merchandise cannot be

classified as Customs liquidated it.

In its entirety, the text of HTSUS heading 9505 – including its subheadings – reads:

| | |
|---|---|
| 9505 | Festive, carnival or other entertainment articles, including magic tricks and practical joke articles; parts and accessories thereof: |
| 9505.10 | Articles for Christmas festivities and parts and accessories thereof: |
| | Christmas ornaments: |
| 9505.10.10 | Of glass |
| | Other: |
| 9505.10.15 | Of wood |
| 9505.10.25 | Other |
| 9505.10.30 | Nativity scenes and figures thereof |
| | Other: |
| 9505.10.40 | Of plastics |
| | Artificial Christmas trees |
| | Other |
| 9505.10.50 | Other |
| | Artificial Christmas trees |

---

[11]Section and Chapter Notes are not optional interpretive rules, but – instead – are statutory law, codified at 19 U.S.C. § 1202.  *See* Park B. Smith, Ltd. v. United States, 347 F.3d 922, 926 (Fed. Cir. 2003) (*citing* Libas, Ltd. v. United States, 193 F.3d 1361, 1364 (Fed. Cir. 1999)).

|  |  | Other |
|---|---|---|
| 9505.90 | Other: | |
| 9505.90.20 | | Magic tricks and practical joke articles; parts and accessories thereof |
| 9505.90.40 | | Confetti, paper spirals or streamers, party favors and noisemakers; parts and accessories thereof |
| 9505.90.60 | | Other |

*See* Heading 9505, HTSUS.

The Explanatory Notes to heading 9505, in turn, further provide:

## 95.05 – FESTIVE, CARNIVAL OR OTHER ENTERTAINMENT ARTICLES, INCLUDING CONJURING TRICKS AND NOVELTY JOKES

9505.10 – **Articles for Christmas festivities**

9505.90 – **Other**

This heading covers:

(A)   **Festive, carnival or other entertainment articles,** which in view of their intended use are generally made of non-durable material.  They include:

    (1)   Decorations such as festoons, garlands, Chinese lanterns, etc., as well as various decorative articles made of paper, metal foil, glass fibre, etc., for Christmas trees (*e.g.*, tinsel, stars, icicles), artificial snow, coloured balls, bells, lanterns, etc.  Cake and other decorations (*e.g.*, animals, flags) which are traditionally associated with a particular festival are also classified here.

    (2)   Articles traditionally used at Christmas festivities, *e.g.*, artificial Christmas trees (these are sometimes of the folding type), nativity scenes, Christmas crackers, Christmas stockings, imitation yule logs.

    (3)   Articles of fancy dress, *e.g.*, masks, false ears and noses, wigs, false beards and moustaches (**not being** articles of postiche – **heading 67.04**), and paper hats.  However, the heading **excludes** fancy dress of textile materials, of **Chapter 61** or **62**.

    (4)   Throw-balls of paper or cotton-wool, paper streamers (carnival tape), cardboard trumpets, "blow-outs", confetti, carnival umbrellas, etc.

The heading **excludes** statuettes, statues and the like of a kind used for decorating places of worship.

(B)     **Conjuring tricks and novelty jokes,** *e.g.*, packs of cards, tables, screens and containers, specially designed for the performance of conjuring tricks; novelty jokes such as sneezing powder, surprise sweets, water-jet button-holes and "Japanese flowers":

This heading also **excludes**:

(a)     Natural Christmas trees (**Chapter 6**).

(b)     Christmas candles and Christmas tree candles (**heading 34.06**).

(c)     Packagings of plastics or of paper, used during festivals (classified according to constituent material, for example, **Chapter 39** or **48**).

(d)     Christmas trees stands (classified according to constituent material).

(e)     Textile flags or bunting of **heading 63.07**.

(f)     Electric garlands of all kinds (**heading 94.05**).

*See* Explanatory Notes, Heading 9505, HTSUS.[12]


## II.  The Standard of Review

Under USCIT Rule 56, summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to [ ] judgment as a matter of law." USCIT R. 56(c).  Customs' classification decisions are reviewed through a two-step analysis – first construing the relevant tariff headings, then determining under which of those headings the

---

[12]Unlike Section and Chapter Notes (*see* n.11, *supra*), Explanatory Notes are not binding. *See* Park B. Smith, 347 F.3d at 929 n.3 (*citing* JVC Co. of America v. United States, 234 F.3d 1348, 1352 (Fed. Cir. 2000)).  They may, however, be consulted for guidance and "are generally indicative of the proper interpretation of the various HTSUS provisions."  JVC, 234 F.3d at 1352 (*quoted in* Park B. Smith, 347 F.3d at 929 n.3).

merchandise at issue is properly classified. <u>Bausch & Lomb, Inc. v. United States</u>, 148 F.3d 1363, 1365 (Fed. Cir. 1998) (*citing* <u>Universal Elecs., Inc. v. United States</u>, 112 F.3d 488, 491 (Fed. Cir. 1997)).

Interpretation of the relevant tariff headings is a question of law, while application of the terms to the merchandise is a question of fact. *See* <u>Bausch & Lomb</u>, 148 F.3d at 1365. Summary judgment is thus appropriate where the nature of the merchandise is not in question, and the sole issue is its proper classification. *See id.* (it is "clear that summary judgment is appropriate when there is no genuine dispute as to the underlying factual issue of exactly what the merchandise is") (citation omitted).

On review, Customs' classification decisions are afforded a measure of deference proportional to their power to persuade, in accordance with the principles set forth in <u>Skidmore v. Swift & Co.</u>, 323 U.S. 134, 140 (1944). *See* <u>United States v. Mead Corp.</u>, 533 U.S. 218, 235 (2001); <u>Mead Corp. v. United States</u>, 283 F.3d 1342, 1346 (Fed. Cir. 2002). According to the Government, Customs' determination in the case at bar – denying "festive articles" classification to the merchandise in dispute – is entitled to the full measure of <u>Skidmore</u> deference. *See generally* Def.'s Brief at 4, 6-7; *see also* section III.D, *infra*.

## III.  <u>Analysis</u>

The law of "festive articles" has been crisply and succinctly articulated by the Court of Appeals. The challenge lies in the application of that law. The seminal case is <u>Midwest of Cannon Falls</u>, which established the basic criteria for classification of "festive articles" under heading 9505. *See generally* <u>Midwest of Cannon Falls, Inc. v. United States</u>, 122 F.3d 1423 (Fed. Cir. 1997). As

synthesized and distilled in <u>Park B. Smith</u>, those criteria require both (1) that the article "be closely associated with a festive occasion," and (2) that the article be "used or displayed principally during that festive occasion."  <u>Park B. Smith, Ltd. v. United States</u>, 347 F.3d 922, 927 (Fed. Cir. 2003) (*citing* <u>Midwest of Cannon Falls</u>, 122 F.3d at 1429).  If the use or display of the article at other times would not be "aberrant," then the article does not satisfy the criteria.  <u>Park B. Smith</u>, 347 F.3d at 929.  *See generally* <u>Russ Berrie & Co. v. United States</u>, 381 F.3d 1334, 1336 (Fed. Cir. 2004).

Wilton contends that all the merchandise here at issue is classifiable as "festive articles" under heading 9505.  The Government vigorously disputes Wilton's claim, advancing several different arguments.

The Government's principal argument is a reprise of – and a variation on – an argument that has been raised (and rejected) in prior "festive article" cases.  Specifically, the Government asserts that the "functional" or "utilitarian" nature of the subject merchandise precludes its classification as "festive articles" under heading 9505.  In a related argument, the Government contends that the vast majority of the goods at issue are, at best, "one step removed" from "festive articles."

The Government further maintains that "festive" occasions for purposes of heading 9505 are limited to recognized "holidays," so that merchandise related to occasions such as weddings, anniversaries, and birthdays cannot be classified under that heading.  In addition, as to most – if not all – of the items in dispute, the Government contests Wilton's claim that the articles' motifs are "closely associated with" and/or that the articles themselves are "used or displayed principally during" a particular festive occasion.

The parties' respective claims and arguments are addressed in turn below.

### A.  The Functional/Utilitarian Nature of the Subject Merchandise

As the Government emphasizes, much of the subject merchandise can fairly be characterized as having a "functional" or "utilitarian" purpose (at least to some degree).[13]   The

---

[13]Although the Government's principal argument focuses on the "functional" or "utilitarian" nature of the merchandise, its briefs are not models of clarity.  They are laced with a number of scattered, occasional, casual allusions to other concepts such as whether the merchandise at issue is "displayed" (apparently in an "ornamental" sense), whether the merchandise has "entertainment" value, and similar issues.  The Government's briefs do nothing whatsoever to develop those arguments in any coherent fashion, however; and, indeed, the Government often seems to be using concepts interchangeably.  Such scattered, casual, offhand references cannot give rise to an obligation – on the part of either opposing counsel or the Court – to flesh out and then respond to a party's barest intimations.

In the interest of completeness, the Government's briefs have been "mined" for such intimations, which are collected and addressed in summary fashion here.  However, it is far from clear that the Government's briefs filed in this forum should suffice to preserve its rights.  Any attempt to raise such issues on appeal should meet with skepticism, and merits very close scrutiny.

As an initial matter, both parties devote ink to whether merchandise classifiable as "festive articles" under heading 9505 must be both "used" *and* "displayed" in connection with a "festive" occasion.  The Government repeatedly insists that merchandise must be "used *and* displayed."  *See, e.g.*, Def.'s Brief at 19 (asserting that "Midwest and Smith involved articles which were themselves displayed *and* used"); Def.'s Reply Brief at 2 (asserting that "festive articles" classification requires that "the article must be displayed and used" in connection with "festive" occasion), 7-8 (same); Def.'s Supp. Brief at 2 (same).  However, in Park B. Smith, the Court of Appeals has spoken clearly and unequivocally to the contrary, explaining that "festive article" classification "requires that the article satisfy two criteria: (1) it must be closely associated with a festive occasion and (2) the article is *used or displayed* principally during that festive occasion."  Park B. Smith, 347 F.3d at 927 (emphasis added) (*citing* Midwest of Cannon Falls, 122 F.3d at 1429); *see also* Pl.'s Reply Brief at 13 (noting that Park B. Smith "states that festive items may be displayed *or* used during a festive occasion").

In any event, contrary to the Government's implications, there is – as a practical matter – no apparent discernible, meaningful "bright line" distinction between "display" and "use."  In several places, the Government suggests that "festive articles" must be, in essence, "decorations" – apparently reading the term "display" in an "ornamental" sense.  *See, e.g.*, Def.'s Brief at 19 (asserting that "Midwest and Smith involved articles which were themselves displayed *and* used as *decorations*") (second emphasis added); Def.'s Reply Brief at 5 (arguing that Wilton bakeware

cannot be classified as "festive articles" because it is not "decorations"); Def.'s Supp. Brief at 7 (arguing that bakeware cannot be classified as "festive articles" because a "baking pan is not itself used as decoration"). *But see* Pl.'s Reply Brief at 13 n.6 (disputing Government's contention that "display" means "ornamental" display, and arguing, *inter alia*, that "[e]ven if both use *and* display were required . . . , the display may be nothing more than that which is incidental to the use of the article.  It need not be a decorative use . . . ").

The Government claims that there is no evidence that Wilton's bakeware is used as "decorations."  *See, e.g.*, Def.'s Brief at 20 (asserting that bakeware "is *not* used as decorations," and that there is "absolutely no evidence that anyone would decorate a home with baking pans, cookie cutters, cake message presses, or any other cooking tools during any holiday"); Def.'s Supp. Brief at 7 (asserting that "the baking pan is not itself used as decoration and there is absolutely no evidence that such articles are displayed").

The Government is simply wrong on the record.  Contrary to the Government's claims, text from Wilton's Yearbook catalog and other promotional literature filed in this action emphasizes a range of "decorative" uses for Wilton's bakeware, cookie cutters, and cookie stamps.  Thus, for example, the description of the Jolly Shapes Cookie Cutter Set (item # 2308-1201) emphasizes: "Our metal [cookie] cutters look great with their bright colors and glossy enamel finish.  Four shapes are *perfect for hanging on the* [*Christmas*] *tree* until your next cookie-baking bash." (Emphasis added.) To the same end is the description of the Spooky Shapes Cookie Cutter Set (item # 2308-1200): "Our metal [cookie] cutters *will look great in your kitchen* with their glossy enamel finish.  Four favorite shapes are *perfect for hanging on the wall* until your next cookie baking bash." (Emphasis added.)  Similarly, the description of the Star Nesting Perimeter Cutter Set (item # 2304-111) advertises: "[R]emember all the fun ways to use our [cookie] cutters – for bread shapes, stencils, *sun catchers*, and so much more." (Emphasis added.)  And the description of the Gingerbread Boy Cookie Mold (item # 2306-1019) emphasizes: "Our finely detailed mold helps you and the family create beautifully-sculpted cookies with ease . . . .  Molds are *great to hang for a festive decoration all season long*." (Emphasis added.)  *See* Pl.'s Exhs., *passim*.  Moreover, it is a reasonably safe assumption that additional evidence would have been proffered on this point had the Government briefed the matter adequately, so as to put Wilton on proper notice.  Any complaints by the Government about the state of the evidentiary record must therefore fall on deaf ears.

Not only is the Government wrong about the record evidence – but, more importantly, the Government is wrong on the law.  There is simply nothing in the Explanatory Notes to heading 9505 or in the HTSUS itself – just as there is nothing in either Midwest of Cannon Falls or Park B. Smith – that requires that "festive articles" must, by definition, be "decorative" (at least in the sense that the Government appears to be using that term).  The Explanatory Notes plainly envision classification under heading 9505 of not only "[d]ecorations such as festoons, garlands . . . ," but also *non-decorative* items as well, including – but not limited to – other (*non-decorative*) types of

"[a]rticles traditionally used at Christmas festivities."  *See* Explanatory Notes, Heading 9505, HTSUS.  Indeed, the Explanatory Notes specifically list "Christmas crackers" as one examplar of "festive articles," with no implication that the crackers must be used to "decorate" a household or otherwise "displayed" before being pulled.  *See* Explanatory Notes, Heading 9505, HTSUS (providing for classification of "Christmas crackers" as "festive articles" under heading 9505); Wikipedia, Christmas cracker, http://en.wikipedia.org/wiki/Christmas_cracker (as of June 8, 2007) (explaining that Christmas crackers "are an integral part of Christmas celebrations in the United Kingdom," among other places; "A cracker consists of a cardboard tube wrapped in a brightly decorated twist of paper . . . [which is] pulled by two people, and, much in the manner of a wishbone, . . . splits unevenly.  The split is accompanied by a small bang produced by the effect of friction on a chemically impregnated card strip (similar to that used in a cap gun) . . . Typically the[] contents [of the Christmas cracker] are a coloured paper hat or crown; a small toy or other trinket and a motto, a joke or piece of trivia on a small strip of paper.  Crackers are often pulled after Christmas dinner or at parties.")

The Government also makes the vague claim that "the use of cooking tools to bake cakes or make cookies is not the kind of 'use' contemplated by the courts in Midwest and Smith."  *See* Def.'s Reply Brief at 8.  But the Government wholly fails to elucidate that conclusory assertion, except to argue that "[t]he cooking tools imported by Wilton are clearly used *in preparation for*, not in celebration [of], nor for entertainment on a joyous holiday."  *Id*. (emphasis added).

That argument intimates the existence of some stringent temporal restriction on "festive articles" that finds no basis in the HTSUS, the Explanatory Notes, or the law of Midwest of Cannon Falls and Park B. Smith.  For example, it is clear from the subheadings of heading 9505 of the HTSUS and from the existing caselaw that "Christmas ornaments" are classifiable as "festive articles" under heading 9505.  *See* Subheading 9505.10, HTSUS (providing for classification of "Christmas ornaments"); Midwest of Cannon Falls, 122 F.3d at 1427 (discussing classification of "Christmas ornaments" under heading 9505).  There is no requirement that such ornaments be put out only on Christmas Eve and, in turn, returned to storage or disposed of on December 26.  So too, it would defy logic and common sense to rule that – to the extent that *making* Christmas cookies is typically an activity that families enjoy in the days leading up to the actual holiday – Christmas cookie cutters are *per se* excluded from the scope of heading 9505 because they are used "in preparation for" the actual holiday.  The distinction that the Government seeks to draw is much too simplistic.

Indeed, in questions sent to the parties in preparation for oral argument, the Court specifically inquired: "In fact, isn't the use of Christmas cookie cutters to make Christmas 'cut out' cookies a holiday tradition?  Isn't the process of making Christmas cookies itself thus a *part* of the holiday festivities, rather than mere *preparation* for the festivities?"  The Government never directly responded to that point.

_____

Whether treated as merchandise used "in preparation for," used "in celebration of," or used "for entertainment on" a holiday, the Government has failed to explain how the temporal use of Wilton's Christmas cookie cutters, for example, differs fundamentally from that of "festive articles" such as Christmas ornaments (*see* subheading 9505.10, HTSUS), nativity scenes (*see* subheading 9505.10.30, HTSUS), festive table linens (*see* <u>Park B. Smith</u>), and nutcrackers (*see* <u>Midwest of Cannon Falls</u>) – all of which are typically used and/or displayed "in preparation for" (that is, in the days leading up to) Christmas itself.

Finally, the Government suggests that Wilton's bakeware, cookie cutters, and cookie stamps cannot be classified as "festive articles" because they lack "entertainment" value. *See, e.g.*, Def.'s Reply Brief at 8 (arguing that merchandise at issue is not used "in celebration" of or "for entertainment on a joyous holiday"); Def.'s Supp. Brief at 6 (asserting that merchandise at issue does not "share the toy-like amusement qualities of the articles expressly provided for in subheading 9505.90"). The Court of Appeals met this argument head-on in <u>Midwest of Cannon Falls</u>, and made short work of it. *See generally* <u>Midwest of Cannon Falls</u>, 122 F.3d at 1427 (rejecting Government's argument that merchandise in that action was not classifiable under heading 9505 because it was not used for "entertainment," or for "amusement or merriment").

In <u>Midwest of Cannon Falls</u>, the Court of Appeals noted that it was "somewhat unclear what the government means by articles for 'entertainment, amusement or merriment' because the imported items (*e.g.*, various Santa figures) are at least as 'entertaining' as Christmas *tree* ornaments that the government admits belong under heading 9505." *Id.* The Court of Appeals emphasized that "even under the government's own argument, heading 9505 covers a range of products spanning Christmas tree ornaments to nativity scenes." *Id.* The Court of Appeals concluded that the merchandise at issue in that action was "at least as 'entertaining' as the nativity scenes" expressly covered by one of the subheadings of heading 9505. *Id.* In sum, even if "festive articles" must have "entertainment" value (as the Government continues to insist), the "entertainment" threshold is nowhere near as high as the Government suggests.

If articles such as nativity scenes and the festive table linens of <u>Park B. Smith</u> are deemed to provide "entertainment," there can be no serious dispute as to the "entertainment" value of Christmas cookie cutters and other similar bakeware. As discussed in the course of oral argument in this matter, for example, the making of Christmas cookies is a cherished holiday rite in many U.S. households, for both the young and the young-at heart – a tradition steeped in warm memories of Christmases past, and a tradition passed down from one generation to the next in kitchens all across the country.

The Government's folly here may lie, at least in part, in its analytical proclivity to conflate the ultimate *product* of the baking process (cookies or other baked goods) with the *baking process itself* – that is, the "use" of the merchandise actually at issue here. *See, e.g.*, Def.'s Brief at 20

bakeware, for example, is used to bake cakes in various special shapes.  In the past, however, the

Court of Appeals has twice squarely rejected the Government's claim that only "non-utilitarian"

merchandise is classifiable as "festive articles" under heading 9505.  *See* <u>Midwest of Cannon Falls</u>,

122 F.3d at 1429; <u>Park B. Smith</u>, 347 F.3d at 927.  The Government nevertheless resurrects the

argument once again here, but with a new twist.[14]  *See generally* Def.'s Brief at 21-25; Def.'s Reply

_____

(arguing that "cake pans, cookie cutters, presses and other cooking tools are not themselves used to
celebrate any holiday," and that it is *the cookies and the cakes* that are so used).

As Wilton's Yearbook catalog aptly observes, however, at least in the eyes of children, the
*making* of cookies – that is, the use of cookie cutters and cookie stamps – is as much fun as the
*eating*.  *See* Pl.'s Exh. (describing Star Nesting Perimeter Cutter Set (item # 2304-111) – "With our
shaped [cookie] cutters, *the making is as much fun as the eating*!  Child-safe design means *kids can
have a great time helping*.") (emphases added); Pl.'s Protest at 14 (noting that "[b]aking holiday
cookies" is integral part of Christmas festivities); *see also* <u>Wilton Indus. Canada Ltd. v. Comm'r of
Canada Customs & Revenue Agency</u>, AP-2001-088 (CITT Nov. 8, 2002) ("<u>Wilton-Canada II</u>")
(summarizing witness testimony that "the preparation of . . . baked goods is an integral part of the
Christmas holidays").  In this sense, the active, participatory – and often social – nature of the
baking process associated with special occasions (a phenomenon which the Government has
steadfastly ignored) gives Wilton's bakeware an "entertainment" value that exceeds that of much
other "festive" merchandise – such as Christmas ornaments, nativity scenes, festive table linens and
such – which, by their very nature, help "celebrate" an occasion in a much more passive manner.
*See also* Pl.'s Exhs. (describing Gingerbread Boy Cookie Mold (item # 2306-1019), emphasizing
often festive, social nature of baking process itself – "Our finely detailed mold helps *you and the
family* create beautifully-sculpted cookies with ease") (emphasis added); *id.* (describing Jolly Shapes
Cookie Cutter Set (item # 2308-1201), emphasizing often festive, social nature of baking process
itself – "Four shapes are perfect for hanging on the [Christmas] tree until *your next cookie-baking
bash*.") (emphasis added); *id.* (describing Spooky Shapes Cookie Cutter Set (item # 2308-1200),
emphasizing often festive, social nature of baking process itself – "Four favorite shapes are perfect
for hanging on the wall until *your next cookie baking bash*.") (emphasis added).

[14]In their briefs, both parties consistently failed to clearly indicate which of their arguments
relate to which items of Wilton's merchandise.  The parties were pressed several times to clarify
their positions.  For example, in questions provided to the parties in preparation for oral argument,
the Court specifically inquired: "*Is it crystal clear from the parties' papers, as to each and every
item remaining at issue in this action, which arguments apply to which items*?  Is it crystal clear
from the parties' papers, as to each and every item remaining at issue in this action, *exactly* which
classification the parties assert?"  (First emphasis added.)  The Court raised the matter with the

Brief at 4-6; Def.'s Supp. Brief at 11-14.  *But see* Pl.'s Reply Brief at 4-11; Pl.'s Supp. Reply Brief at 3-4.[15]

Invoking Jewelpak, the Government asserts that – in determining the proper scope of heading 9505 – the court should consider the Explanatory Notes to heading 9505, which were amended in 2003 to expressly exclude from the scope of that heading articles that "have a utilitarian function," such as "kitchenware."  *See* Def.'s Brief at 21 (*citing* Jewelpak Corp. v. United States, 20 CIT 1402, 950 F. Supp. 343 (1996), *aff'd*, 297 F.3d 1326, 1336 (Fed. Cir. 2002)); Def.'s Reply Brief at 5-6;

---

parties again, in the course of oral argument.

Although Wilton clarified its positions (to some extent) in its supplemental submissions, the Government never did so.  As a result, as a general matter, it is extremely difficult – and often impossible – to definitively discern from the Government's briefs which of its arguments relates to which items of the merchandise at issue.  Under the circumstances, it is reasonable to construe any ambiguities against the Government.

The only items that the Government expressly refers to in making the argument under discussion here – that is, the argument that "utilitarian" or "functional" items are not classifiable under heading 9505 – are "baking pans, cookie cutters and other cooking tools."  *See* Def.'s Brief at 25.  "Cooking tools" is a reference to Wilton's tree former sets, which are no longer at issue in this action.  *See* Pl.'s Brief at 6-7 (dividing merchandise into general categories for purposes of discussion, and referring to "Cake Presses and Cooking Tools").  In any event, whether the Government's argument relates only to Wilton's bakeware and cookie cutters, or to all of the merchandise still at issue, the result is the same.

[15]In briefing this issue, neither party has relied in any way on Customs' recent action seeking to limit the application of Park B. Smith to the entries before the courts in that case.  *See generally* Limitation of the Application of the Decisions of the Court of International Trade and the Court of Appeals for the Federal Circuit in Park B. Smith v. United States, 40 Cust. Bull. & Dec. No. 15 at 5 (April 5, 2006); Proposal to Limit the Decisions of the Court of International Trade and the Court of Appeals for the Federal Circuit in Park B. Smith v. United States, 39 Cust. Bull. & Dec. No. 27 at 33 (June 29, 2005).

Explanatory Notes, Heading 9505, HTSUS, at xx-9505-1 (2007) (reflecting 2003 amendment).[16]

The plaintiff in Jewelpak complained, among other things, that Customs had changed the classification of the jewelry boxes there at issue based upon an amendment to the applicable Explanatory Notes. Jewelpak, 20 CIT at 1402, 950 F. Supp. at 345. The plaintiff maintained that, absent action by the International Trade Commission and the President to formally amend the HTSUS, Customs' action was improper. Id.

Finding that Customs was entitled to consider the amended Explanatory Notes, this court noted that "Congress recognized that the Explanatory Notes would be occasionally modified, and could still be 'consulted for guidance.'" Jewelpak, 20 CIT at 1411, 950 F. Supp. at 351. The Court of Appeals affirmed: "[D]espite Jewelpak's protestation, the law is clear that it was wholly appropriate to reference the Amended Explanatory Note . . . to help define the proper scope of the tariff term." Jewelpak, 297 F.3d at 1336 (citations omitted).

But Jewelpak is inapposite. As Wilton emphasizes, the amendment to the Explanatory Notes at issue in Jewelpak came into force several years before the merchandise at issue in that case was imported. Jewelpak thus had no occasion to address the issue of "retroactivity" (for lack of a better word) that is presented in this case. See Pl.'s Reply Brief at 4-5; Jewelpak, 297 F.3d at 1334

_____

[16]The relevant section of the Explanatory Notes, as amended, reads:

The heading [9505] also *excludes* articles that contain a festive design, decoration, emblem or motif and have a utilitarian function, e.g., tableware, kitchenware, toilet articles, carpets and other textile floor coverings, apparel, bed linen, table linen, toilet linen, kitchen linen.

Explanatory Notes, Heading 9505, HTSUS, at xx-9505-1 (2007) (reflecting  2003 amendment).

(emphasizing that, in that case, Customs' revocation of its earlier rulings was expressly "limited to . . . future importations; it did not apply retroactively to merchandise that already had been liquidated."). In contrast, the amendment to the Explanatory Notes invoked by the Government here was not enacted, and did not become effective, until long after the merchandise at bar had been imported, and – indeed – several years after this action was filed.

The Government emphasizes that the amendment to the Explanatory Notes to heading 9505 was a "clarifying" amendment, and asserts that some countries were excluding "utilitarian" articles from the scope of heading 9505 even before the Explanatory Notes were amended. *See* Def.'s Supp. Brief at 11-14; *see also* Def.'s Brief at 23; Def.'s Reply Brief at 5-6. The Government seeks to dismiss the issue of retroactivity as an "irrelevant factual distinction." *See* Def.'s Reply Brief at 5. But that is much too cavalier.

Even apart from the general legal principles governing the retroactive application of laws, however, there are reliance interests at stake here. *Cf*. Jewelpak, 297 F.3d at 1340 (dissent) (noting that "[t]he international trade community premises its actions and decisions on the expectation that Customs will conform to . . . established and uniform practices," and that "[t]he reliance and fairness interests of the international importing community are implicated by the practices in which Customs uniformly engages" – "regardless of whether the Secretary formally deems Customs' practice established and uniform.").

Under the circumstances of this case, in importing the merchandise at issue, Wilton was entitled to rely on the existing state of the law of this land. Wilton was entitled to rely on the fact that, in Midwest of Cannon Falls, the Court of Appeals flatly and unambiguously rejected the

argument that "utilitarian" goods could not be classified as "festive articles" under heading 9505.

*See* Michael Simon Design, Inc. v. United States, 30 CIT ____, ____, 452 F. Supp. 2d 1316, 1323-24 (2006), *appeal docketed*, No. 2007-1028 (Fed. Cir. Oct. 26, 2006) (rejecting same argument by the Government; noting that "the amended EN 95.05 contradicts the Federal Circuit's current interpretation of the scope of heading," that Midwest of Cannon Falls and Park B. Smith "held, without qualification, that the term 'festive articles' includes utilitarian articles," and that "the Federal Circuit's current interpretation of the meaning of the term 'festive articles' controls") (footnote and citation omitted).[17]

Contrary to the Government's assertions, the amendment to the Explanatory Notes to heading 9505 excluding "utilitarian" articles has no relevance here.  This action is controlled by the Court of Appeals' decision in Midwest of Cannon Falls, as amplified by Park B. Smith.  *See* Midwest of Cannon Falls, 122 F.3d 1423; Park B. Smith, 347 F.3d 922.

---

[17]*See also* Decolin Inc. v. President of Canada Border Services Agency, AP-2004-011 (CITT Sept. 13, 2005) (declining to apply 2003 amendment to the Explanatory Notes to heading 9505 to merchandise imported in 2001; finding that "it would be unfair to give retroactive effect to the August 2003 amendment," because the goods were imported "with a reasonable expectation that they would be classified in accordance with the terms of the Customs Tariff, including the relevant Explanatory Notes, at the time of importation"; ruling that retroactive application of the amended Explanatory Notes would be "contrary to natural justice and principles of fairness").

Of course, as both parties agree, the decisions of foreign tribunals are not binding on the courts of the United States.  *See* Pl.'s Brief at 17; Pl.'s Reply Brief at 3, 12 (*citing* Medtronic, Inc. v. Daig Corp., 789 F.2d 903, 908 (Fed. Cir. 1986) (noting, in patent case, that decision of German tribunal does not bind U.S. courts)); Def.'s Brief at 27; Def.'s Reply Brief at 6.  *Cf.* Cummins Inc. v. United States, 454 F.3d 1361, 1366 (Fed. Cir. 2006).  Such decisions are, however, entitled to "respectful consideration," and may have persuasive power.  *Id.*  And there is merit in promoting uniformity and predictability in international trade and commerce, where possible.  *See generally* Cummins, 29 CIT ____, ____, ____, 377 F. Supp. 2d 1365, 1368-69, 1375-76 (2005), *aff'd*, 454 F.3d 1361.

That said, it is difficult not to be somewhat sympathetic to the frustration the Government

has expressed.  As the Government properly notes, the 2003 amendment to the Explanatory Notes

(and other recent developments) suggest that the law of "festive articles" – in the U.S., and

elsewhere – has drifted far from the HTSUS drafters' intent.  Although it will have to await another

case and another day, it seems a virtual certainty that the recent developments cited by the

Government will result in a sea change in the law of "festive articles."[18]

In the meantime, however, as discussed both above and below, the Government has

identified no reasoned, principled basis for distinguishing the merchandise at issue in this action

from that at issue in Midwest of Cannon Falls, Park B. Smith, and Russ Berrie.  Whatever

significance those decisions may hold for the classification of "festive articles" in the future, they

_____

[18]Wilton apparently contends that the 2003 amendment to the Explanatory Notes is of no effect whatsoever absent action by the Court of Appeals to expressly rescind Midwest of Cannon Falls and Park B. Smith.  Wilton boldly asserts:

> Any decision which seeks to abandon the Federal Circuit's definition of "festive articles," as enunciated in Midwest of Cannon Falls and Park B. Smith . . . must come from the Federal Circuit itself, and not from [the Court of International Trade]. Certainly, the adoption of the amended Explanatory Note cannot be said in any way to work a revocation or overruling of those governing precedents.

Pl.'s Reply Brief at 7.  Although it is not necessary to reach the point here, Wilton's position would seem to be extreme.

Because Midwest of Cannon Falls and Park B. Smith are predicated on the HTSUS (including the Explanatory Notes) pre-amendment, it cannot be said that the Court of Appeals has spoken on the effect of the Explanatory Notes, as amended.  Thus, the outcome on this issue might very well have been quite different if the chronology of events in this case had differed *vis-a-vis* the importation of the goods, the adoption of the amendment to the Explanatory Notes, and the entry into force of that amendment.  *Cf.* Michael Simon Design, 30 CIT at _____ n.4, 452 F. Supp. 2d at 1324 n.4 (explaining how "the court's task would be more difficult had the timing been different" in that case).

lead directly – and largely inexorably – to the result reached here today.

## B.  The Government's "One Step Removed" Argument

In addition to its relatively straightforward claim that the "utilitarian" or "functional" nature of the subject merchandise precludes its classification as "festive articles," the Government advances a second, related argument, which – although ultimately unavailing – is both novel and more nuanced.

The Government points to the decision of the Canadian International Trade Tribunal ("CITT") in Wilton-Canada II, which ruled that certain Christmas-themed bakeware was not classifiable under heading 9505.  See Wilton Indus. Canada Ltd. v. Comm'r of Canada Customs & Revenue Agency, AP-2001-088 (CITT Nov. 8, 2002) ("Wilton-Canada II").  According to the reasoning of Wilton-Canada II, the baking pans there at issue were not – in and of themselves – festive articles, but instead were "used to make, or [were] one step removed from, the festive article, that is, the Christmas cookie or cake."  See Def.'s Brief at 27-28 (quoting Wilton-Canada II).[19]

At first blush, the rationale of Wilton-Canada II has both visceral and rhetorical appeal.  But, in fact, that rationale is woven from three strands of analysis (an analogy, an interpretation of U.S. law, and a public policy concern), none of which withstands close scrutiny.[20]

_____

[19]See also Def.'s Brief at 19-20; Def.'s Reply Brief at 6-8; Def.'s Response to Pl.'s Statement of Facts ¶¶ 8-10.

[20]As noted above, the Government has failed to specify clearly which of its various arguments relate to which items of Wilton's merchandise.  See n.14, supra.  It appears that this argument – that certain merchandise is at least "one step removed" from "festive articles" – relates only to the cake press sets, and to the cookie cutters, cookie stamps, and bakeware.  See Def.'s Brief at 19-10, 27-28; Def.'s Reply Brief at 6-7; Def.'s Response to Pl.'s Statement of Facts ¶¶ 8-10.  The argument thus has no apparent application to the wedding cake separator plates, pillars, columns,

In Wilton-Canada II, the CITT emphasized that the Explanatory Notes to heading 9505 list "articles that are actually used during the [Christmas] festivities, *e.g.*, Christmas crackers and Christmas stockings." *See* Wilton-Canada II, AP-2001-088 (CITT Nov. 8, 2002). The CITT further noted that, in the Explanatory Notes, "[o]ne does not find the articles used to make such articles, for example, the patterns used to make the Christmas stockings." *Id.* The CITT concluded: "Similarly, while cakes [in festive motifs] are covered [as "festive articles" under heading 9505],[21] the goods used to produce them – cake and cookie pans – are not mentioned." *Id.* (footnote added).

But the CITT's analogy in Wilton-Canada II is strained at best. Patterns used to make Christmas stockings are fundamentally different from festive-themed pans used to make Christmas baked goods, in several respects. Perhaps most significantly, sewing patterns can be used to make Christmas stockings year-round. While it would be aberrant to *hang* Christmas stockings on the mantle other than at Christmas time, it would not be aberrant to *sew* such stockings at other times of the year, in anticipation of (and in preparation for) the Christmas season. Thus, it would not be aberrant to use patterns for Christmas stocking year-round. *See generally* Park B. Smith, Ltd. v. United States, 347 F.3d 922, 929 (Fed. Cir. 2003) (article is classifiable under heading 9505 only if its use at times other than festive occasion would be "aberrant").

In contrast, Christmas-themed cookies and cakes generally are baked only during the Christmas season. Thus, the distinctive, festive-shaped bakeware used to make such treats is used

_____

and plate legs, or to the Cherub Place Card Holders.

[21]Although the CITT states in its decision that baked goods in festive motifs are classifiable under heading 9505, the Government here indicated – both in briefing, and in the course of oral argument – that it does not necessarily agree. *See*, *e.g.*, Def.'s Brief at 19-20.

only during the Christmas season; and its use at any other time of the year would be "aberrant." *See id.* Indeed, as the record evidence in Wilton-Canada II indicated, "the preparation of . . . baked goods is an integral part of the Christmas holidays." *See* Wilton-Canada II, AP-2001-088 (CITT Nov. 8, 2002).[22]

Just as the analogy drawn in Wilton-Canada II was (to indulge a pun) somewhat "half-baked," so too the Canadian tribunal misread the U.S. caselaw on which it relied in reaching its decision. The CITT wrote:

> Although it is clearly not bound by U.S. decisions, the Tribunal notes that, in Midwest and Park Smith, it was required that the goods be "*displayed* and used" (emphasis added) only during the festive season. The goods in issue [in the case before the CITT] are used, it could be argued, at Christmas time, but they are certainly not displayed. The appellant has not cited a case in which the goods were not displayed, but nonetheless included in heading No. 95.05.

Wilton-Canada II, AP-2001-088 (CITT Nov. 8, 2002) (emphasis in the original) (*citing* Midwest of Cannon Falls, 122 F.3d 1423; Park B. Smith, Ltd. v. United States, 25 CIT 506 (2001)).

Contrary to the premise of Wilton-Canada II, however, nothing in the U.S. caselaw to date limits "festive article" classification to only that themed merchandise which is "displayed" on festive occasions. For example, in Park B. Smith, the Court of Appeals observed:

> In Midwest of Cannon Falls the court held that classification as a "festive article" under Chapter 95 requires that the article satisfy two criteria: (1) it must be closely

_____

[22]In the context of a linguistic analysis comparing the French and English texts of the language of heading 9505 and the relevant Explanatory Notes, the Wilton-Canada II tribunal opined that – to be "festive" – merchandise must be used "during the Christmas festivities, not before them." Wilton-Canada II, AP-2001-088 (CITT Nov. 8, 2002). Inherent in the CITT's decision is an assumption that Christmas bakeware is used before (that is, in preparation for) the Christmas festivities, and is not used *as part of* those festivities. As discussed above, however, that line of reasoning finds little basis in law or fact. *See* n.13, *supra*.

associated with a festive occasion and (2) the article is *used or displayed* principally during that festive occasion.

<u>Park B. Smith</u>, 347 F.3d at 927 (emphasis added).[23]  In short, to the extent that the CITT's decision

in <u>Wilton-Canada II</u> read U.S. caselaw to require that "festive articles" be "displayed" to justify

classification under heading 9505, that decision was in error.[24]

Finally, in the context of a linguistic analysis comparing the French and English texts of the

language of heading 9505, the CITT voiced a public policy concern, noting that it was "not

---

[23]*Accord* <u>Park B. Smith</u>, 347 F.3d at 927 (referring in two other places to "use" and to how item is "used" – not "displayed"; no references to "display"), 929 (four references to "use"; no references to "display"); <u>Russ Berrie</u>, 381 F.3d at 1336 (referring to merchandise "used *or* displayed") (emphasis added); *Id.* at 1336 (discussing "symbols . . . *used* principally") (emphasis added), 1338 (referring to articles "used *or* displayed") (emphasis added).

[24]*See generally* n.13, *supra* (discussing, *inter alia*, meaning of "display" in context of classification of merchandise as "festive articles" under heading 9505).

Contrary to the implication of the Government here and the CITT in <u>Wilton-Canada II</u>, there simply is no intimation in <u>Park B. Smith</u> that the holiday-themed napkins at issue in that case had to be in view, full-time, for any specific minimum number of hours or days, or seen by some certain minimum number of people, to have been "displayed" and thus eligible for classification as "festive articles" under heading 9505.  *See* <u>Park B. Smith</u>, 347 F.3d at 926.  Similarly, Christmas- and Halloween-themed earrings and other jewelry were held to be *prima facie* classifiable as "festive articles" in <u>Russ Berrie</u>.  *See* <u>Russ Berrie</u>, 381 F.3d at 1335.  But that jewelry could not be said to be "displayed" in the same sense that a jack-o-lantern centerpiece or Christmas tree ornament (or even a festive table runner) might be "displayed."  For example, it is unlikely in the extreme that someone would wear a Christmas lapel pin 24 hours a day, seven days a week throughout the Christmas season.  Nor was there any indication in <u>Russ Berrie</u> that eligibility for classification as "festive articles" turned on whether the jewelry was worn in public.  *See also* <u>Michael Simon Design</u>, 30 CIT at ____, 452 F. Supp. 2d at 1324 (sweaters featuring Christmas and Halloween motifs).

In short, there is nothing in either <u>Park B. Smith</u> or <u>Russ Berrie</u> to suggest that Christmas cookie cutters or other festive bakeware cannot be classified as "festive articles" under heading 9505 simply because they might be used only by a mother and child for a few hours each holiday season in the comfort, warmth, and privacy of the kitchen of the family home.

convinced that Parliament meant that *everything* used in the preparation toward Christmas festivities should be classified in heading No. 95.05 as a festive article." *See* <u>Wilton-Canada II</u>, AP-2001-088 (CITT Nov. 8, 2002) (emphasis added).

At least under the law of this country, however, any such concern would be unwarranted. Whether merchandise is "used" or "displayed" (or both), U.S. caselaw permits its classification under heading 9505 only if its principal "use" or "display" is limited to a festive occasion, such that its "use" or "display" at other times of the year would be "aberrant." *See* <u>Russ Berrie</u>, 381 F.3d at 1336, 1338; <u>Park B. Smith</u>, 347 F.3d at 927, 929; <u>Midwest of Cannon Falls</u>, 122 F.3d at 1429. That "aberrant use" test serves as a discriminating filter, screening out the vast majority of goods that are – in the words of the CITT – "used in the preparation toward [a festive occasion],"[25] and precluding the classification of such goods as "festive articles" under heading 9505.

In sum, for all these reasons, the Government's reliance on <u>Wilton-Canada II</u> in this case is misplaced. Contrary to the Government's implication and <u>Wilton-Canada II</u>, festive bakeware is not categorically and by definition "one step removed" from "festive articles" classifiable under heading 9505 – at least not under the law of <u>Midwest of Cannon Falls</u> and <u>Park B. Smith</u>.

_____

[25]Thus, for example, just as the sewing patterns used to produce Christmas stockings would not be classifiable under heading 9505 because – as discussed above – the use of the patterns year-round would not be "aberrant," so too the sewing machines used to make the Christmas stockings would not be classifiable under heading 9505 for the same reason; nor would templates and machinery used to produce Christmas tree decorations, or other similar festive articles.

While it may be that such sewing patterns, sewing machines, and similar templates and machinery are – in the words of <u>Wilton-Canada II</u> – "one step removed" from "festive articles" classifiable under heading 9505, the bakeware here at issue is not (at least to the extent that its use at other times of the year would be "aberrant").

### C.  "Festive" Occasions Within the Scope of Heading 9505

According to Wilton, much of the merchandise at issue is associated not with traditional holidays such as Halloween, Christmas, or Valentine's Day, but instead with what Wilton terms "private festive celebrations" – special occasions such as birthdays, weddings, anniversaries, and graduations.  The Government maintains that such goods are not *prima facie* classifiable as "festive articles," because – according to the Government – only recognized "holidays" are festive occasions within the meaning of heading 9505.[26]  *See generally* Def.'s Brief at 18-19, 24-25; Def.'s Reply Brief at 3, 5; Def.'s Supp. Brief at 2-3 (asserting that "[n]either Midwest, Smith, Russ Berrie, Rubie's, nor any other court action involving classification within Heading 9505 and which was the subject of a decision of this Court or the Federal Circuit involved the classification of wedding, birthday, anniversary or any other celebratory event not related to a recognized holiday").[27]

The Government insists that the ship has already sailed on this issue – that is, that the Court

---

[26]As footnote 14 above explains, the Government has failed to clearly indicate which of its various arguments relate to which items of Wilton's merchandise.  It appears that this argument – that is, the argument that so-called "private festive celebrations" are not "festive" occasions for purposes of heading 9505 – relates to the wedding cake separator plates, pillars, columns, and plate legs; to the Cherub Place Card Holders (as wedding-related merchandise); to the cake press sets (to the extent that the greetings and sentiments reflected in the cake presses extend beyond recognized "holidays"); and to the cookie cutters, cookie stamps, and bakeware (other than Christmas, Valentine's Day, or Halloween merchandise).  *See* Def.'s Brief at 18-19, 24-25; Def.'s Reply Brief at 3, 5; Def.'s Supp. Brief at 2-3.

[27]The pages of Defendant's supplemental brief are misnumbered.  The brief has two pages numbered 2, and two pages numbered 3.  The pages are not duplicates, however; and, with all pages (including the misnumbered pages), the text of the brief reads properly.

*See also* Def.'s Response to Pl.'s Statement of Facts ¶ 9 (denying "any inference that birthday celebrations are festive occasions for purposes of classification of goods in Heading 9505").  *But see* Pl.'s Brief at 19; Pl.'s Reply Brief at 15 n.7.

of Appeals has previously expressly ruled that heading 9505 covers only merchandise associated

with specific recognized holidays.  *See generally* Def.'s Brief at 19, 24-25; Def.'s Reply Brief at 2,

5; Def.'s Supp. Brief at 3 (asserting that Court of Appeals has limited "festive articles" under

heading 9505 to "particular holiday occasion[s]").  But, contrary to the Government's assertions,

whether "private festive celebrations" such as birthdays, weddings, anniversaries, and graduations

are within the scope of heading 9505 is an issue of first impression – at least in the courts of the

United States.

To be sure, as the Government emphasizes, the U.S. caselaw on heading 9505 has often

discussed festive occasions in terms of "holidays."  In Park B. Smith, for example, the Court of

Appeals stated that, to be classifiable as a "festive article," Midwest of Cannon Falls requires that

merchandise "have a direct association with and limited use to a particular *holiday* occasion."  Park

B. Smith, 347 F.3d at 929 (emphasis added).[28]  However, the Government reads much too much into

that use of the word "holiday."

A careful review of Park B. Smith reveals that the Court of Appeals there used "holiday"

essentially as a shorthand reference, in the context of drawing a distinction between merchandise

that is properly classifiable as "festive articles" under heading 9505 and other merchandise that is

---

[28]*See also* Park B. Smith, 347 F.3d at 929 (referring to articles with a "*holiday* association," "articles with symbolic content associated with a particular recognized *holiday*," articles that "are not associated with a particular festive *holiday*," articles not directed to "specific *holiday* festivals," "articles that might be associated with a particular *holiday*," whether use of articles "at times other than *holidays* would not be aberrant," and whether articles are "directed to a specific festive *holiday*, and whether their use at times other than that *holiday* would be aberrant") (emphases added).

merely "directed to general or seasonal use." *See* Park B. Smith, 347 F.3d at 929.[29]  Indeed, all the

merchandise at issue in Park B. Smith and Midwest of Cannon Falls was asserted to be associated

with particular recognized holidays – specifically, Valentine's Day, Easter, the Fourth of July,

Halloween, Thanksgiving, and Christmas.   None of the merchandise in either of the cases was

claimed to be associated with what Wilton here terms "private festive occasions."  Thus, to date the

U.S. courts have had no reason to speak to whether "private festive celebrations" such as birthdays,

weddings, anniversaries, and graduations are "festive" occasions within the scope of heading 9505.

The issue simply has never presented itself.

As a threshold matter, the Government overlooks the salient point:  Presumably, had the

drafters intended HTSUS heading 9505 to refer to "holiday" (rather than "festive") articles, they

would have used that more specific term.  But they chose not to do so.  Nor is there anything about

the language that they did use that suggests that the language was intended to have the restrictive

meaning that the Government seeks to ascribe to it.

Tariff terms – such as the term "festive" in the title of heading 9505 – are construed

according to their common and commercial meanings, which are presumed to be the same.  Warner-

Lambert Co. v. United States, 407 F.3d 1207, 1209 (Fed. Cir. 2005).  The meaning of a tariff term

may be discerned by consulting dictionaries and other reliable sources of information.  *Id*. (*citing*

Mead Corp. v. United States, 283 F.3d 1342, 1346 (Fed. Cir. 2002)).    And, contrary to the

---

[29]Further, it appears that the Court of Appeals used "holiday" interchangeably with the term
"particular festival" – which is the term used in the Explanatory Notes to heading 9505.  *See* Park
B. Smith, 347 F.3d at 929 ("The general autumnal colors or other seasonal association do not invoke
a *particular festival*."; "In view of these rulings, [Plaintiff's] cross appeal as to the third category
must fail, for these three items are not associated with a *particular festival*.") (emphases added).

implication of the Government here, nothing in the definition of the word "festive" suggests that the term is limited to civic and religious holidays, or that it excludes private celebrations such as birthdays, weddings, anniversaries, and graduations.

According to the Encarta World English Dictionary (North American Edition), for example, "festive" is defined as "1. relating to celebration: relating to, suitable for, or typical of a feast, festival, *or* holiday." Encarta World English Dictionary (North Am. Edition) (Microsoft 2007) (emphasis added). As the disjunctive "or" in that definition makes clear, "festive" occasions are not limited to holidays. Similarly, Webster's Third New International Dictionary (Unabridged) defines the term as "1: of, belonging to, or befitting a feast, festival, or other celebration," and – as one illustration of the use of the word – notes: "<raise the flag on *public holidays and other * * * occasions*>." Webster's Third New International Dictionary (Unabridged) (Merriam-Webster Inc. 2002) (emphasis added). Thus, that definition too demonstrates that "festive occasions" are not limited to "public holidays."

Most dictionary definitions of "festive" do not even mention the word "holiday." For example, The Oxford English Dictionary defines "festive" as "1. Of or pertaining to a feast; such as befits a feast." The Oxford English Dictionary 853 (2d ed. 1989). The definition in Webster's New World Dictionary: Second College Edition is to the same effect: "of, for, or suited to a feast or festival; merry; joyous." Webster's New World Dictionary: Second College Edition 517 (William Collins 1979). Similarly, in Webster's Ninth New Collegiate Dictionary, "festive" is defined as "1: of, relating to, or suitable for a feast or festival[;] 2: JOYFUL, GAY." Webster's Ninth New Collegiate Dictionary 458 (Merriam-Webster Inc. 1983).

Even more to the point, at least one dictionary definition goes so far as to specifically identify birthdays and weddings as "festive occasions." *See, e.g.*, Gage Canadian Dictionary 574 (1997)[30] (defining "festive" as "for a feast, festival, or holiday; gay; joyous; merry: *A birthday or wedding is a festive occasion*.") (*quoted in* <u>Nicholson Equip. Ltd. v. Deputy Minister of Nat'l Revenue</u>, AP-96-080 (CITT April 25, 1997) ("<u>Nicholson I</u>"); <u>Nicholson Equip. Ltd. v. Deputy Minister of Nat'l Revenue</u>, AP-97-110 & AP-97-113 (CITT Sept. 2, 1998) ("<u>Nicholson II</u>"); <u>Wilton Indus. Canada Ltd. v. Canada (Comm'r of Customs & Revenue Agency)</u>, AP-2001-081 (CITT Sept. 24, 2002) ("<u>Wilton-Canada I</u>")).

Further, although the question of the occasions within the scope of heading 9505 is an issue of first impression here, that is not to say that the matter has not been addressed by comparable tribunals and other authorities elsewhere in the world. Defining the scope of heading 9505 to include "private festive celebrations" such as birthdays, weddings, anniversaries, and graduations is consistent with the law and practice of other nations. Canadian customs and international trade authorities, for example, have expressly recognized birthdays, weddings, and anniversaries as "festive" occasions within the meaning of heading 9505. *See, e.g.*, <u>Wilton I</u>, AP-2001-081 (CITT Sept. 24, 2002) (birthdays); <u>Nicholson II</u>, AP-97-110 & AP-97-113 (CITT Sept. 2, 1998) (birthdays, as well as "other joyous events in a child's life")[31]; <u>Nicholson I</u>, AP-96-080 (CITT April 25, 1997)

---

[30]The Gage dictionary is the principal lexicographic authority used by the Canadian Government Translation Bureau for purposes of official state business. *See* <u>Wilton-Canada II</u>, AP-2001-088 (CITT Nov. 8, 2002).

[31]In <u>Nicholson II</u>, the Canadian International Trade Tribunal held that the "festive occasions" within the scope of heading 9505 include not only birthdays, but also – for example – "other joyous events in a child's life," such as "a child's soccer party" or "a child obtaining a good report card." *See* <u>Nicholson II</u>, AP-97-110 & AP-97-113 (CITT Sept. 2, 1998).

(weddings and anniversaries).[32]   Indeed, neither party has here identified any country that limits

classification as "festive articles" under heading 9505 solely to merchandise associated with

recognized "holidays."[33]

_____

There is, however, no need here to reach the issue of the outer limits of the non-holiday events and occasions within the embrace of "festive occasions" for purposes of heading 9505.  All the non-holiday merchandise in this action is assertedly associated with either weddings and anniversaries, or birthdays – occasions comfortably within any reasonable definition of a "festive occasion."

[32]*See also* Def.'s Supp. Brief at 9 (conceding that "some countries may consider birthdays to be 'festive occasions'").

In addition to citing the Canadian decisions discussed above, both parties submitted for the record in this action summaries of various customs rulings from the European Union, drawn from the Binding Tariff Information ("BTI") database.  Like the Canadian decisions above, a number of the BTIs evidence other countries' treatment of non-"holiday" special occasions as "festive" occasions for purposes of heading 9505.

The BTIs submitted by both Wilton and the Government include GB [Great Britian] 105198189 (May 26, 2000) (multi-colored confetti spelling out "congratulations" classified under heading 9505); DEB/2140/04-1 [Germany] (December 22, 2004) (garland spelling out "Happy Birthday" classified under heading 9505); and GB 106575082 (May 17, 2001) (edible decorations for birthday cake classified under heading 9505).   In addition, the Government submitted BTI DEB/1232/04-1 (wooden miniature train candle holders, and numbers 1 through 6, for use in decorating birthday cakes, classified under heading 9505).

To be sure, as noted in section III.A above, U.S. courts are not bound even by the decisions of foreign tribunals, much less those of the administrative authorities of those countries.  Such decisions may, however, be entitled to "respectful consideration."  And there is merit in promoting uniformity and predictability in international trade and commerce, where possible.  *See generally* Cummins, 29 CIT at ____, ____, 377 F. Supp. 2d at 1368-69, 1375-76, *aff'd*, 454 F.3d 1361, 1366.

[33]Although not necessarily for this specific point, the Government did submit for the record some BTIs in which countries classified certain merchandise under headings other than 9505.  But such classification does not necessarily indicate that the countries in question limit classification under heading 9505 to only that merchandise associated with recognized "holidays."

To be classifiable under heading 9505, merchandise must be determined to be "*Festive*, carnival or other entertainment *articles . . . .*"  *See* Heading 9505, HTSUS (emphasis added).  Thus,

The icing on the cake – so to speak – is Customs' agreement to classify certain merchandise at issue in this action as "festive articles" under heading 9505.  The vast majority of the merchandise that is subject to the parties' Stipulation is made up of white or clear wedding cake separator plates, pillars, and columns marketed and sold by Wilton as wedding-related merchandise, for use on the elaborately-decorated, multi-tiered cakes typically served at wedding and wedding anniversary celebrations.  *See* Stipulation.[34]  The Government thus has already agreed that *that* merchandise – like *all* the merchandise subject to the Stipulation – is classifiable as "festive articles" under heading 9505.  And the Government has identified no recognized "holiday" with which the stipulated wedding cake separator plates, pillars, and columns are "closely associated."  Nor can the Government do so.

Equally, if not even more, clear cut is the Government's agreement under the parties' Stipulation to classify under heading 9505 Wilton's "Black Graduation Caps Topper Set" (item #

a country's classification of assertedly "festive" merchandise under heading 9505 indicates that the country in question treats as a "festive occasion" that special occasion with which the merchandise is associated – whether that special occasion is a "holiday" or not.

In contrast, the classification of merchandise under some heading other than heading 9505 does not necessarily indicate that the authorities in the country at issue do not treat as a "festive occasion" the non-"holiday" special occasion (such as a birthday) with which the allegedly "festive" merchandise is  associated.  For example, the classification may mean simply that – although the country recognizes birthdays and other non-"holiday" special occasions as "festive" occasions for purposes of heading 9505 – the relevant customs authorities determined that the symbolic content of the particular merchandise was not sufficiently closely identified with the non-"holiday" festive occasion.

[34]*See also* Pl.'s Brief at 19 n.4 (noting that "the Stipulation filed in this case provides for the classification as 'festive articles' of Heading 9505 of many articles designed for use in connection with birthdays, weddings and other private festive occasions"), 21 (same); Pl.'s Reply Brief at 2 (same).

2113-1801) – which, as its name suggests, consists of two identical, miniature black graduation caps

(with the word "Graduation" in script across the front of the caps), sold for use as "cake toppers"

or "party favors."   Again, the Government has identified no recognized "holiday" with which the

"Black Graduation Caps Topper Set" is closely associated.   Nor can it do so.[35]   In short, the

Government's claim that "private festive celebrations" such as birthdays, weddings, anniversaries,

and graduations are not "festive" occasions for purposes of heading 9505 simply cannot be

reconciled with the Government's position as evidenced in the parties' Stipulation.[36]

   In sum, there is no merit to the Government's claim that the "festive" occasions within the

scope of HTSUS heading 9505 are limited to "recognized" holidays.   At a minimum, special

---

[35]In light of the position that the Government takes in its briefs filed with the Court, the basis for the Government's agreement to the classification of other merchandise subject to the Stipulation is similarly unclear – Wilton's Carousel Separator Topper Set (item # 2103-1139), Wilton's Circus Balloons Topper Set (item # 2113-2366), Wilton's Pooh Pick (item # 2113-3000), Wilton's Mickey Pick (item # 2113-3600), and Wilton's Teen Doll Pick - Brunette (item # 2815-101), to name a few. Indeed, a review of the list of the more than 120 items classified as "festive articles" pursuant to the parties' Stipulation suggests that the sole item with symbolic content that is obviously associated with a recognized "holiday" is Wilton's "Glowing Pumpkin Fun Pix" (item # 2113-1287), which depict smiling Halloween jack-o-lanterns.

The Government's claim that "private festive celebrations" such as birthdays, weddings, anniversaries, and graduations are not "festive" occasions for purposes of heading 9505 also cannot be reconciled with Customs' classification determinations in certain other cases. *See*, *e.g.*, NYRL A80948 (April 2, 1996) (*cited in* Pl.'s Protest at 11) (classifying "wedding cake ornaments/tier toppers" as "festive articles" for purposes of heading 9505). *But see* NYRL J89592 (Oct. 29, 2003) (stating that "weddings are not regarded as festivals or holidays" for purposes of heading 9505).

[36]The Government takes strong exception to Wilton's reliance on the parties' Stipulation to support its claim that "festive" occasions under heading 9505 are not limited to recognized "holidays." *See* Def.'s Brief at 18 n.11; Def.'s Supp. Brief at 8-9. The Government's objections are largely lacking in merit, however. In any event, quite apart from the Stipulation, Wilton's point is proved by the drafters' choice of the term "festive" (rather than "holiday"), and by dictionary definitions of the term "festive."

occasions and events such as the weddings, anniversaries, and birthdays at issue here are "festive"

occasions within the meaning of that heading.

### D.  Customs' Claim to Skidmore Deference

Although Customs denied Wilton's Protests in this matter without issuing a ruling letter, the

Government nevertheless asserts that Customs' position is entitled to the full measure of Skidmore

deference.  *See* Def.'s Brief at 4, 6-7 (*quoting* Park B. Smith, 347 F.3d at 925, for the proposition

that, "even where no formal decision has been issued with respect to specific merchandise,

'Skidmore weight should be given to Customs' position'").  *But see* Pl.'s Reply Brief at 17-19; Pl.'s

Supp. Brief at 4-9.

According to the Government, Skidmore deference is due because "Customs' classification

decisions in this case are consistent with its position regarding the classification of cake decorations

as set forth in several Headquarters Ruling Letters ('HQ'), New York Ruling Letters ('NY'), and

its interpretation of the tariff term 'festive articles' set forth in the informed compliance publication

entitled 'What Every Member of the Trade Community Should Know About Classification of

Festive Articles as a result of the Midwest of Cannon Falls Court Case (1997).'" *See* Def.'s Brief

at 5.  But Customs has no colorable claim to deference under the circumstances of this case.

First, as noted above, not only was Customs' position in this matter not the product of a

deliberative notice-and-comment process, it was not even embodied in a ruling letter specific to the

merchandise at issue in this action.  Nor does the Government suggest that any of the other Customs

ruling letters to which it alludes were subject to notice and comment.  *See* Structural Indus., 356 F.3d

at 1370 (refusing Skidmore deference where, *inter alia*, Customs ruling letter was not product of

notice-and-comment process); Hartog Foods Int'l, Inc. v. United States, 291 F.3d 789, 791 (Fed. Cir.

2002) (extending no Skidmore deference "because Customs denied [the] protest without an official

ruling").

Further, the "position" for which the Government seeks deference is entirely unclear.  The

Government's brief (quoted above) asserts broadly that Customs' classification decisions in this case

are "consistent with [the agency's] position regarding the classification of cake decorations as set

forth in several Headquarters Ruling Letters ('HQ'), [and] New York Ruling Letters ('NY')."  See

Def.'s Brief at 5.  However, nowhere in its briefs does the Government identify the specific Customs

ruling letters to which it is there referring.[37]    And nowhere in its briefs does the

---

[37]Although they are expressly *not* cited to support Customs' claim to Skidmore deference, the Government did append to its opening brief copies of eight Customs ruling letters.  Two of the eight ruling letters are cited to show that "Customs has interpreted subheading 9505.90.40 to cover single use, disposable party goods."  *See* Def.'s Brief at 17 n.10 (*citing* NYRL G81888 (Sept. 29, 2000); NYRL D83845 (Nov. 18, 1998)).  The other six ruling letters are cited to illustrate that "Customs has classified toy figures used to decorate a cake but which could be retained by the consumer for lasting entertainment purposes . . . as 'dolls' in Heading 9502 or as 'other toys' in Heading 9503."  *See* Def.'s Brief at 27 n.17 (*citing* HQ 954996 (April 15, 1994); HQ 954997 (July 1, 1994); HQ 954998 (July 1, 1994); HQ 954999 (June 24, 1994); HQ 954616 (May 10, 1994); NYRL 804188 (Dec. 15, 1994)).

But even if those eight ruling letters were the ones on which the Government was relying to support Customs' claim to deference here, that reliance would be in vain.

As the dates of the ruling letters indicate, all but two antedate the decisions of both this court and the Court of Appeals in Midwest of Cannon Falls, a case that the Government itself has labeled "seminal."  *See* Def.'s Brief at 10.  And the two ruling letters that were issued after Midwest of Cannon Falls do not mention (or even reflect the teachings of) the Court of Appeals in that case. *See* NYRL G81888 (Sept. 29, 2000); NYRL D83845 (Nov. 18, 1998).

All eight of the ruling letters attached to the Government's brief deal with cake decorations. *See* NYRL G81888 (American flag picks); NYRL D83845 (wedding cake topper); HQ 954996 (teen boy and girl cake toppers); HQ 954997 ("Walking Waldo" cake topper); HQ 954998 (assorted cake

toppers of "Garfield" figure attired for various sports); HQ 954999 (cake toppers of Jasmine on Rajah the Tiger and Genie with Aladdin on a Carpet); HQ 954616 (Beauty and the Beast cake toppers); NYRL 804188 (Power Ranger cake toppers).  As Wilton notes, however, none of those items is similar to the merchandise still in dispute in this action.  *See* Pl.'s Reply Brief at 19 (asserting that Government "has not pointed to one ruling . . . [involving merchandise that] closely resembles the merchandise" in this action).

Nor does a review of the ruling letters suggest that there are to be distilled from them any general principles with real relevance to the facts of this case.  Indeed, two of the ruling letters include no rationale whatsoever.  They state simply that the merchandise and the parties at issue are the same as those in a prior ruling, and endorse that prior ruling.  *See* HQ 954997; HQ 954998.  A third letter includes no analysis of heading 9505.  *See* HQ 954999.

Several of the remaining ruling letters indicate that cake decorations within the scope of heading 9505 must be "inexpensive," "flimsy," and for one-time use.  *See* NYRL D83845; HQ 954996; HQ 954616; NYRL 804188.  However, Customs did not deny Wilton's Protests on the grounds that the merchandise at issue was durable or expensive, and the Government has not challenged any specific item remaining at issue in this action on such grounds.  Nor could the Government do so.  The record as to Wilton's wedding merchandise (including the Cherub Place Card Holders) and its cake press sets indicates to the contrary.  *See*, *e.g.*, Pl.'s Reply Brief at 16-17 (noting that wedding items "are mainly plastic and are not intended to be used again – they are inexpensive and relatively cheap items"); Pl.'s Supp. Reply Brief at 5 (noting that wedding items "are one-time use and are generally thrown away after the wedding or anniversary"); Pl.'s Exhs. (some of which list the very modest prices of items at issue, as well as the prices of other merchandise comparable to that at issue).  More importantly, the Court of Appeals has flatly rejected Customs' attempts to exclude merchandise from classification under heading 9505 based on its durability and value.  *See* Midwest of Cannon Falls, 122 F.3d at 1428.  *Cf*. Nicholson II, AP-97-110 & AP-97-113 (CITT Sept. 2, 1998) (holding that "goods do not necessarily have to be made of non-durable material" to be classifiable as "festive articles" under heading 9505).

It is similarly irrelevant that six of the ruling letters indicate that "Customs has classified toy figures used to decorate a cake but which could be retained by the consumer for lasting entertainment purposes . . . as 'dolls' in Heading 9502 or as 'other toys' in Heading 9503."  *See* Def.'s Brief at 27 n.17 (citations omitted).  The merchandise still at issue includes no figurines used to decorate cakes.  The Government does not contend otherwise.  *See* Def.'s Brief at 26 (stating that "[n]one of the articles at issue here are 'figurines,' and the articles at issue here have a function other than as 'cake decorations'").  Nor was any of the merchandise still at issue liquidated by Customs either as "dolls" under heading 9502 or as "other toys" under heading 9503.  *Cf*. Def.'s Supp. Brief at 6 (asserting that none of the articles at issue have "toy-like amusement qualities").

Government explain how those unspecified Customs ruling letters concerning cake decorations are consistent with Customs' actions in this case.

In addition to the unspecified Customs ruling letters that it invokes, the Government also asserts that Customs' determination in this matter is consistent with the agency's position on the classification of "festive articles" as set forth in the Customs publication, "What Every Member of the Trade Community Should Know About Classification of Festive Articles as a Result of the Midwest of Cannon Falls Court Case" (Nov. 1997), *published at* 32 Cust. Bull. & Dec. Nos. 2/3 at

---

In addition, two of the Customs rulings recite the fact that the Explanatory Notes to heading 9505 expressly refer to cake decorations, but fail to acknowledge that such decorations are limited to those "traditionally associated with a particular festival."  *See* NYRL G81888; NYRL D83845. It is impossible to tell from a reading of those rulings whether Customs' analysis there simply suffered from a lack of rigor, or whether – more fundamentally – the agency was taking the position that *all* cake decorations were classifiable under heading 9505, without regard to their association with a "particular festival" (provided that the decorations were flimsy, inexpensive, and disposable). Both possibilities are troubling – particularly since two of the key issues in this case deal directly with that particular limitation (*i.e.*, whether or not "particular festival[s]" are restricted to recognized "holidays," and whether certain motifs are "closely associated with" festive occasions within the scope of heading 9505).

Further, the only ruling of the eight that found merchandise classifiable under heading 9505 – the ruling on the American flag picks – fails to indicate which "festive" occasion Customs found that merchandise to be "closely associated with."  *See* NYRL G81888.  That failing is all the more troubling because the ruling postdates Midwest of Cannon Falls. The only other ruling letter that postdates Midwest of Cannon Falls concerned a wedding cake topper.  As noted above, that ruling too is conspicuously silent as to requirement of a "close association with" a specific festive occasion. *See* NYRL D83845.  Thus, Customs there denied classification under heading 9505 not because the agency interpreted the heading to exclude wedding-related merchandise (the position that the agency has taken in this case), but – rather – because the wedding cake topper was not flimsy, inexpensive, and disposable.  *Id.*  The coup de grace here is NYRL A80948, cited in Wilton's Protest.  *See* Protest at 11-12 (*citing* NYRL A80948 (April 2, 1996)).  In that ruling, Customs classified a *wedding cake topper* under heading 9505.  Quite apart from the merits of the numerous other criticisms listed above, that ruling would alone suffice to lay to rest the Government's claim that Customs has had a consistently held position on the classification of cake decorations as "festive articles" under heading 9505.

169 (Jan. 21, 1998).  However, that publication has been so thoroughly discredited that Customs has

now withdrawn it.  *See generally* Pl.'s Reply Brief at 18-19; Pl.'s Supp. Brief at 6-7.[38]  The

publication thus does nothing to support Customs' claim to deference in this action.  More generally,

to the extent that the Government's argument here is that Customs has taken a "consistent" position

on the scope of "festive articles" under heading 9505, it is little exaggeration to say that the Court

of Appeals has just as consistently rejected Customs' position.

Further, there is nothing else about the position that Customs took at the administrative level

in this case that would support a claim of deference.  There is no relationship between any rationale

for the agency's denial of the protests at issue, and the arguments made here to defend those denials.

In denying Wilton's Protests, for example, Customs did not rely on the 2003 amendment to the

Explanatory Notes excluding "utilitarian" or "functional" articles from the scope of heading 9505,

on which the Government relies so heavily here.  *See* Protests (annotated by Customs to indicate

denial, stating simply that "merchandise does not qualify as toys or festive articles," and that "mdse.

does not qualify for either toys or festive articles").  Indeed, Customs could not have done so.  At

the time Customs denied the Protests in 2000, no such change to the Explanatory Notes was even

under consideration by the World Customs Organization.[39]  *See* Pl.'s Reply Brief at 5 (noting that,

---

[38]*See*, *e.g.*, Park B. Smith, 25 CIT at 508 n.1 (criticizing Customs publication and castigating the agency for its "inexcusably irresponsible attempt . . . to present to the public its two-dimensional/three-dimensional distinction theory as the current state of the law after Midwest"), *aff'd in part*, *rev'd in part*, *and remanded*, 347 F.3d at 929 (firmly rejecting, *inter alia*, the "two-dimensional" *versus* "three-dimensional" distinction that Customs and Government sought to draw).

[39]Customs' denial of Wilton's Protest also predated even this court's opinion in Park B. Smith, and thus – by definition – did not reflect the gloss that the Court of Appeals' opinion in that case added to Midwest of Cannon Falls.

in denying Protest, "Customs did not, and could not, rely upon the later-adopted Explanatory Note change as the basis for its classification of Wilton's goods in liquidation"); *see generally* Michael Simon Design, 30 CIT at ____, 452 F. Supp. 2d at 1323 (denying deference in "festive articles" case, noting that Government relied on 2003 amendment to Explanatory Notes in litigation, but that protest was denied solely on other grounds, which in turn were not asserted in litigation).

Nor did Customs' denial of Wilton's Protests make any reference to the "one step removed" argument that the Government has asserted in this litigation.  *See* section III.B, *supra*.  Customs' terse dismissal of Wilton's Protests similarly failed to focus to any degree on issues such as the scope of the "festive" occasions within the ambit of heading 9505, and the specific motifs of the merchandise here at issue – arguments that the Government has advanced strenuously in this forum. *See* section III.C, *supra*; section III.F, *infra*.

For all these reasons, Customs' position lacks "power to persuade," and thus merits no deference in this action.  *See* Skidmore, 323 U.S. at 140.

### E.  The Classification of Merchandise in Sets

As discussed in greater detail below, some of the items at issue consist of multiples of the same article.[40]  For example, Wilton's Cherub Place Card Holders are sold in sets of four identical card holders.  In other instances, an item consists of multiple articles that are identical, except for

---

[40]Until expressly requested to do so, neither party ever identified any items of merchandise at issue as sets, much less briefed the issue of the classification of such merchandise – notwithstanding ample opportunity through two full rounds of initial briefing, followed by oral argument and another two additional rounds of post-oral argument supplemental briefing.  *See generally* Pl.'s Response to the Court's Letter of May 7, 2007 at 4-8; Letter to Court from Counsel for Plaintiff (May 15, 2007); Letter to Court from Counsel for Defendant (May 16, 2007).

variations in size – the Star Nesting Perimeter [Cookie] Cutter Set, for example.  Other items – such

as the Christmas Cookie Collection Set – comprise a number of different articles (in that case,

assorted Christmas cookie cutters).  And, finally, the merchandise at issue includes three different

types of Counter Display Units ("CDUs"), which are retail displays offered by Wilton for seasonal

use in stores such as Target, Wal-Mart, or Michael's.  Each such retail display unit includes several

different types of cookie cutters or cookie stamps, which the retailer sells to shoppers individually.

*See generally* 144 ct. North Pole Mini Cookie Cutter CDU [Counter Display Unit]; 48 ct. Jolly

Stamps! Cookie Stamp CDU [Counter Display Unit]; Halloween Mini [Cookie] Cutter CDU

[Counter Display Unit] (96 ct.).

       Where all of the articles in a set are classifiable under a single heading of the HTSUS, no

special classification analysis is required.  In this case, that includes sets that are made up of several

articles that are identical (or identical except for size), as well as sets that are made up of several

different articles  all of which are classifiable under the same heading of the HTSUS.  Further, no

special analysis of the CDUs is required, because the assorted articles included in them are not "put

up in sets for retail sale," but, instead, are sold – and classified – individually.  *See* Explanatory

Notes VI & X, General Rule of Interpretation ("GRI") 3(b), HTSUS.

       In contrast, where an item consists of two or more articles "put up in [a] set[] for retail sale"

and the articles within that set "*prima facie*, fall under two or more headings," classification is

governed by GRI 3(b) of the HTSUS.[41]  Under GRI 3(b) – which sets forth the so-called "essential

------

[41]The Explanatory Notes to GRI 3(b) explain that – for purposes of that rule – "goods put up in sets for retail sale" means goods which "consist of at least two different articles which are, *prima facie*, classifiable in different headings.  Therefore, for example, six fondue forks cannot be regarded

character" test – "goods put up in sets for retail sale . . . shall be classified as if they consisted of the material or component which gives them their essential character." *See* GRI 3(b), HTSUS.

As the Court of Appeals has emphasized, the "essential character" inquiry is fundamentally factual in nature. *See* Structural Indus., Inc. v. United States, 356 F.3d 1366, 1370 (Fed. Cir. 2004) (*citing* Pillowtex Corp. v. United States, 171 F.3d 1370, 1376 (Fed. Cir. 1999)). And, as the Explanatory Notes to GRI 3(b) make clear, there is no hard-and-fast rule for conducting that inquiry, which is more art than science:

> The factor which determines essential character will vary as between different kinds of goods. It may, for example, be determined by the nature of the material or component, its bulk, quantity, weight or value, or by the role of a constituent material in relation to the use of the goods.

Explanatory Note VIII, GRI 3(b), HTSUS; Canadian Vinyl Indus., Inc. v. United States, 76 Cust. Ct. 1, 2, 408 F. Supp. 1377, 1378 (1976), *aff'd*, 64 C.C.P.A. 97, 555 F.2d 806 (1977) (noting that "[d]iscernment" of "essential character" is not "an exact science").

In addition to the examples listed in the Explanatory Notes, Better Home Plastics identified various other factors that may be considered in determining "essential character," including the respective indispensability of the properties of the components of the merchandise, the respective cost of the components of the merchandise, the basis for a consumer's decision to purchase the merchandise, the respective duration and/or frequency of the use of the components, and the manner in which the merchandise is invoiced. *See* Better Home Plastics Corp. v. United States, 20 CIT 221, 224, 916 F. Supp. 1265, 1267 (1996), *aff'd*, 119 F.3d 969 (Fed. Cir. 1997); *see also* Conair Corp.

---

as a set within the meaning of this Rule." *See* Explanatory Note X, GRI 3(b), HTSUS.

v. United States, 29 CIT ____, ____, 2005 WL 1941649 at * 5 - * 6 (2005) ("essential character"

of tabletop fountains imparted by pump, rather than sculpture element of fountain; consumer's

decision to purchase fountain "based entirely on the presence of the submersible pump and its ability

to generate the sound of flowing water").  The marketing of the merchandise is relevant as well,

though it does not dictate classification.  *See* Mead Corp. v. United States, 283 F.3d 1342, 1349

(Fed. Cir. 2002).

If merchandise cannot be classified pursuant to GRI 3(b) and the "essential character" test,

then it is classified "under the heading which occurs last in numerical order among those which

equally merit consideration," pursuant to GRI 3(c).  *See* GRI 3(c), HTSUS.

## F.  The Classification of the Subject Merchandise

In light of the analyses above, all that remains is to classify each individual piece of the

subject merchandise, applying the two-prong test for "festive articles" established in Midwest of

Cannon Falls, 122 F.3d 1423.  As distilled in Park B. Smith and outlined above, that test requires

that an article be both (1) "closely associated with a festive occasion," and (2) "used or displayed

principally during that festive occasion."  *See* Park B. Smith, 347 F.3d at 927 (*citing* Midwest of

Cannon Falls, 122 F.3d at 1429).  If the article's use or display at other times would not be

"aberrant," then the merchandise does not satisfy the test and cannot be classified as a "festive

article" under heading 9505.  Park B. Smith, 347 F.3d at 927, 929.[42]

---

[42]Incredibly, although their briefs are replete with casual, offhand (and generally conclusory) assertions as to whether or not a particular symbol or motif is "closely associated with" a particular "festive" occasion, neither party systematically briefed the motifs and symbols at issue in this action.

1. <u>Wedding Cake Separator Plates, Pillars, Columns, and Plate Legs</u>

Much of the Wilton merchandise remaining at issue consists of wedding cake separator plates, pillars and columns, and separator plate legs, all of which Wilton contends are classifiable as "festive articles" under heading 9505.

Specifically, the separator plates, pillars and columns, and plate legs at issue include the 9" Square Separator Plate (item # 302-1020), the 13" Square Separator Plate (item # 302-1063), the 7" Hexagon Separator Plate (item # 302-1705), the 10" Hexagon Separator Plate (item # 302-1748), the 13" Hexagon Separator Plate (item # 302-1764), the 16" Hexagon Separator Plate (item # 302-1799), the 17" Crystal-Look Separator Plate (item # 302-1810), the 7" Crystal-Look Separator Plate (item # 302-2013), the 9" Crystal-Look Separator Plate (item # 302-2035), the 11" Crystal-Look Separator Plate (item # 302-2051), the 13" Crystal-Look Separator Plate (item # 302-2078), the 16 ½" Heart Separator Plate (item # 302-2118), the 8 ½" Oval Separator Plate (item # 302-2130), the 11 ½" Oval Separator Plate (item # 302-2131), the 14 ½" Oval Separator Plate (item # 302-2132), the 14" Tier Stand Additional Cake Plate (item # 302-7940), the 16" Tier Stand Additional Cake Plate (item # 302-7967), the 18" Tier Stand Additional Cake Plate (item # 302-7983), the 6" Separator Plate – White (Replacement) (item # 302-9730), the   8" Separator Plate – White (Replacement) (item # 302-9749), the 10" Separator Plate – White (Replacement) (item # 302-9757), the 16" Separator Plate – White (Replacement) (item # 302-9780), the 7" Crystal-Look Spiked

---

Accordingly, the Court has been forced to scour both the caselaw in general and the evidence of record here, in an effort to remedy the shortcomings of the parties' briefs and to dispose of the pending cross-motions.  Under the circumstances, however, any attempt by either party to raise on appeal an issue concerning symbols and motifs should meet with skepticism and should be scrutinized closely.

Pillars (item # 303-2322), the 9" Crystal-Look Spiked Pillars (item # 303-2324), the 6 ½" Tier Stand Additional Column (item # 303-7910), the 7 3/4" Tier Stand Additional Column (item # 304-5009), the Tall Tier Cake Stand Basic Set (item # 304-7915), and the Glue-On Plate Legs (item # 304-7930).  *See* Pl.'s Amended Exh. B-1.[43]

As discussed above, the wedding cake separator plates, pillars and columns, and plate legs are used in combination with one another to separate and elevate the layers of a multi-tiered cake of the type typically served at a wedding reception or an anniversary celebration.  To be sure, the merchandise has a "functional" or "utilitarian" purpose.  But, because the separator plates, pillars and columns, and plate legs are visible when the wedding cake is presented (and, indeed, are part of the "presentation" of the wedding cake as a whole),[44] they must be beautiful, as well as stable and strong.  *See generally* section I.A, *supra*.[45]

The separator plates, pillars and columns, and plate legs are, in essence, non-edible cake decorations for use on multi-tiered wedding-type cakes.  And the Explanatory Notes to heading 9505 expressly state that the heading covers "[c]ake and other *decorations* . . . which are traditionally

---

[43]As the Government correctly observes, both the original and the amended versions of Plaintiff's Exhibit B-1 mistakenly list three articles (with three different item numbers) which are actually covered by the parties' Stipulation, and thus are no longer in dispute.  *See* Def.'s Response to Pl.'s Statement of Material Facts ¶ 5; Stipulation (item # 303-2171; item # 303-2196; item # 303-2197); Pl.'s Amended Exh. B-1 (same item numbers); Pl.'s Exh. B-1 (same item numbers).

[44]No one speaks of an assembled multi-tiered wedding cake as "wedding cakes" (plural).  Instead, the creation is viewed as a whole – "the wedding cake."

[45]The fact that numerous different styles of separator plates, pillars and columns, and plate legs are offered for sale is further proof of their decorative nature.  *See generally* section I.A, *supra* (highlighting various styles of merchandise offered for sale).  Presumably, if the appearance of the separator plates, pillars and columns, and plate legs were of no significance, there would be no reason to offer more than a single style.

associated with a particular festival."[46]  *See* Explanatory Notes, Heading 9505, HTSUS; Pl.'s Brief

at 16-17 (asserting that items at issue are "cake decorations" within meaning of Explanatory Notes

to heading 9505); section III.C, *supra* (discussing weddings as "festive" occasions within meaning

of heading 9505).

      In addition, as a review of the exhibits that Wilton filed with the Court amply demonstrates,

Wilton's separator plates, pillars and columns, and plate legs are designed to evoke the look of fine

leaded crystal, elegant lace, and other nuptial motifs "closely associated with" weddings and

anniversaries.   *See* <u>Park B. Smith</u>, 347 F.3d at 927 (citation omitted).   They are, in short,

unmistakably wedding merchandise, and are marketed and sold as such by Wilton itself, and by the

retailers to which Wilton sells the merchandise.  Moreover, the design, style, and overall look of the

separator plates,  pillars and columns, and plate legs are so distinctively nuptial that their use on

routine occasions would be patently "aberrant."[47]  *See* <u>Park B. Smith</u>, 347 F.3d at 927, 929.[48]

---

      [46]The Government itself describes as "cake decorations" the merchandise that is the subject of the parties' Stipulation.  *See* Def.'s Supp. Brief at 9.  And, as discussed in greater detail below, much of that merchandise is virtually identical to the wedding cake separator plates, pillars and plate legs still at issue.

      [47]Nowhere in its briefs does the Government dispute that the separator plates, pillars and columns, and plate legs reflect a "bridal" or "nuptial" motif.  Nowhere does the Government suggest that the separator plates, pillars and columns, and plate legs are not obviously wedding merchandise. *See*, *e.g.*, Def.'s Brief at 5 (noting that "the parties agree that the imported merchandise consists of *wedding cake* pillars, separator plates, cake bases, [and] plate pegs . . . "; and "[t]he parties agree that the wedding cake separators, plate pegs, and pillars are used to separate segments of *a wedding cake* which is comprised of several tiers.") (emphases added).  Nor does the Government anywhere dispute that it would  be clearly aberrant to use the merchandise other than for a tiered wedding-style cake.

      [48]Indeed, as Wilton points out, a multi-tiered cake is served only on an occasion such as a wedding, when a very large cake is needed because there are a very large number of guests.  *See* Pl.'s Reply Brief at 16; Pl.'s Supp. Reply Brief at 4.

The determination that Wilton's wedding cake separator plates, pillars and columns, and plate legs are "festive articles" under heading 9505 is consistent with the decision of the Canadian International Trade Tribunal ("CITT") in a case involving similar merchandise, and is further reinforced by the parties' Stipulation in this action.

The imported items at issue in <u>Nicholson I</u> were Wilton merchandise comparable to that at issue here – wedding cake separator plates, columns, and pillars (as well as cake toppers). *See* <u>Nicholson I</u>, AP-96-080 (CITT April 25, 1997). The CITT observed that the Explanatory Notes to heading 9505 expressly state that "festive articles" include "[c]ake and other decorations . . . which are traditionally associated with a particular festival." *Id.* Noting that "[a] 'decoration' is generally defined as 'anything used to add beauty: ornament,'" the CITT ruled that "the goods in issue, which sit on or beside wedding or anniversary cakes, are decorations or ornaments associated with particular festive occasions or festivals, namely weddings and anniversaries." *Id.*

And the CITT expressly ruled that the Wilton wedding cake separator plates, columns, and pillars at issue there – virtually identical to the merchandise in dispute here – were wedding cake decorations, and thus "festive articles" within the scope of heading 9505:

> With respect to the columns or pillars and separator plates, in particular, . . . they are, in part, a structural element of the cake and, for that reason, have a function, in themselves. However, . . . *the physical appearance of these products is decorative such that they may also be considered to be decorations or ornaments of cakes.*

<u>Nicholson I</u>, AP-96-080 (CITT April 25, 1997) (emphasis added).

Finally, there is the Stipulation between the parties. As Wilton notes, "Customs has already agreed that [items similar to the separator plates, columns and pillars, and plate legs still at issue] are classified under HTS Subheading 9505.90.4000." Pl.'s Brief at 21; *see also id.* at 19 n.4; Pl.'s

Reply Brief at 2; Pl.'s Supp. Reply Brief at 4-5.  Wilton further asserts that "[t]here is no reasonable

basis to distinguish the disputed merchandise . . . from the goods which have been stipulated" for

classification under heading 9505.  Pl.'s Brief at 21.

It is true that the Government has made no meaningful attempt – really, no attempt at all –

to distinguish the merchandise which is the subject of the Stipulation from the separator plates,

pillars and columns, and plate legs remaining at issue.  *See* Def.'s Brief at 17 n.10.[49]  And an

independent comparison of the two lists, and a review of the exhibits illustrating the merchandise,

reveals no basis for drawing meaningful distinctions.

Thus, for example, Customs stipulated to the classification under heading 9505 of the 9"

Round Crystal Separator Set (item # 301-1509), the 11" Round Crystal Separator Set (item # 301-

1511), and the 13" Round Crystal Separator Set (item # 301-1513).  Each of those sets consists of

crystal-look separator plates of the specified diameters (9", 11", or 13"), together with pillars in a

corresponding size.  It is therefore entirely unclear why Customs refused to stipulate to the

classification of the 9" Crystal-Look Separator Plate (item # 302-2035), the 11" Crystal-Look

Separator Plate (item # 302-2051), and the 13" Crystal-Look Separator Plates (item # 302-2078).

---

[49]The Government states that Customs agreed to stipulate to the classification of "numerous cake decorations which are single use, disposable party goods."  *See* Def.'s Brief at 17 n.10. However, rather than attempting to factually distinguish the stipulated merchandise from that remaining at issue, the Government simply states summarily that "the articles which are before the Court in the parties' cross-motions are not single-use, disposable party goods."  *Id*.; *see also id*. at 18 n.11 (asserting in conclusory fashion that "the merchandise which the parties have proposed for stipulation and those articles which remain at issue are, simply put, not identical or substantially similar enough to justify the same classification"); Def.'s Supp. Brief at 8-9 (asserting that "unlike the article which the parties have agreed to stipulate, the articles . . . in the parties' cross-motions are *not* single use, disposable party goods").

Similarly, although Customs stipulated to the classification under heading 9505 of the 7"

Grecian *Spiked* Pillars and the 9" Grecian *Spiked* Pillars (item # 303-3710 and item # 303-3712,

respectively) (emphasis added) – and although Customs stipulated to the classification under

heading 9505 of the 3" *Crystal-Look* Pillars, the 5" *Crystal-Look* Pillars, and the 7" *Crystal-Look*

Pillars (item # 303-2171, item # 303-2196, and item # 303-2197) (emphasis added) – Customs

inexplicably refused to stipulate to the classification of the 7" Crystal-Look Spiked Pillars or the 9"

Crystal-Look Spiked Pillars (item # 303-2322 and item # 303-2324).

Like the wedding merchandise subject to the parties' Stipulation, the remaining wedding

cake separator plates, pillars and columns, and plate legs are all classifiable as "festive articles"

under HTSUS heading 9505 – as that heading is interpreted in the companion Explanatory Notes,

*and* under the criteria articulated by the Court of Appeals in <u>Midwest of Cannon Falls</u> and <u>Park B.</u>

<u>Smith</u>.

Specifically, the 9" Square Separator Plate, the 13" Square Separator Plate, the 7" Hexagon

Separator Plate, the 10" Hexagon Separator Plate, the 13" Hexagon Separator Plate, the 16" Hexagon

Separator Plate, the 17" Crystal-Look Separator Plate, the 7" Crystal-Look Separator Plate, the 9"

Crystal-Look Separator Plate, the 11" Crystal-Look Separator Plate, the 13" Crystal-Look Separator

Plate, the 16 ½" Heart Separator Plate, the 8 ½" Oval Separator Plate, the 11 ½" Oval Separator

Plate, the 14 ½" Oval Separator Plate, the 14" Tier Stand Additional Cake Plate, the 16" Tier Stand

Additional Cake Plate, the 18" Tier Stand Additional Cake Plate, the 6" Separator Plate – White

(Replacement), the 8" Separator Plate – White (Replacement), the 10" Separator Plate – White

(Replacement), the 16" Separator Plate – White (Replacement), the 7" Crystal-Look Spiked Pillars,

the 9" Crystal-Look Spiked Pillars, the 6 ½" Tier Stand Additional Column, the 7 3/4" Tier Stand

Additional Column, the Tall Tier Cake Stand Basic Set, and the Glue-On Plate Legs are properly

classified under HTSUS subheading 9505.90.40, as "Festive, carnival or other entertainment articles

. . . : Other: Confetti, paper spirals or streamers, party favors and noisemakers; parts and accessories

thereof."

2.  <u>Cherub Place Card Holders</u>

Also in dispute are Wilton's Cherub Place Card Holders (item # 1001-9374).  *See* Pl.'s Exh.

D-1.  Like the other wedding merchandise (discussed above), Wilton contends that its Cherub Place

Card Holders too are classifiable as "festive articles" under heading 9505.

As discussed in section I.A above, the Cherub Place Card Holders are small, classic cherub

figurines with their arms outstretched above their heads, to hold seating cards.  They are designed

specifically for use at wedding receptions, to designate guests' seating assignments or guests' places

at their tables.

Like the other wedding merchandise at issue, the Cherub Place Card Holders are made of

plastic, so as to be inexpensive and disposable.  But, due to the nature of the event for which they

are designed, they are styled to look like much more expensive material (such as porcelain or

marble), and are used to complement the other design elements of a nuptial celebration.  *See*

*generally* section I.A, *supra*.

The Cherub Place Card Holders are thus "decorations" for use at a wedding celebration.  And

the Explanatory Notes to heading 9505 expressly state that the heading covers "[c]ake and *other*

*decorations* . . . which are traditionally associated with a particular festival."  *See* Explanatory Notes,

Heading 9505, HTSUS (emphasis added); Pl.'s Brief at 16 (*quoting* definition of "decoration" in

American Heritage Dictionary 372 (1991), as "an object . . . used to furnish or adorn with

fashionable or beautiful things"); section III.C, *supra* (discussing weddings as "festive" occasions

within meaning of heading 9505).[50]

Even if the Cherub Place Card Holders were not deemed to be "decorations" within the

express language of the Explanatory Notes to heading 9505, they would nevertheless be classifiable

under that heading pursuant to <u>Midwest of Cannon Falls</u> and <u>Park B. Smith</u>. As a review of the

exhibits submitted by Wilton reveals, both by their luxury-look design and their use of a symbol

traditionally identified with love and romance, the Cherub Place Card Holders reflect classic nuptial

motifs. *See* <u>Park B. Smith</u>, 347 F.3d at 927 (citation omitted); Pl.'s Brief at 4-5 (noting that cherub

is "a typical romantic theme featured at wedding or anniversary celebrations"); *see generally* Pl.'s

Exhs. (depicting numerous items of wedding merchandise reflecting cherub motif). Indeed, as part

of the Stipulation entered into by the parties to this action, Customs agreed to classify as "festive

articles" under heading 9505 Wilton's Harvest Cherub Separator Set (item # 301-3517). *See*

---

[50]As discussed in section III.A above, the Government in this litigation has sought to rely on the 2003 amendment to the Explanatory Notes to heading 9505 to support its argument that "utilitarian" or "functional" merchandise is not classifiable under that heading.

It is worth noting that the 2003 amendments expressly refer to *table* decorations. *See* Explanatory Notes, Heading 9505, HTSUS, at xx-9505-1 (2007) (reflecting 2003 amendment) (indicating that scope of heading 9505 includes "[f]estive decorations used to decorate rooms, *tables*, etc.") (emphasis added). To that extent, the 2003 amendment to the Explanatory Notes may buttress Wilton's claim that its Cherub Place Card Holders – which serve both to designate wedding guests' seating assignments and to decorate wedding reception tables (while complementing other elements of the design and ambience of the event) – are classifiable as "festive articles" within the scope of heading 9505, even under the terms of the Explanatory Notes *prior to* the 2003 "clarifying" amendments.

Stipulation.  As its name suggests, that item – like numerous other pieces of Wilton's wedding merchandise – features cherubs as the most prominent motif.  *See* Stipulation.[51]

Like Wilton's cake separator plates, pillars and columns, and plate legs (discussed above), the Cherub Place Card Holders are wedding merchandise, and are marketed and sold as such by Wilton itself, and by the retailers to which Wilton sells the merchandise.  Moreover, the design, style, and overall look of the Cherub Place Card Holders are so distinctively nuptial that their use on routine occasions would clearly be "aberrant."  *See* <u>Park B. Smith</u>, 347 F.3d at 927, 929.[52]

_____

[51]As noted elsewhere above, the Government repeatedly asserts that this action is ripe for summary judgment.  It nevertheless seems to quibble with Wilton's statement that a cherub is a motif closely associated with weddings.  *See* Def.'s Response to Pl.'s Statement of Facts ¶ 7 (denying "that a 'cherub' is 'a typical romantic theme featured at wedding or anniversary celebrations'").  The Government proffers not a scintilla of evidence to support its position, however.  *See* <u>Mingus Constructors, Inc. v. United States</u>, 812 F.2d 1387, 1390-91 (Fed. Cir. 1987) ("[m]ere denials or conclusory statements are not sufficient" to put a material fact into dispute).  Nor does the Government attempt to distinguish between the cherub motif of the Cherub Place Card Holders and the cherub motif of the Harvest Cherub Separator Set, the classification of which it has stipulated.  Similarly, it offers no explanation for the numerous other wedding items reflecting some sort of cherub motif which are offered by Wilton, and which constitute additional evidence supporting Wilton's position.

[52]Whether or not the use of a plain cherub motif alone would be "aberrant" at times other than a wedding or anniversary, the use of the motif as incorporated into the item here at issue – a classically-styled cherub, rendered as a (disposable) place card holder, with its arms outstretched precisely for the purpose of holding a standard-sized seating place card – is limited to weddings and anniversaries.  *See* Pl.'s Reply Brief at 16 (by definition, place card holders used for weddings – romantic, large-scale events "with tens or hundreds of guests").  The use of the Cherub Place Card Holders on other occasions would be "aberrant."  Thus, for example, as Wilton wryly observes, the Cherub Place Card Holders would not be used to indicate the seating arrangements at a corporate board meeting.  *See* Pl.'s Brief at 19-20.

Although the Government insists that weddings are not "festive" occasions for purposes of heading 9505, nowhere does the Government suggest that the Cherub Place Card Holders are not obviously wedding merchandise.  *See*, *e.g.*, Def.'s Brief at 18-19 (emphasizing that Wilton "admits" that Cherub Place Card Holders are used for weddings, and arguing that weddings are not "festive" occasions under heading 9505); Def.'s Reply Brief at 3 (emphasizing that Wilton has "admitted" that

In sum, under the criteria set forth by the Court of Appeals in <u>Midwest of Cannon Falls</u> and

<u>Park B. Smith</u>, Wilton's Cherub Place Card Holders – like its other wedding merchandise – are

properly classifiable under HTSUS subheading 9505.90.40, as "Festive, carnival or other

entertainment articles . . . : Other: Confetti, paper spirals or streamers, party favors and noisemakers;

parts and accessories thereof."  *See* Subheading 9505.90.40, HTSUS.

### 3. <u>Cake Press Sets</u>

The cake press sets in dispute are Wilton's Script Message Press Set (item # 2104-2061), its

Block Letter Press Set (item # 2104-2077), and its All-Occasion Script Message Press Set (item #

2104-2090).  *See* Pl.'s Amended Exh. G-1.  The cake presses are disposable and are used – alone,

or in combination with one another – to stamp or imprint specific, celebratory greetings and

sentiments onto frosted cakes before serving.  *See generally* section I.A, *supra*.[53]

---

Cherub Place Card Holders are used for weddings, and arguing that weddings are not "festive"
occasions under heading 9505).  Nor does the Government anywhere dispute that it would be clearly
aberrant to use the Cherub Place Card Holders other than for a wedding or similar celebration.

[53]The Government erroneously asserts that the cake press sets at issue "include *letters*
(italics, block and script) . . . which can be used to decorate any cake *for any purpose*."  *See* Def.'s
Response to Pl.'s Statement of Facts ¶ 10 (emphases added).  The Government is simply flat wrong
on the facts as to the nature of the merchandise.

The cake press sets at issue include no individual letters whatsoever.  They consist entirely
of words and two or three-word phrases.  There is thus no truth to the Government's claim that the
press sets can be used to decorate any cake "for any purpose."  The press sets cannot be used, for
example, to spell out "Have a Great Day!"  And it would be patently "aberrant" to use a Wilton cake
press to decorate "any cake [to be used] for any purpose" with the greeting "Merry Christmas" (one
of the greetings included in the cake press sets at issue here).  Such a greeting would be appropriate
only on a cake served during the Christmas season.

Wilton advertises and sells the cake press sets through the Cake Decorating Shop of its Online Store, and in the corresponding section of its Yearbook catalog.  Retailers such as Target, Wal-Mart, and Michael's display the sets year-round in the "wedding" and/or the "birthday" or "party goods" sections of their stores (as appropriate).  *See generally* section I, *supra*.

The Explanatory Notes to heading 9505 expressly state that the heading covers "[*c*]*ake . . . decorations* . . . which are traditionally associated with a particular festival."  *See* Explanatory Notes, Heading 9505, HTSUS.  Wilton emphasizes that "'decoration' is generally defined as 'an object or group of objects used to furnish or adorn with fashionable or beautiful things.'" *See* Pl.'s Brief at 16 (*quoting* American Heritage Dictionary 372 (1991)).[54]  Because a cake press is "an object . . . used to furnish or adorn" a cake (by imprinting the frosted cake with a special greeting or sentiment), the cake presses at issue are arguably "cake decorations" within the meaning of the Explanatory Notes to heading 9505,[55] and thus "festive articles" to the extent that they are "traditionally associated with a particular festival."  *See* Explanatory Notes, Heading 9505, HTSUS.

---

[54]As discussed in section III.C above, tariff terms such as "decoration" are construed according to their common and commercial meanings, which are presumed to be the same.  And the meaning of such terms may be discerned by consulting dictionaries and other reliable sources of information.  *See*, *e.g.*, Warner Lambert Co., 407 F.3d at 1209 (citation omitted).

[55]There are essentially two ways of decorating a cake with a celebratory message or sentiment.  The cake may be decorated with edible or non-edible lettering that is left on the cake when the cake is presented, spelling out the message or sentiment.  Alternatively, a cake press can be used to imprint the celebratory message or sentiment into the frosting of the cake itself.

There would seem to be little doubt that the lettering in the first case would be considered "cake decorations" within the meaning of the Explanatory Notes to heading 9505.  And it is unclear whether a reasonable, logical distinction can be drawn between the lettering in the first case and the lettering in the second case – particularly where, as here, the lettering in the second case is one-time use, disposable merchandise.

Even if they are not treated as "cake decorations" within the express language of the Explanatory Notes to heading 9505, however, the cake presses are nevertheless classifiable as "festive articles" pursuant to <u>Midwest of Cannon Falls</u> and <u>Park B. Smith</u>. The cake press greetings – such as "Merry Christmas," "Happy New Year," and similar sentiments appropriate for other holidays such as Easter, Thanksgiving, and Valentine's Day – are all motifs "closely associated with" those holidays. *See* <u>Park B. Smith</u>, 347 F.3d at 927 (citations omitted); U.S. Customs Service, "What Every Member of the Trade Community Should Know About Classification of Festive Articles as a Result of the <u>Midwest of Cannon Falls</u> Court Case" (Nov. 1997), *published at* 32 Cust. Bull. & Dec. Nos. 2/3 at 169, 177-78 (Jan. 21, 1998) (acknowledgment by Customs that symbols/motifs justifying "festive articles" classification may include *words and phrases*, such as "Merry Christmas," "Happy Thanksgiving," "Happy Easter," and "Happy Valentine's Day").[56] Similarly, sentiments such as "Happy Birthday," "Happy Anniversary," "Congratulations," and "Best Wishes" are motifs "closely associated with" non-holiday "festive" occasions including birthdays, weddings, anniversaries, and baptisms or First Communions.[57]

---

[56]As discussed above, this publication has been withdrawn by Customs (largely because the publication espoused the "two-dimensional" *versus* "three-dimensional" distinction that has now been thoroughly discredited by the courts). *See generally* section III.D, *supra*. However, the publication retains vitality as evidence of symbols and motifs that Customs has recognized are "closely associated with" "festive" occasions for purposes of heading 9505.

[57]Specifically, the Script Message Press Set includes presses of the words and phrases "Best," "Wishes," "Happy," "Birthday," "Anniversary," and "Congratulations." The Block Letter Press Set includes presses of the same words – "Best," "Wishes," "Happy," "Birthday," "Anniversary," and "Congratulations" – in block letters, rather than script. And the All-Occasion Script Message Press Set includes presses of "Merry Christmas," "Happy New Year," "Easter," "Thanksgiving," "God Bless You," "I Love You," and "Good Luck." *See* Pl.'s Exh. G-2.

Moreover, such messages and greetings are so intrinsically linked to "festive" occasions that their use on non-special occasions would clearly be "aberrant." *See* <u>Park B. Smith</u>, 347 F.3d at 927, 929. No one would decorate a cake to read "Congratulations" or "Best Wishes" – much less "Merry Christmas" or "Happy Birthday" – if the cake was to be served for dessert at a regular, everyday family dinner.

Accordingly, under the criteria set forth by the Court of Appeals in <u>Midwest of Cannon Falls</u> and <u>Park B. Smith</u>, Wilton's Script Message Press Set, Block Letter Press Set, and All-Occasion Script Message Press Set are all properly classifiable under HTSUS subheading 9505.90.40, as "Festive, carnival or other entertainment articles . . . : Other: Confetti, paper spirals or streamers, party favors and noisemakers; parts and accessories thereof."[58]

---

[58]The result – classification of the cake press sets under heading 9505 – would be the same if each of the three items were analyzed as a set and classified in accordance with its "essential character" pursuant to GRI 3(b). *See generally* section III.E, *supra*. The very nature of the cake press sets, and the way in which they are marketed by Wilton and the retailers to which Wilton sells them, are compelling evidence that it is the association between the content of the greetings/sentiments and the "festive" occasions to which they are related that is the basis for a consumer's decision to purchase such sets. *See* <u>Better Home Plastics</u>, 20 CIT at 224, 916 F. Supp. at 1267; <u>Conair Corp.</u>, 29 CIT at ____, 2005 WL 1941649 at * 5 - * 6.

Similarly, even if one or two of the individual words or phrases in a cake press set were found not to be *prima facie* classifiable as "festive articles" under heading 9505, the remainder of the words and phrases in the set would impart the "essential character" of the set as a whole – at least under the circumstances presented here (where, *inter alia*, the items are marketed specifically for "cake decorating" and most of the presses are, by definition, limited to use solely on "festive" occasions). *See generally* Letter to Court from Defendant (May 16, 2007) at 3 (*citing* Explanatory Note X, GRI 3(b), HTSUS (discussing example of classification of "[d]rawing kits")).

## 4.  Bakeware, Cookie Cutters, and Cookie Stamps

The final merchandise remaining at issue – bakeware, cookie cutters, and cookie stamps – includes merchandise which is, according to Wilton, associated with Christmas, Valentine's Day, Halloween, and birthdays (as well as a few miscellaneous other events).

### a.  *Christmas Merchandise*

Wilton identifies 11 items as Christmas merchandise, and asserts that all are classifiable as "festive articles" under heading 9505.  Those items include the Treeliteful Pan (item # 2105-425), the Snowman Pan (item # 2105-803), the Smiling Santa Pan (item # 2105-3310), the Holiday House Pan (item # 2105-3311), the Poinsettia Pan (item # 2105-3312), the Star Nesting Perimeter Cutter Set (item # 2304-111), the Gingerbread Perimeter Cutter Set (item # 2304-121), the Christmas Cookie Collection Set (item # 2304-802), and  item # 516-1007, a Christmas cookie cutter or cookie stamp.  Also included are Wilton's 144 ct. North Pole Mini Cookie Cutter CDU [Counter Display Unit] (item # 2301-1036), as well as its 48 ct. Jolly Stamps! Cookie Stamp CDU [Counter Display Unit] (item # 2307-1001).  *See* Pl.'s Exh. E-1; Pl.'s Amended Exh. F-1.

Included in the North Pole Mini Cookie Cutter Counter Display Unit are 144 separate cookie cutters in the shapes of a Christmas tree, a snowman, an angel, a Christmas stocking, and a snowflake.  *See* Letter to Court from Counsel for Plaintiff (May 15, 2007) (correcting Pl.'s Response to the Court's Letter of May 7, 2007 at 5).  The Jolly Stamps! Cookie Stamp Counter Display Unit

includes 48 separate cookie stamps with motifs of a Christmas tree, a gingerbread man, and bells with holly.  *See* Letter to Court from Counsel for Plaintiff (May 15, 2007).[59]

As discussed elsewhere above, the listed merchandise is generally imported and sold only in conjunction with the Christmas holiday season.  Indeed, much of it is distinctively Christmas merchandise.   Santa Claus, Christmas trees, Christmas stockings, angels, bells with holly, poinsettias, and snowmen wearing top hats prominently decorated with sprigs of holly leaves and berries are all motifs "closely associated with" Christmas.  *See* Park B. Smith, 347 F.3d at 927 (citation omitted); *id*. at 926, 929 (Santa and Christmas trees); Midwest of Cannon Falls, 122 F.3d at 1428 (angels); Russ Berrie, 381 F.3d at 1335-36 (bells and holly); San Francisco Candle Co. v. United States, 26 CIT 523, 529, 206 F. Supp. 2d 1304, 1312 (2002), *aff'd*, 104 Fed. Appx. 714 (Fed. Cir. 2004) (Christmas stockings); A Dictionary of Agricultural and Allied Terminology 583 (John N. Winburne, ed.-in-chief, Michigan State Univ. Press 1962) ("poinsettia" is "a shrub grown as *a*

---

[59]The individual cookie stamps are depicted in the "Christmas" pages of Wilton's Yearbook catalog that were filed with the Court.

*Christmas pot plant* for its showy, usually vermilion bracts") (emphasis added)[60]; Russ Berrie, 381

F.3d at 1336 ("[s]nowmen decorated with holly).[61]

Moreover, the symbols of Santa, Christmas trees, Christmas stockings, angels, bells with

holly, poinsettias, and snowmen sporting top hats adorned with sprigs of holly are so intrinsically

linked to Christmas that the use of cookie cutters and cookie stamps featuring those motifs at other

times of the year would clearly be "aberrant." *See* Park B. Smith, 347 F.3d at 927, 929.

Accordingly, under the criteria articulated by the Court of Appeals in Midwest of Cannon Falls and

Park B. Smith, Wilton's Smiling Santa Pan, its Poinsettia Pan, and its Snowman Pan – together with

certain cookie cutters included in its North Pole Mini Cookie Cutter Counter Display Unit

(specifically, the Christmas tree cookie cutter, the Christmas stocking cookie cutter, and the angel

---

[60]Customs itself has recognized the poinsettia as a traditional Christmas motif. *See, e.g.*, 32 Cust. Bull. & Dec. Nos. 2/3 at 174 (Jan. 21, 1998) (artificial poinsettia wreaths, centerpieces, candle rings, and garlands classifiable as "festive articles" under heading 9505). And the Poinsettia Pan is described in Wilton's Yearbook catalog as "[a] delightful sign of *the Christmas season . . .*" *See* Wilton Yearbook (emphasis added).

*See also* The Columbia Encyclopedia 2601 (Barbara A. Chernow & George A. Vallasi, eds., Columbia U. Press 5th ed. 1993) (noting that "[t]he poinsettia . . . , whose several species are sometimes considered a separate genus (Poinsettia), is a popular Christmas decoration with its large rosettes of usually bright-red bracts"); Dictionary of Agricultural and Environmental Science (Frederick R. Troeh & Roy L. Donahue, eds., Iowa State Press 2003) (poinsettia is "commonly used for Christmas decorations"). *But see* Def.'s Reply Brief at 3 (arguing that baking pan in shape of poinsettia is merely "directed to general or seasonal use").

[61]*See generally* 32 Cust. Bull. & Dec. Nos. 2/3 at 176-77 (Jan. 21, 1998) (acknowledgment by Customs that Christmas symbols/motifs including Santa Claus, Christmas trees, Christmas stockings, and angel may justify "festive article" classification); Stipulated Judgment (April 6, 2005), *filed in* Park B. Smith, Court No. 96-00344 (classifying as "festive articles" holiday table linens and rugs with motifs including "Jingle Bells," "Ringing Bells," "Poinsettia," "Poinsettia Plaid," "Christmas Holly," "Holiday Blossom/Holly Blossom," "Holly Border," and "Holly Leaves, aka Hollileaves Christmas, aka Hollileaves").

cookie cutter), as well as certain cookie stamps included in its Jolly Stamps! Cookie Stamp Counter Display Unit (specifically, the Christmas tree cookie stamp and the bells with holly cookie stamp) – are all properly classifiable under HTSUS subheading 9505.10.50, as "Festive, carnival or other entertainment articles . . . :  Articles for Christmas festivities and parts and accessories thereof: Other: Other."

Also included among the merchandise at issue is Wilton's Christmas Cookie Collection Set – a set of ten cookie cutters in the shapes of Santa, a Christmas tree, a Christmas stocking, a nutcracker, a candy cane, a snowman, a star, a drum, a rocking horse, and a teddy bear.  Like Santa, Christmas trees, and Christmas stockings (all discussed above), the nutcracker and the candy cane too are symbols "closely associated with" Christmas.  *See* Park B. Smith, 347 F.3d at 927 (citation omitted); Midwest of Cannon Falls, 122 F.3d at 1428 (candy canes), 1425 (nutcrackers), 1429 (same).[62]  Moreover, the Santa, Christmas tree, Christmas stocking, nutcracker, and candy cane motifs are so intrinsically linked to Christmas that the use of cookie cutters featuring those motifs at other times of the year would clearly be "aberrant."  *See* Park B. Smith, 347 F.3d at 927, 929.

The motifs of the remaining cookie cutters in the Christmas Cookie Collection Set – an unadorned snowman, a star, a drum, a rocking horse, and a teddy bear – are not similarly "closely associated with" Christmas, and their use at other times would not be "aberrant."  *See* Park B. Smith, 347 F.3d at 927, 929.[63]  However, the cookie cutters in the Christmas Cookie Collection Set are "put

---

[62]*See generally* 32 Cust. Bull. & Dec. Nos. 2/3 at 176 (Jan. 21, 1998) (acknowledgment by Customs that Christmas symbols/motifs including nutcrackers justify "festive article" classification).

[63]For example, a snowman – without more (such as a holly-decorated hat or muffler, and a red and green color scheme) – is merely symbolic of the winter season in general.  *See* Def.'s Reply Brief at 3 (snowmen are merely seasonal); HQ 962252 (July 23, 1999) (noting that "[t]he snowman

up in sets for retail sale," and thus must be classified together in accordance with their "essential

character."  *See generally* section III.E, *supra* (explaining classification of merchandise pursuant to

GRI 3(b)).

Vis-a-vis the Christmas Cookie Collection Set, none of the illustrative "essential character"

factors listed in the Explanatory Notes to GRI 3(b) is illuminating.  That is, all the cookie cutters in

the set are basically the same – both individually, and in their respective relationships to the set as

a whole – as to matters such as "the nature of the material or component, its bulk, quantity, weight

or value, or . . . the role of a constituent material in relation to the use of the goods."  *See*

_____

is generally recognized as a symbol for the winter season, not necessarily the Christmas holiday,"
and stating that even "the presence of holly or a hat and scarf, or other Christmas-related images do
not automatically qualify the article" as a "festive article").

So too a star – without more – is just a basic geometric shape (like a circle, a square, a
triangle, or a heart).  Thus, a curious young child learning his or her shapes might enjoy using a star
cookie cutter year-round.  *See, e.g.*, Def.'s Reply Brief at 3 (star is merely a "general shape[]");
Def.'s Brief at 20 n.13 (arguing that, because a star "can be associated with patriotism or have no
particular association," articles with star motif "can be used at any time of the year").  Indeed, in the
Yearbook pages filed as exhibits with the Court, Wilton advertises a child-safe Geometric Bite-Size
[Cookie] Cutter Set (item # 2303-9310) – a set of five cookie cutters in assorted basic geometric
shapes.  *See* Yearbook.

Similarly, a drum, a rocking horse, and a teddy bear are classic toys that might be received
as Christmas gifts.  However, they are not so closely associated with Christmas that the use of
cookie cutters in those shapes would be deemed "aberrant" at other times of the year.  *See* Park B.
Smith, 347 F.3d at 927, 929.  As discussed in section III.F.4.d below, Wilton itself recognizes that
bakeware with rocking horse and teddy bear motifs has year-round use.  *See* Huggable Teddy Bear
Pan (item # 2105-4943) (promoting pan as "being used all year 'round"); Rocking Horse Pan (item
# 2105-2388) (suggesting that "Wild West pony or Christmastime toy are just a couple of the themes
to give this loveable cake").  *But see* Stipulated Judgment (April 6, 2005), *filed in* Park B. Smith,
Court No. 96-00344 (classifying as "festive articles" holiday table linens and rugs with motifs
including "Rocking Horse"); *cf.* Russ Berrie, 381 F.3d at 1335-36 (associating with Christmas "a
teddy bear *dressed in* [*a*] *red and white Santa outfit and holding a present*") (emphasis added).

Explanatory Note VIII, GRI 3(b), HTSUS; Pl.'s Response to the Court's Letter of May 7, 2007 at 8 (asserting that all cookie cutters in the subject set "are relatively equal in size, weight, cost and utility," and that "[a]ll cookie cutters contribute equally to the set").  On the other hand, the very name of the item – Christmas Cookie Collection Set – and the way in which it is marketed by Wilton and the retailers to which Wilton sells the merchandise are compelling evidence that it is the association of the merchandise with the Christmas holiday that drives the consumer's decision to purchase the set.  *See* Better Home Plastics, 20 CIT at 224, 916 F. Supp. at 1267; Conair Corp., 29 CIT at ____, 2005 WL 1941649 at * 5 - * 6.[64]

Accordingly, under GRI 3(b) and the criteria articulated by the Court of Appeals in Midwest of Cannon Falls and Park B. Smith, Wilton's Christmas Cookie Collection Set is properly classifiable under HTSUS subheading 9505.10.50 as "Festive, carnival or other entertainment articles . . . parts and accessories thereof:  Articles for Christmas festivities and parts and accessories thereof: Other: Other."

_____

[64]In this instance, the end result – classification under heading 9505 – would be the same if, as the Government suggests, the "essential character" of the set were instead to be determined based on the number of cookie cutters in the set found to be *prima facie* classifiable as "festive articles" relative to the number of cookie cutters found *not* to be so classifiable.  *See* Letter to Court from Defendant (May 16, 2007) at 3 (*citing* Explanatory Note X, GRI 3(b), HTSUS (discussing example of classification of "[d]rawing kits")).

Specifically, as discussed above, five of the cookie cutters in the set – in the shapes of Santa, a Christmas tree, a Christmas stocking, a nutcracker, and a candy cane – individually would be *prima facie* classifiable under heading 9505, while the other five – in the shapes of a snowman, a star, a drum, a rocking horse, and a teddy bear –  would not.  The fact that half of the items in the set would be individually *prima facie* classifiable under heading 9505 would be determinative of the "essential character" of the set as a whole, at least under the circumstances presented here (where, *inter alia*, the item is called the Christmas Cookie Collection Set, and where the item is marketed exclusively in connection with the Christmas holiday).

Wilton's claims as to its other Christmas merchandise are, however, unavailing. For example, the Treeliteful Pan is not the holiday-specific item that its name suggests. Indeed, although Wilton's Yearbook indicates that the pan is the company's "most popular holiday pan," the second line of the two-line description of the item states: "Instructions are included [with the pan] for *year-round* decorating ideas." (Emphasis added.) To be sure, a cake baked in the pan could be frosted or otherwise decorated to look like a Christmas tree. But, by Wilton's own admission (*i.e.*, the promotional text quoted above), the shape of the pan itself lacks the requisite "close association with" Christmas. *See* Park B. Smith, 347 F.3d at 927 (citation omitted). Nor is there anything about the pan that would limit its use to Christmas, or render its use "aberrant" at other times of the year. *See id.* at 927, 929. It is simply a pan in the shape of a fir tree. *See* Def.'s Supp. Brief at 7 (pan yields evergreen tree-shaped cake; to look like Christmas tree, cake would require further decoration). The Treeliteful Pan thus cannot be classified as a "festive article" under heading 9505 pursuant to the criteria articulated by the Court of Appeals in Midwest of Cannon Falls and Park B. Smith. It was properly classified by Customs under HTSUS subheading 7615.19.70, as "Table, kitchen or other household articles . . . , of aluminum; . . . : Table, kitchen or other household articles . . . : Other: Cooking and kitchen ware: Not enameled or glazed and not containing nonstick interior finishes: Other."

Similarly, the Holiday House Pan is – as its name suggests – a pan in the shape of a house. There is nothing at all inherent in the shape or design of the pan that is holiday-specific. It thus lacks any sort of "close association with" Christmas, apart from its name and its marketing as

seasonal merchandise.[65]  *See* <u>Park B. Smith</u>, 347 F.3d at 927 (citation omitted); Def.'s Reply Brief

at 3 (arguing that house shape is merely a "general shape[]").  Moreover, although Wilton illustrates

the item with a depiction of a cake decorated as a gingerbread house, there is nothing about the pan

itself that would limit its use to gingerbread or to Christmas, or that would render its use "aberrant"

at other times of the year.  *See* <u>Park B. Smith</u>, 347 F.3d at 927, 929.  The Holiday House Pan thus

cannot be classified as a "festive article" under heading 9505 pursuant to the criteria articulated by

the Court of Appeals in <u>Midwest of Cannon Falls</u> and <u>Park B. Smith</u>.  Like the Treeliteful Pan, the

Holiday House Pan was properly classified by Customs under HTSUS subheading 7615.19.70, as

"Table, kitchen or other household articles . . . , of aluminum; . . . :  Table, kitchen or other

household articles . . . :  Other: Cooking and kitchen ware: Not enameled or glazed and not

containing nonstick interior finishes: Other."

Wilton's case for "festive article" classification of its Star Nesting Perimeter [Cookie] Cutter

Set and its Gingerbread Perimeter [Cookie] Cutter Set is no more compelling.  As discussed in note

63 above, a star – without more – is simply a basic geometric shape.  Thus, a pre-schooler learning

his or her shapes might enjoy using a star-shaped cookie cutter all year long.  And The Gingerbread

Man is a favorite children's folk tale, timeless and told year-round.  *See*, *e.g.*, Nancy Nolte &

Richard Scarry, The Gingerbread Man (Big Little Golden Book).[66]  In short, neither the basic star

---

[65]Indeed, even as to its marketing, the Holiday House Pan is promoted to have broad appeal for use well beyond the ornately-decorated gingerbread house often seen at Christmas.  Wilton's Yearbook emphasizes that the pan is accompanied by: "Five great design ideas, including a fresh bread house."

[66]In this telling of the classic tale, the Gingerbread Man taunts: "RUN, RUN as fast as you can.  You can't catch me – I'm the Gingerbread Man!"  Nancy Nolte & Richard Scarry, The Gingerbread Man.

motif nor the motif of a gingerbread family[67] are sufficiently "closely associated with" Christmas. *See* Park B. Smith, 347 F.3d at 927 (citation omitted).

Moreover, nothing about either the Star Nesting Perimeter Cutters or the Gingerbread Perimeter Cutters would limit their use to Christmas, or render "aberrant" their use at other times of the year. *See* Park B. Smith, 347 F.3d at 927, 929; Def.'s Brief at 20 n.13 (articles with star motif "can be used at any time of the year"). Under the criteria articulated by the Court of Appeals in Midwest of Cannon Falls and Park B. Smith, the Star Nesting Perimeter Cutter Set and the Gingerbread Perimeter Cutter Set therefore cannot be classified under HTSUS heading 9505, and were properly classified by Customs under subheading 3924.10.50, as "Tableware, kitchenware, other household articles and toilet articles, of plastics: Tableware and kitchenware: Other."

Similarly lacking in merit is Wilton's claim to "festive article" classification of the remaining items included in its North Pole Mini Cookie Cutter Counter Display Unit and its Jolly Stamps! Cookie Stamp Counter Display Unit, in the motifs of snowmen, gingerbread men, and snowflakes. Like the snowmen and the gingerbread men discussed above, snowflakes also are not "closely associated with" Christmas. *See* Park B. Smith, 347 F.3d at 927 (citation omitted). The snowflake motif is not Christmas-specific, but – rather – symbolic of the winter season in general. *See*, *e.g.*, San Francisco Candle Co., 26 CIT at 527, 206 F. Supp. 2d at 1310 (citing with approval Commerce Department ruling that candles decorated with snowflakes are "seasonal" and therefore do not qualify for "holiday novelty candle" exclusion from scope of antidumping order); Def.'s Brief at 18-

---

[67]The Gingerbread Perimeter Cutter Set consists of four cookie cutters, in the shapes of a Gingerbread man, woman, boy, and girl.

19 ("articles directed to general or seasonal use" not classifiable as "festive articles") (*citing* Park

B. Smith, 347 F.3d at 929).

In addition, nothing about the cookie cutters or the cookie stamp would limit their use to

Christmas, or render "aberrant" their use at other times of the year.  *See* Park B. Smith, 347 F.3d at

927, 929.  Accordingly, under the criteria articulated by the Court of Appeals in Midwest of Cannon

Falls and Park B. Smith, the snowman and snowflake cookie cutters included in Wilton's North Pole

Mini Cookie Cutter Counter Display Unit, and the gingerbread man stamp included in Wilton's

Jolly Stamps! Cookie Stamp Counter Display Unit, cannot be classified under HTSUS heading

9505.  Instead, they were properly classified by Customs under subheading 3924.10.50, as

"Tableware, kitchenware, other household articles and toilet articles, of plastics: Tableware and

kitchenware: Other."

Wilton claims "festive article" classification for one final piece of Christmas merchandise

– item # 516-1007 – which is apparently a cookie cutter or a cookie stamp.  However, Wilton is

unable to produce any evidence as to the specific nature of that item, to establish that it is both

"closely associated with" and used principally for Christmas.  *See* Park B. Smith, 347 F.3d at 927

(citation omitted); Pl.'s Supp. Brief at 2 (indicating that Wilton has no evidence as to item # 516-

1007).  Wilton's claim to "festive article" classification of item # 516-1007 must therefore fail.

Based on the existing state of the record, the merchandise was properly classified by Customs under

HTSUS subheading 3924.10.50, as "Tableware, kitchenware, other household articles and toilet

articles, of plastics: Tableware and kitchenware: Other."

### b. *Valentine's Day Merchandise*

Wilton identifies five items as Valentine's Day merchandise, and asserts that all are classifiable as "festive articles" under heading 9505 – the Heart Tart Singles! pan (item # 2105-1139), the Heart Springform Pan (item # 2105-2122), the Heart Pan Set (item # 2105-2131), the Heart Giant Cookie Pan (item # 2105-6203), and the Heart Comfort Grip [Cookie] Cutter (item # 2310-616). *See* Pl.'s  Exh. E-1; Pl.'s Amended Exh. F-1.  However, Wilton's claim is lacking in merit.

All five items are imported and sold in conjunction with Valentine's Day, and feature a "heart" motif.  The four pans produce baked goods in the classic shape of a heart, and the cookie cutter slices cookie dough into classic heart shapes.  But none of the items has any distinctive thematic design elements – a "Happy Valentine's Day!" greeting, for example – to tie the merchandise specifically to Valentine's Day.[68]  Without more, the heart motif alone simply is not sufficiently "closely associated with" Valentine's Day (or, for that matter, any other particular festive occasion).  *See* Park B. Smith, 347 F.3d at 927 (citation omitted); Russ Berrie & Co. v. United States, 23 CIT 429, 57 F. Supp. 2d 1184 (1999) (heart-shaped terra cotta container filled with wax did not fall within "holiday novelty candle" exclusion from scope of antidumping order).[69]

---

[68]The Heart-Shaped Wreath at issue in Midwest of Cannon Falls was classified as a "festive article."  But that merchandise was much more than just a basic heart shape.  In contrast to the bakeware and cookie cutters at issue here, the wreath in Midwest of Cannon Falls was "a metal wreath with dozens of small, heart-shaped decorations attached to it, painted bright red, with a hook, allowing the item to hang from a wall."  *See* Midwest of Cannon Falls, 20 CIT at 132; *see also* 32 Cust. Bull. & Dec. Nos. 2/3 at 177 (Jan. 21, 1998) (in some cases, heart pattern/motif may justify "festive article" classification).

[69]In Russ Berrie, the court sustained Commerce's finding that "the heart shape of [Russ Berrie's] candle does not limit its use to a particular holiday."  *See* Russ Berrie, 23 CIT at 439, 57

Nor would the use of the subject bakeware at times other than Valentine's Day be "aberrant."

*See* Park B. Smith, 347 F.3d at 927, 929.  As discussed above, a young child learning different

shapes might enjoy using Wilton's Star Nesting Perimeter [Cookie] Cutters year-round, to make

cookies shaped like stars.  Similarly, the child could use the heart-themed cutter at issue here to

make cookies in a second basic shape – a heart.  As to the four pans, Wilton itself promotes year-

round use of its heart-shaped bakeware.  For example, touting its Heart Pans (item # 2105-5168) –

not at issue in this action, but comparable in all relevant respects to the four heart-shaped baking

-----

F. Supp. 2d at 1194.  The court noted that, in support of its determination, Commerce quoted one
of its prior decisions:

> Nothing inherent in the design of the subject candles would limit their use to a
> specific occasion. . . . [T]he sole distinguishing characteristic of the Sweetheart
> candle is its pink heart. [However,] the year-round ubiquity of this particular shape
> renders it meaningless as a holiday scene or symbol.

Russ Berrie, 23 CIT at 439, 57 F. Supp. 2d at 1194 (citation omitted).  The court also quoted another
prior decision cited in Commerce's determination, to the same effect:

> The familiar two-lobed heart design is ubiquitous as a symbol of affection or familial
> or romantic love. . . . [I]t is used throughout the year in, for example, greeting cards
> . . . .

Russ Berrie, 23 CIT at 439-40, 57 F. Supp. 2d at 1194 (citation omitted).  Elsewhere, the court
concluded: "Plaintiff cites no authority, and the Court has found none, holding that the heart is a
symbol solely associated with Valentine's Day because of its distinguishable shape and color." Russ
Berrie, 23 CIT at 444, 57 F. Supp. 2d at 1197.

Without more, a heart is simply a basic geometric shape.  *See* n.63, *supra* (noting that "a star
– without more – is just a basic geometric shape (like a circle, a square, a triangle, or *a heart*).  Thus,
a curious young child learning his or her shapes might enjoy using a star cookie cutter year-round.")
(emphasis added); Def.'s Reply Brief at 3 (heart is merely a "general shape[]").

pans here in question – Wilton's Yearbook emphasizes: "For graceful expressions of love *on Valentine's Day or anytime . . . .*"  (Emphasis added.)[70]

Accordingly, under the criteria articulated by the Court of Appeals in <u>Midwest of Cannon Falls</u> and <u>Park B. Smith</u>, Customs properly classified the Heart Tart Singles! pan, the Heart Pan Set, and the Heart Giant Cookie Pan under HTSUS subheading 7615.19.70, as "Table, kitchen or other household articles . . . , of aluminum; . . . :  Table, kitchen or other household articles . . . :  Other:  Cooking and kitchen ware: Not enameled or glazed and not containing nonstick interior finishes:  Other."   Similarly, the Heart Springform Pan was properly classified under HTSUS subheading 7323.99.70, as "Table, kitchen or other household articles . . . , of iron or steel; . . . :  Other: Other:  Not coated or plated with precious metal: Other: Cookingware."   And the Heart Comfort Grip [Cookie] Cutter was properly classified under HTSUS subheading 7323.93.00, as "Table, kitchen or other household articles . . . , of iron or steel; . . . Other: Of stainless steel."

### c. *Halloween Merchandise*

According to Wilton, 15 of the items still at issue in this action are Halloween merchandise, properly classifiable as "festive articles" under heading 9505.  *See* Pl.'s Exh. E-1; Pl.'s Amended Exh. F-1.  As discussed elsewhere above, the items at issue generally are imported and sold in conjunction with Halloween.

---

[70]*Cf*. <u>Russ Berrie</u>, 57 F. Supp. 2d at 1195 n.9 (noting that "it is unlikely that during July a consumer would purchase a Santa Claus shaped candle . . . as compared to a heart-shaped candle. . . . [I]f, in July, one purchases hears and flowers for one's spouse, the likely intent is quite evident; on the other hand, a July gift of a Santa Claus figure will surely, at best, give rise to puzzlement.").

Several of the Halloween items – including Wilton's Mini Pumpkin Pan (item # 2105-1499), its Jack-O-Lantern Giant Cookie Pan (item # 2105-6207), and its Pumpkin Cookie Stamp (item # 2307-1003) – feature the traditional "jack-o-lantern" motif which is "closely associated with" Halloween. *See* Park B. Smith, 347 F.3d at 927 (citation omitted); Midwest of Cannon Falls, 122 F.3d at 1429 (jack-o-lantern); Park B. Smith, 347 F.3d at 929 (jack-o-lantern); Russ Berrie, 381 F.3d at 1335-36 (jack-o-lantern).[71] Moreover, jack-o-lanterns are so intrinsically linked to Halloween that the use of the jack-o-lantern cookie stamp or either of the jack-o-lantern shaped baking pans at other times of the year would clearly be "aberrant." *See* Park B. Smith, 347 F.3d at 927, 929. Accordingly, under the criteria articulated by the Court of Appeals in Midwest of Cannon Falls and Park B. Smith, both the Mini Pumpkin Pan and the Jack-O-Lantern Giant Cookie Pan, as well as the Pumpkin Cookie Stamp, are properly classifiable as "festive articles," under subheading 9505.90.60 of the HTSUS.

Like its Pumpkin Cookie Stamp, Wilton's Ghost Cookie Stamp (item # 2307-1013), its Spider Cookie Stamp (item # 2307-1004), and its Bat Cookie Stamp (item # 2307-1005) also feature motifs that are "closely associated with" Halloween. *See* Park B. Smith, 347 F.3d at 927 (citation omitted); *id*. at 926 (ghosts); Russ Berrie, 381 F.3d at 1336 (ghosts); Michael Simon Design, 30 CIT at ____, 452 F. Supp. 2d at 1325-26 (spiders and bats).[72] Further, because ghosts, spiders, and bats

---

[71]Indeed, the parties' Stipulation in this action provides for the classification of Wilton's Glowing Pumpkin Fun Pix (item # 2113-1287) – which have a jack-o-lantern motif – as "festive articles" under heading 9505. *See* Stipulation; *see generally* 32 Cust. Bull. & Dec. Nos. 2/3 at 176 (Jan. 21, 1998) (acknowledgment by Customs that Halloween symbols/motifs including jack-o-lanterns may justify "festive article" classification).

[72]*See also* Stipulated Judgment (April 6, 2005), *filed in* Park B. Smith, Court No. 96-00344 (classifying as "festive articles" holiday table linens and rugs with motifs including "Bats &

are so intrinsically linked to Halloween, the use of cookie stamps with those motifs at other times

of the year would be clearly "aberrant." *See* Park B. Smith, 347 F.3d at 927, 929.  Accordingly, the

Ghost Cookie Stamp, the Spider Cookie Stamp, and the Bat Cookie Stamp – like the Pumpkin

Cookie Stamp – are properly classifiable under HTSUS subheading 9505.90.60, under the criteria

articulated by the Court of Appeals in Midwest of Cannon Falls and Park B. Smith.

The motifs reflected in Wilton's Monster Party Pan (item # 2105-2039) – a witch and a

vampire, over a cauldron of witches' brew – are just as "closely associated with" Halloween.  *See*

Park B. Smith, 347 F.3d at 927 (citation omitted); Russ Berrie, 381 F.3d at 1336 (witches and

monsters).[73]  In addition, because witches and vampires are so intrinsically linked to Halloween, the

use of this bakeware at any other time of the year would be "aberrant."  *See* Park B. Smith, 347 F.3d

at 927, 929.  Accordingly, under the criteria articulated by the Court of Appeals in Midwest of

Cannon Falls and Park B. Smith, like the other Halloween merchandise discussed above, Wilton's

Monster Party Pan is also properly classifiable under HTSUS subheading 9505.90.60, "Festive,

carnival or other entertainment articles . . . : Other: Other."

Wilton's Halloween Mini [Cookie] Cutter CDU [Counter Display Unit] (96 ct.) (item #

2301-1035) includes an assortment of 96 miniature cookie cutters in five different shapes –

specifically, in the shapes of bats and ghosts, the word "BOO," and two different styles of jack-o-

lanterns (a Happy Jack-o-Lantern and a Scary Jack-o-Lantern).  *See* Letter to Court from Counsel

_____

Ghosts"); 32 Cust. Bull. & Dec. Nos. 2/3 at 177 (Jan. 21, 1998) (acknowledgment by Customs that
Halloween symbols/motifs including ghosts may justify "festive article" classification).

[73]*See generally* 32 Cust. Bull. & Dec. Nos. 2/3 at 177 (Jan. 21, 1998) (acknowledgment by
Customs that Halloween symbols/motifs including witches may justify "festive article"
classification).

for Plaintiff (May 15, 2007) (correcting Pl.'s Response to the Court's Letter of May 7, 2007 at 4-5).

Like bats, ghosts, and jack-o-lanterns (discussed above), the word "BOO" is also "closely associated

with" Halloween.  *See* Park B. Smith, 347 F.3d at 927 (citation omitted); 32 Cust. Bull. & Dec. Nos.

2/3 at 177 (Jan. 21, 1998) (acknowledgment by Customs that Halloween symbols/motifs including

the word "Boo" may justify "festive article" classification).  Further, use of the bat, ghost, jack-o-

lantern, and "BOO" mini-cookie cutters at times of the year other than Halloween would be

"aberrant."  *See* Park B. Smith, 347 F.3d at 927, 929.  Accordingly, like the other Halloween

merchandise discussed above, the mini-cookie cutters in the shapes of jack-o-lanterns, bats, ghosts,

and the word "BOO" included in Wilton's Halloween Mini Cutter Counter Display Unit are properly

classifiable as "festive articles" under HTSUS subheading 9505.90.60, pursuant to  the criteria set

forth by the Court of Appeals in Midwest of Cannon Falls and Park B. Smith.

Also included among the Halloween items at issue is Wilton's Spooky Cookie Cutter Set

(item # 2304-9210), which includes cookie cutters in ten different shapes, including a witch, a ghost,

a bat, a spider, two different jack-o-lanterns, a skeleton head, a Frankenstein head, and the words

"BOO" and "EEK."  Like jack-o-lanterns, witches, ghosts, bats, spiders, and the word "BOO" (all

discussed above), so too skeleton heads, Frankenstein heads, and the word "EEK" are "closely

associated with" Halloween.  *See* Park B. Smith, 347 F.3d at 927 (citation omitted); Russ Berrie, 381

F.3d at 1335-36 (Frankenstein monster and monsters' heads); 32 Cust. Bull. & Dec. Nos. 2/3 at 177

(Jan. 21, 1998)  (Halloween symbols/motifs including ghosts, skeletons, witches, and the word

"Boo" may justify "festive article" classification).[74]  In addition, like the merchandise in the motifs of jack-o-lanterns, witches, ghosts, bats, spiders, and the word "BOO" (discussed above), the use of cookie cutters in the shapes of a witch, a ghost, a bat, a spider, a jack-o-lantern, a skeleton head, a Frankenstein head, and the words "BOO" and "EEK" at times of the year other than Halloween would be "aberrant."  *See* Park B. Smith, 347 F.3d at 927, 929.

To the extent that all the cookie cutters in the Spooky Cookie Cutter Set would be individually classifiable under heading 9505 (as suggested above), the set as a whole is classifiable under heading 9505 without resort to a determination of the "essential character" of the set pursuant to GRI 3(b).  *See generally* section III.E, *supra* (explaining classification of merchandise pursuant to GRI 3(b)).  Moreover, even if several of the cookie cutters individually would not be *prima facie* classifiable under heading 9505, the set as a whole would nevertheless merit classification under that heading.

As with Wilton's Christmas Cookie Collection Set (discussed in section III.F.4.a, above), none of the illustrative "essential character" factors set forth in the Explanatory Notes to GRI 3(b) is helpful.  In other words, all the cookie cutters in the Spooky Cookie Cutter Set are basically the same – both individually, and in their respective relationships to the set as a whole – as to matters

---

[74]*See generally* 32 Cust. Bull. & Dec. Nos. 2/3 at 177 (Jan. 21, 1998) (acknowledgment by Customs that Halloween symbols/motifs justifying "festive article" classification may include words such as "Happy Halloween" and "Boo").

"Eek!" is an exclamation of fear or horror – such as what one shrieks when startled by a ghost's "Boo!" or frightened by some haunting Halloween sight.  *See*, *e.g.*, Merriam-Webster's Collegiate Dictionary (11th ed.) (defining "eek" as an interjection "used to express surprise or dismay"); The New Oxford American Dictionary 543 (Oxford Univ. Press 2001) (defining "eek" as an exclamation of "alarm, horror, or surprise").

such as "the nature of the material or component, its bulk, quantity, weight or value, or . . . the role

of a constituent material in relation to the use of the goods." *See* Explanatory Note VIII, GRI 3(b),

HTSUS; *cf.* Pl.'s Response to the Court's Letter of May 7, 2007 at 8 (asserting that all cookie cutters

in the Christmas Cookie Collection Set "are relatively equal in size, weight, cost and utility," and

that "[a]ll cookie cutters [in the Christmas Cookie Collection Set] contribute equally to the set").

On the other hand, the very name of the item – the Spooky Cookie Cutter Set – and the

manner in which it is marketed by Wilton and the retailers to which Wilton sells the merchandise

are compelling evidence that it is the association of the merchandise with Halloween festivities that

is the impetus for the consumer's decision to purchase the set. *See* Better Home Plastics, 20 CIT

at 224, 916 F. Supp. at 1267; Conair Corp., 29 CIT at ____, 2005 WL 1941649 at * 5 - * 6.[75]

Accordingly, under GRI 3(b) and the criteria articulated by the Court of Appeals in Midwest of

Cannon Falls and Park B. Smith, Wilton's Spooky Cookie Cutter Set is properly classifiable as a

"festive article" under HTSUS subheading 9505.90.60.

Wilton does not fare as well on its claims as to its other Halloween merchandise.  For

example, notwithstanding the name of the item, the Jack-O-Lantern Nesting [Cookie] Cutter Set

(item # 2303-191) – like the Pumpkin Pie Pan (item # 2105-3970) – features not a jack-o-lantern

---

[75]Again, the end result – classification under heading 9505 – would be the same if, as the
Government suggests, the "essential character" of the set were instead to be determined based on
the number of cookie cutters in the set found to be *prima facie* classifiable as "festive articles"
relative to the number of cookie cutters found *not* to be so classifiable.  *See* Letter to Court from
Defendant (May 16, 2007) at 3 (*citing* Explanatory Note X, GRI 3(b), HTSUS (discussing example
of classification of "[d]rawing kits")).

motif, but rather that of a plain pumpkin.[76]  Unlike a jack-o-lantern, a plain, basic pumpkin is simply

a symbol of the autumn harvest season generally.  It thus lacks the requisite "close association with"

Halloween.  *See* Park B. Smith, 347 F.3d at 927 (citation omitted); Def.'s Brief at 18-19 ("articles

directed to general or seasonal use" not classifiable as "festive articles")  (*citing* Park B. Smith, 347

F.3d at 929), 20 n.13 (pumpkin motif not restricted to Halloween or other festive occasion; pumpkin

is "associated with the fall season or harvest in general"); Def.'s Reply Brief at 3 (pumpkin motif

is merely seasonal); Pl.'s Brief at 5 (conceding that pumpkin motif is "traditionally associated with

Halloween or *fall harvest celebrations*") (emphasis added).[77]

Moreover, nothing about the Jack-O-Lantern Nesting Cutter Set or the Pumpkin Pie Pan

would limit their use to Halloween, or render "aberrant" their use throughout the autumn of the year.

*See* Park B. Smith, 347 F.3d at 927, 929; Def.'s Brief at 20 n.13 (use of pumpkin-shaped pan not

restricted to Halloween or other festive occasion).  Wilton's Jack-O-Lantern Nesting Cutter Set and

its Pumpkin Pie Pan thus cannot be classified as "festive articles" under heading 9505 pursuant to

the criteria articulated by the Court of Appeals in Midwest of Cannon Falls and Park B. Smith.  The

cookie cutters were properly classified by Customs under HTSUS subheading 3924.10.50 as

"Tableware, kitchenware, other household articles and toilet articles, of plastics: Tableware and

kitchenware: Other," and the Pumpkin Pie Pan was properly classified by Customs under HTSUS

subheading 7615.19.70 as "Table, kitchen or other household articles . . . , of aluminum; . . . : Table,

---

[76]It does appear that there is a jack-o-lantern face on the handle of the largest of the nesting cookie cutters.  However, those jack-o-lantern features would not imprint onto cookies.  Thus, even the use of that one particular cookie cutter would not be limited to Halloween.

[77]*See also* Def.'s Supp. Brief at 7 (arguing that pan in shape of plain pumpkin may be used to bake plain apple-shaped cake, but would require further decoration to look like jack-o-lantern).

kitchen or other household articles . . . :  Other: Cooking and kitchen ware: Not enameled or glazed

and not containing nonstick interior finishes: Other."

Wilton's case for "festive article" classification of its Scarecrow Cookie Stamp (item # 2307-

1036) and its Maple Leaf Cookie Stamp (item # 2307-1037) is just as weak.  Neither the scarecrow

motif nor the maple leaf motif can be said to have the requisite close association with Halloween.

*See* Park B. Smith, 347 F.3d at 927 (citation omitted).  Instead, they are associated with the autumn

and harvest seasons generally.  *See*, *e.g.*, Def.'s Reply Brief at 3 (motifs of scarecrows and leaves

are merely seasonal).  Indeed, Wilton markets the two cookie stamps not as Halloween merchandise,

but as "Autumn" merchandise.  And the items are described in the Wilton Yearbook as seasonal

merchandise: "Imprint a fun *fall design* on your homemade cookie dough . . . " *See* Wilton Yearbook

(emphasis added).[78]

Further, nothing about either the Scarecrow Cookie Stamp or the Maple Leaf Cookie Stamp

would limit its use to Halloween, or render "aberrant" its use throughout the months of fall.  *See*

Park B. Smith, 347 F.3d at 927, 929.  Under the criteria articulated by the Court of Appeals in

Midwest of Cannon Falls and Park B. Smith, Wilton's Scarecrow Cookie Stamp and its Maple Leaf

Cookie Stamp therefore cannot be classified under HTSUS heading 9505, and were properly

classified by Customs under subheading 3924.10.50 as "Tableware, kitchenware, other household

articles and toilet articles, of plastics: Tableware and kitchenware: Other."

---

[78]Not only is the maple leaf identified with autumn and the harvest season in general, it has other significant associations as well.  For example, the maple leaf is also the national symbol of Canada, and is the focal point of that country's flag.  And, as any avid hockey fan knows, it is the symbol of Toronto's team, the Maple Leafs.

In addition to the articles discussed above, Wilton also claims "festive article" classification for two final pieces of Halloween merchandise – item # 516-1002 and item # 2307-1053 – which are apparently cookie cutters and/or cookie stamps.  Wilton is unable to produce any evidence as to the specific nature of those items, however, to establish that they are "closely associated with" and used principally for Halloween.  *See* Park B. Smith, 347 F.3d at 927 (citation omitted), 929; Pl.'s Supp. Brief at 2 (indicating that Wilton has no evidence as to item # 516-1002 and item # 2307-1053).  Accordingly, Wilton's claim to "festive article" classification of the two items must fail.  Based on the existing record, both items were properly classified by Customs under HTSUS subheading 3924.10.50, as "Tableware, kitchenware, other household articles and toilet articles, of plastics: Tableware and kitchenware: Other."

### d.  *Birthday and Other Merchandise*

Wilton brazenly contends that most of the bakeware at issue in this action is birthday merchandise classifiable as "festive articles" under heading 9505.  *See* Pl.'s Exh. E-1.  Wilton thus implicitly asserts that 21 of its bakeware items are both "closely associated with" and principally used for birthdays, such that their use at other times of the year would be "aberrant."  *See* Park B. Smith, 347 F.3d at 927, 929; Pl.'s Brief at 20 (asserting that dinosaur, football, and doll motifs "would only be used in connection with a birthday celebration").  As to virtually all of those pieces of bakeware, however, Wilton's claims simply strain credulity beyond all reason.

In fact, only one of the 21 pieces of "birthday" bakeware can reasonably be said to be "closely associated with" and principally used for birthdays.  *See* Park B. Smith, 347 F.3d at 927, 929.  Wilton's Happy Birthday Pan (item # 2105-1073) is a round aluminum pan with a broadly-

scalloped edge, and the phrase "HAPPY BIRTHDAY" in very large letters molded into the pan itself (so that the raised message covers virtually the entire face of the baked cake).  As the Yearbook description of the item notes, "The message is loud and clear!"  *See* Yearbook.  The "Happy Birthday" greeting which is imprinted into the cake pan itself is – by definition – "closely associated" with birthdays, and would render the use of that cake pan at any other time patently "aberrant."[79]  Thus, under the criteria articulated by the Court of Appeals in <u>Midwest of Cannon Falls</u> and <u>Park B. Smith</u>, Wilton's Happy Birthday Pan is properly classifiable under HTSUS subheading 9505.90.60, "Festive, carnival or other entertainment articles . . . : Other: Other."

In addition to its Happy Birthday Pan, Wilton also claims as "festive articles" related to birthdays its Stand-Up Cuddly Bear Pan (item # 2105-603), its Partysaurus Pan (item # 2105-1280), its Mini Ball Pan (item # 2105-1760), its Noah's Ark Pan (item # 2105-2026), its Megasaurus Pan (item # 2105-2028), its Enchanted Castle Pan (item # 2105-2031), its Sports Utility Vehicle Pan (item # 2105-2034), its Rocking Horse Pan (item # 2105-2388), its Choo-Choo Train Pan (item # 2105-2861), its Mini Wonder Mold (item # 2105-3020), its Flower Power Cake Pan (item # 2105-3055), its Blue's Clues Cake Pan (item # 2105-3060), its A Bug's Life Cake Pan (item # 2105-

---

[79]*See generally* 32 Cust. Bull. & Dec. Nos. 2/3 at 177-78 (Jan. 21, 1998) (acknowledgment by Customs that symbols/motifs justifying "festive article" classification may include *words*, such as "Noel," "Peace on Earth," "Merry Christmas," "Ho Ho Ho," "[w]ords from well known Christmas Carols and Christmas songs," "Boo," "Happy Halloween," "Happy Thanksgiving," "Happy Easter," and "Happy Valentine's Day").

Since – like Christmas, Halloween, Thanksgiving, Easter, and Valentine's Day – birthdays are "festive" occasions for purposes of heading 9505 (*see* section III.C, *supra*), the phrase "Happy Birthday" is similarly a symbol/motif justifying "festive article" classification in appropriate circumstances.

3203), its Big Bird With Banner Pan (item # 2105-3654), its Huggable Teddy Bear Pan (item # 2105-4943), its First and Ten Football Pan (item # 2105-6504), its Sports Ball Pan (item # 2105-6506), and its New Barbie Cake Pan with Facemaker (item # 2105-9815, now item # 2105-8934 and item # 504-8934).

There is, however, nothing about any of those 18 pieces of bakeware that is "closely associated with" birthdays (or, for that matter, any other "festive" occasion).[80]  *See* Park B. Smith,

---

[80]In Nicholson II, AP-97-110 & AP-97-113 (CITT Sept. 2, 1998), the CITT ruled that plastic figurines of characters including "R2-D2," "Simba," and "The Lion King" which were used as decorations for children's birthday cakes were "festive articles" under heading 9505.

In its ruling, the CITT apparently gave great weight to the importer's argument that "traditions are created continuously" and that "characters which are popular this year may be popular for a few years before becoming unpopular and eventually being replaced by other characters."  The CITT wrote:

> [T]he Tribunal agrees that traditions are created continuously.  As a result cake decorations which may be associated with a birthday one year may not necessarily be associated with such an event the following year.  Furthermore, in the Tribunal's view, there are many factors which could influence what cake decorations are traditionally associated with a birthday, for example, religion.  As such, the Tribunal agrees with the [importer's] representative that the use of the word 'traditionally' [in the Explanatory Notes to Heading 9505] cannot stop the goods in issue from being classified in heading No. 95.05.

Nicholson II, AP-97-110 & AP-97-113 (CITT Sept. 2, 1998).  *Cf.* Park B. Smith, 122 F.2d at 1428 ("embrac[ing] the trial court's notion that absent legislative intent to the contrary, the term 'Christmas ornament' [in subheading 9505.10] should be construed to embrace evolving consumer tastes and not be limited to traditional Christmas themes") (citation omitted).

However, Nicholson II provides no support for the proposition that the motifs of the pans at issue here – motifs such as Noah's Ark, a Sports Utility Vehicle, a Choo-Choo Train, Blue's Clues, and Barbie, to name but a few – may be deemed "festive articles" under the law of this country.  Unlike the U.S. courts, the CITT apparently does not limit "festive articles" classification to only those items whose use or display would be "aberrant" at times other than a particular "festive" occasion.  Park B. Smith, 347 F.3d at 927, 929.

347 F.3d at 927 (citation omitted).  Indeed, Wilton sells the pans as either "Novelty Pans" or

"Famous Character" pans, depending on the item.  Moreover, there is nothing whatsoever about any

of the bakeware that would limit its use to birthdays (or to any other "festive" occasion), or that

would render "aberrant" its use on a routine basis throughout the year.  *See* Park B. Smith, 347 F.3d

at 927, 929.[81]

Accordingly, under the criteria articulated by the Court of Appeals in Midwest of Cannon

Falls and Park B. Smith, the Stand-Up Cuddly Bear Pan, the Partysaurus Pan, the Mini Ball Pan, the

Noah's Ark Pan, the Megasaurus Pan, the Enchanted Castle Pan, the Sports Utility Vehicle Pan, the

Choo-Choo Train Pan, the Mini Wonder Mold, the Flower Power Cake Pan, the Blue's Clues Cake

Pan, the A Bug's Life Cake Pan, the Big Bird With Banner Pan, the Huggable Teddy Bear Pan, the

First and Ten Football Pan, the Sports Ball Pan, and the New Barbie Cake Pan with Facemaker

cannot be classified as "festive articles" under HTSUS heading 9505.  All the items were properly

classified by Customs under subheading 7615.19.70, as "Table, kitchen or other household articles

. . . , of aluminum; . . . :  Table, kitchen or other household articles . . . :  Other: Cooking and kitchen

ware: Not enameled or glazed and not containing nonstick interior finishes: Other."

In addition to the bakeware listed above, Wilton identifies another two cake pans as

merchandise associated with birthdays as well other events – the Yearbook Flashback! T-Shirt

---

[81]As discussed in section III.F.4.a above, cookie cutters in the shapes of a rocking horse and a teddy bear are included in Wilton's Christmas Cookie Collection Set, which is classified as a "festive article" under heading 9505.  However, that merchandise is classified in accordance with the "essential character" of the set as a whole, pursuant to GRI 3(b).  *See* GRI 3(b), HTSUS.  As section III.F.4.a notes, rocking horse and teddy bear motifs themselves are not "closely associated with" any "festive" occasion.  Nor would the use of merchandise incorporating such motifs be "aberrant" at any time of the year.

Pan (item # 2105-2347), said to be associated with birthdays, graduations, and "sports cheers," and

the Horseshoe Pan (item # 2105-3254), said to be associated with birthdays, graduations, and "good

luck" parties.  The first item is a pan in the shape of a basic t-shirt, which Wilton depicts decorated

variously as a plain t-shirt, a striped baseball jersey, a football jersey, an infant's "onesie," and a

toddler's overalls-style jumper.  And, as its name suggests, the Horseshoe Pan is a pan in the shape

of a basic horseshoe.

There is, however, nothing about either a t-shirt motif or a horseshoe motif that is "closely

associated with" birthdays, or any other "festive" occasion.  *See* Park B. Smith, 347 F.3d at 927

(citation omitted).  Moreover, there is nothing whatsoever about either piece of bakeware that would

limit its use to birthdays or any other "festive" occasion, or that would render "aberrant" its use on

a routine basis throughout the year.  *See* Park B. Smith, 347 F.3d at 927, 929.  Indeed, the two pans

are sold simply as "Novelty Pans."   Accordingly, under the criteria articulated by the Court of

Appeals in Midwest of Cannon Falls and Park B. Smith, neither the Yearbook Flashback! T-Shirt

Pan nor the Horseshoe Pan is classifiable as a "festive article" under HTSUS heading 9505.  Both

items were properly classified by Customs under subheading 7615.19.70, as "Table, kitchen or other

household articles . . . , of aluminum; . . . :  Table, kitchen or other household articles . . . :  Other:

Cooking and kitchen ware: Not enameled or glazed and not containing nonstick interior finishes:

Other."

## IV.  <u>Conclusion</u>

For all the reasons set forth above, Plaintiff's Motion for Summary Judgment is granted in part and denied in part, and Defendant's Cross-Motion for Summary Judgment is granted in part and denied in part.

Judgment will enter accordingly.


_____
/s/

Delissa A. Ridgway
Judge

Decided:   June 11, 2007
           New York, New York

UNITED STATES COURT OF INTERNATIONAL TRADE

_____

WILTON INDUSTRIES, INC.,   :

        :

     *Plaintiff*,  :

         :  Court No. 00-11-00528

   v.     :

UNITED STATES,    :

         :

     *Defendant*. :

_____:

## **JUDGMENT**

   This action having been duly submitted for decision; and the Court, after due deliberation, having rendered a decision herein;

   NOW, therefore, in conformity with said decision, it is

   ORDERED, ADJUDGED, and DECREED that Plaintiff's Motion for Summary Judgment is granted in part and denied in part; and it is further

   ORDERED, ADJUDGED, and DECREED that Defendant's Cross-Motion for Summary Judgment is granted in part and denied in part; and it is further

   ORDERED, ADJUDGED, and DECREED that the U.S. Customs Service's classification under subheadings 3924.10.20, 3924.10.50, and 3926.90.98 of the Harmonized Tariff Schedule of the United States ("HTSUS") (1999) of the 9" Square Separator Plate (item # 302-1020), the 13" Square Separator Plate (item # 302-1063), the 7" Hexagon Separator Plate (item # 302-1705), the 10" Hexagon Separator Plate (item # 302-1748), the 13" Hexagon Separator Plate (item # 302-1764), the 16" Hexagon Separator Plate (item # 302-1799), the 17" Crystal-Look Separator Plate (item # 302-1810), the 7" Crystal-Look Separator Plate (item # 302-2013), the 9" Crystal-Look Separator

Plate (item # 302-2035), the 11" Crystal-Look Separator Plate (item # 302-2051), the 13" Crystal-Look Separator Plate (item # 302-2078), the 16 ½" Heart Separator Plate (item # 302-2118), the 8 ½" Oval Separator Plate (item # 302-2130), the 11 ½" Oval Separator Plate (item # 302-2131), the 14 ½" Oval Separator Plate (item # 302-2132), the 14" Tier Stand Additional Cake Plate (item # 302-7940), the 16" Tier Stand Additional Cake Plate (item # 302-7967), the 18" Tier Stand Additional Cake Plate (item # 302-7983), the 6" Separator Plate – White (Replacement) (item # 302-9730), the  8" Separator Plate – White (Replacement) (item # 302-9749), the 10" Separator Plate – White (Replacement) (item # 302-9757), the 16" Separator Plate – White (Replacement) (item # 302-9780), the 7" Crystal-Look Spiked Pillars (item # 303-2322), the 9" Crystal-Look Spiked Pillars (item # 303-2324), the 6 ½" Tier Stand Additional Column (item # 303-7910), the 7 3/4" Tier Stand Additional Column (item # 304-5009), the Tall Tier Cake Stand Basic Set (item # 304-7915), and the Glue-On Plate Legs (item # 304-7930) is reversed; and it is further

ORDERED, ADJUDGED, and DECREED that Customs shall reliquidate the 9" Square Separator Plate (item # 302-1020), the 13" Square Separator Plate (item # 302-1063), the 7" Hexagon Separator Plate (item # 302-1705), the 10" Hexagon Separator Plate (item # 302-1748), the 13" Hexagon Separator Plate (item # 302-1764), the 16" Hexagon Separator Plate (item # 302-1799), the 17" Crystal-Look Separator Plate (item # 302-1810), the 7" Crystal-Look Separator Plate (item # 302-2013), the 9" Crystal-Look Separator Plate (item # 302-2035), the 11" Crystal-Look Separator Plate (item # 302-2051), the 13" Crystal-Look Separator Plate (item # 302-2078), the 16 ½" Heart Separator Plate (item # 302-2118), the 8 ½" Oval Separator Plate (item # 302-2130), the 11 ½" Oval Separator Plate (item # 302-2131), the 14 ½" Oval Separator Plate (item # 302-2132), the 14" Tier Stand Additional Cake Plate (item # 302-7940), the 16" Tier Stand Additional Cake

Plate (item # 302-7967), the 18" Tier Stand Additional Cake Plate (item # 302-7983), the 6" Separator Plate – White (Replacement) (item # 302-9730), the 8" Separator Plate – White (Replacement) (item # 302-9749), the 10" Separator Plate – White (Replacement) (item # 302-9757), the 16" Separator Plate – White (Replacement) (item # 302-9780), the 7" Crystal-Look Spiked Pillars (item # 303-2322), the 9" Crystal-Look Spiked Pillars (item # 303-2324), the 6½" Tier Stand Additional Column (item # 303-7910), the 7 3/4" Tier Stand Additional Column (item # 304-5009), the Tall Tier Cake Stand Basic Set (item # 304-7915), and the Glue-On Plate Legs (item # 304-7930) under HTSUS subheading 9505.90.40, duty-free, with all excess duties to be refunded to Plaintiff with interest as provided by law, and judgment is hereby entered for Plaintiff as to those items; and it is further

ORDERED, ADJUDGED, and DECREED that Customs' classification of the Cherub Place Card Holders (item # 1001-9374) under HTSUS subheadings 3924.10.20 and 3926.90.98 is reversed; and it is further

ORDERED, ADJUDGED, and DECREED that Customs shall reliquidate the Cherub Place Card Holders (item # 1001-9374) under HTSUS subheading 9505.90.40, duty-free, with all excess duties to be refunded to Plaintiff with interest as provided by law, and judgment is hereby entered for Plaintiff as to that item; and it is further

ORDERED, ADJUDGED, and DECREED that Customs' classification of the Script Message Press Set (item # 2104-2061), the Block Letter Press Set (item # 2104-2077), and the All-Occasion Script Message Press Set (item # 2104-2090) under Chapter 39 of the HTSUS is reversed; and it is further

ORDERED, ADJUDGED, and DECREED that Customs shall reliquidate the Script Message

-3-

Press Set (item # 2104-2061), the Block Letter Press Set (item # 2104-2077), and the All-Occasion Script Message Press Set (item # 2104-2090) under HTSUS subheading 9505.90.40, duty-free, with all excess duties to be refunded to Plaintiff with interest as provided by law, and judgment is hereby entered for Plaintiff as to those items; and it is further

ORDERED, ADJUDGED, and DECREED that Customs' classification of the Snowman Pan (item # 2105-803), the Smiling Santa Pan (item # 2105-3310), and the Poinsettia Pan (item # 2105-3312) under HTSUS subheading 7615.19.70 is reversed; and it is further

ORDERED, ADJUDGED, and DECREED that Customs shall reliquidate the Snowman Pan (item # 2105-803), the Smiling Santa Pan (item # 2105-3310), and the Poinsettia Pan (item # 2105-3312) under HTSUS subheading 9505.10.50, duty-free, with all excess duties to be refunded to Plaintiff with interest as provided by law, and judgment is hereby entered for Plaintiff as to those items; and it is further

ORDERED, ADJUDGED, and DECREED that Customs' classification of the Christmas Cookie Collection Set (item # 2304-802); the Christmas tree cookie cutters, the Christmas stocking cookie cutters, and the angel cookie cutters from the 144 ct. North Pole Mini Cookie Cutter CDU [Counter Display Unit] (item # 2301-1036); and the Christmas tree cookie stamps and the bells with holly cookie stamps from the 48 ct. Jolly Stamps! Cookie Stamp CDU [Counter Display Unit] (item # 2307-1001) under HTSUS subheading 3924.10.50 is reversed; and it is further

ORDERED, ADJUDGED, and DECREED that Customs shall reliquidate the Christmas Cookie Collection Set (item # 2304-802); the Christmas tree cookie cutters, the Christmas stocking cookie cutters, and the angel cookie cutters from the 144 ct. North Pole Mini Cookie Cutter CDU [Counter Display Unit] (item # 2301-1036); and the Christmas tree cookie stamps and the bells with

holly cookie stamps from the 48 ct. Jolly Stamps! Cookie Stamp CDU [Counter Display Unit] (item # 2307-1001) under HTSUS subheading 9505.10.50, duty-free, with all excess duties to be refunded to Plaintiff with interest as provided by law, and judgment is hereby entered for Plaintiff as to those items; and it is further

ORDERED, ADJUDGED, and DECREED that Customs' classification of the Treeliteful Pan (item # 2105-425) and the Holiday House Pan (item # 2105-3311) under HTSUS subheading 7615.19.70 is sustained, and judgment is hereby entered for Defendant as to those items; and it is further

ORDERED, ADJUDGED, and DECREED that Customs' classification of the Star Nesting Perimeter Cutter Set (item # 2304-111), the Gingerbread Perimeter Cutter Set (item # 2304-121), the snowman and snowflake cookie cutters from the 144 ct. North Pole Mini Cookie Cutter CDU [Counter Display Unit] (item # 2301-1036), the gingerbread man stamps from the 48 ct. Jolly Stamps! Cookie Stamp CDU [Counter Display Unit] (item # 2307-1001), and item # 516-1007 (a Christmas cookie cutter or cookie stamp) under HTSUS subheading 3924.10.50 is sustained, and judgment is hereby entered for Defendant as to those items; and it is further

ORDERED, ADJUDGED, and DECREED that Customs' classification of the Heart Tart Singles! pan (item # 2105-1139), the Heart Pan Set (item # 2105-2131), and the Heart Giant Cookie Pan (item # 2105-6203) under HTSUS subheading 7615.19.70 is sustained, and judgment is hereby entered for Defendant as to those items; and it is further

ORDERED, ADJUDGED, and DECREED that Customs' classification of the Heart Springform Pan (item # 2105-2122) under HTSUS subheading 7323.99.70 is sustained, and judgment is hereby entered for Defendant as to that item; and it is further

-5-

ORDERED, ADJUDGED, and DECREED that Customs' classification of the Heart Comfort Grip [Cookie] Cutter (item # 2310-616) under HTSUS subheading 7323.93.00 is sustained, and judgment is hereby entered for Defendant as to that item; and it is further

ORDERED, ADJUDGED, and DECREED that Customs' classification of the Mini Pumpkin Pan (item # 2105-1499), the Jack-O-Lantern Giant Cookie Pan (item # 2105-6207), and the Monster Party Pan (item # 2105-2039) under HTSUS subheading 7615.19.70 is reversed; and it is further

ORDERED, ADJUDGED, and DECREED that Customs shall reliquidate the Mini Pumpkin Pan (item # 2105-1499), the Jack-O-Lantern Giant Cookie Pan (item # 2105-6207), and the Monster Party Pan (item # 2105-2039) under HTSUS subheading 9505.90.60, duty-free, with all excess duties to be refunded to Plaintiff with interest as provided by law, and judgment is hereby entered for Plaintiff as to those items; and it is further

ORDERED, ADJUDGED, and DECREED that Customs' classification of the Pumpkin Cookie Stamp (item # 2307-1003); the Spider Cookie Stamp (item # 2307-1004); the Bat Cookie Stamp (item # 2307-1005); the Ghost Cookie Stamp (item # 2307-1013); all cookie cutters – that is, the mini cookie cutters in the shapes of a bat, a ghost, two different jack-o-lanterns, and the word "BOO" – in the Halloween Mini [Cookie] Cutter CDU [Counter Display Unit] (96 ct.) (item # 2301-1035); and the Spooky Cookie Cutter Set (item # 2304-9210) under HTSUS subheading 3924.10.50 is reversed; and it is further

ORDERED, ADJUDGED, and DECREED that Customs shall reliquidate the Pumpkin Cookie Stamp (item # 2307-1003); the Spider Cookie Stamp (item # 2307-1004); the Bat Cookie Stamp (item # 2307-1005); the Ghost Cookie Stamp (item # 2307-1013); all cookie cutters in the Halloween Mini [Cookie] Cutter CDU [Counter Display Unit] (96 ct.) (item # 2301-1035); and the

Spooky Cookie Cutter Set (item # 2304-9210) under HTSUS subheading 9505.90.60, duty-free, with all excess duties to be refunded to Plaintiff with interest as provided by law, and judgment is hereby entered for Plaintiff as to those items; and it is further

ORDERED, ADJUDGED, and DECREED that Customs' classification of the Jack-O-Lantern Nesting [Cookie] Cutter Set (item # 2303-191), the Scarecrow Cookie Stamp (item # 2307-1036), the Maple Leaf Cookie Stamp (item # 2307-1037), item # 516-1002 (a cookie cutter or cookie stamp), and item # 2307-1053 (a cookie cutter or a cookie stamp) under HTSUS subheading 3924.10.50 is sustained, and judgment is hereby entered for Defendant as to those items; and it is further

ORDERED, ADJUDGED, and DECREED that Customs' classification of the Pumpkin Pie Pan (item # 2105-3970) under HTSUS subheading 7615.19.70 is sustained, and judgment is hereby entered for Defendant as to that item; and it is further

ORDERED, ADJUDGED, and DECREED that Customs' classification of the Happy Birthday Pan (item # 2105-1073) under HTSUS subheading 7615.19.70 is reversed; and it is further

ORDERED, ADJUDGED, and DECREED that Customs shall reliquidate the Happy Birthday Pan (item # 2105-1073) under HTSUS subheading 9505.90.60, duty-free, with all excess duties to be refunded to Plaintiff with interest as provided by law, and judgment is hereby entered for Plaintiff as to that item; and it is further

ORDERED, ADJUDGED, and DECREED that Customs' classification of the Stand-Up Cuddly Bear Pan (item # 2105-603), the Partysaurus Pan (item # 2105-1280), the Mini Ball Pan (item # 2105-1760), the Noah's Ark Pan (item # 2105-2026), the Megasaurus Pan (item # 2105-2028), the Enchanted Castle Pan (item # 2105-2031), the Sports Utility Vehicle Pan (item # 2105-

2034), the Rocking Horse Pan (item # 2105-2388), the Choo-Choo Train Pan (item # 2105-2861),

the Mini Wonder Mold (item # 2105-3020), the Flower Power Cake Pan (item # 2105-3055), the

Blue's Clues Cake Pan (item # 2105- 3060), the A Bug's Life Cake Pan (item # 2105-3203), the Big

Bird With Banner Pan (item #  2105-3654), the Huggable Teddy Bear Pan (item # 2105-4943), the

First and Ten Football Pan (item # 2105-6504), the Sports Ball Pan (item # 2105-6506), the New

Barbie Cake Pan with Facemaker (item # 2105-9815), the Yearbook Flashback! T-Shirt Pan (item

# 2105-2347), and the Horseshoe Pan (item # 2105-3254) under HTSUS subheading 7615.19.70 is

sustained, and judgment is hereby entered for Defendant as to those items; and it is further

ORDERED, ADJUDGED, and DECREED that Customs shall reliquidate all items listed in

Schedule A to the parties' Stipulation filed in this matter on October 16, 2002, in accordance with

the terms of that Stipulation (a copy of which is attached hereto), with all excess duties to be

refunded to Plaintiff with interest as provided by law.

/s/
_____
Delissa A. Ridgway
Judge

Dated:  June 11, 2007
        New York, New York

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. DELISSA A. RIDGWAY, *JUDGE*

| | | |
|---|---|---|
| WILTON INDUSTRIES, INC. | : | |
| Plaintiff, | : | |
| | : | Court No. 00-11-00528 |
| v. | : | |
| | : | |
| UNITED STATES, | : | |
| | : | |
| Defendant. | : | |

### **STIPULATION**

Plaintiff, Wilton Industries, Inc., and defendant, the United States, through their

respective counsel, stipulate that the merchandise set forth on the attached Schedule A is

correctly classified under the subheadings of Heading 9505 of the Harmonized Tariff Schedules

of the United States stated thereon, free of duty. The parties also agree to the following:

1.     The protests involved here were filed and the action involved here was

commenced within the time provided by law, and all liquidated duties, charges or exactions were

paid prior to the filing of the summons.

2.     At the conclusion of this action, this stipulation will be incorporated into the final

judgment of the Court, and the Port Director of Customs at the Port of Chicago will be directed

to reliquidate the entries containing the stipulable merchandise in accordance with this

stipulation.

3.      All refunds payable by reason of the classification of the articles in the manner set

forth on the attached Schedule A are to be paid with any interest provided for by law.

Respectfully submitted,

By:     _Maria E. Celis_

John M. Peterson
Maria E. Celis
Neville Peterson LLP
80 Broad Street, Suite 3400
New York, NY 10004
Attorneys for Plaintiff, Wilton Industries, Inc.

ROBERT D. McCALLUM, JR.
Assistant Attorney General

By:     _John J. Mahon_

JOHN J. MAHON
Acting Attorney in Charge
International Trade Field Office

By:     _Mikki Graves Walser_

MIKKI GRAVES WALSER
Trial Attorney
Civil Division, Dept. of Justice
Commercial Litigation Branch
26 Federal Plaza
New York, New York 10278
Tel. No. (212) 264-9230 or 9245
Attorneys for Defendant, The United States

Court No. 00-11-00528
Dated: October 16, 2002

Summons: November 21, 2000
Protest No. 3901-00-100665

Wilton Industries, Inc. v. United States, 00-11-00528
Before: Honorable Delissa A. Ridgway, Joined Issue Calendar
## SCHEDULE A

| Vendor | Entry Number | Import Date | Liquidation Date | SKU Number | Product Description | Liquidated Classification | Liquidated Rate | Correct Classification | Correct Rate |
|---|---|---|---|---|---|---|---|---|---|
| Axis | K93-0114897-8 | 1999/06/19 | 2000/04/28 | 2113-1287 | Pumpkin Pix | 3926.90.9880 | 5.3 | 9505.90.60 | 0.0 |
| Axis | K93-0114897-8 | 1999/06/19 | 2000/04/28 | 2113-1287 | Pumpkin Pix | 3926.90.9880 | 5.3 | 9505.90.60 | 0.0 |
| Axis | K93-0116087-4 | 1999/07/21 | 2000/06/02 | 2113-3000 | Pooh Pick | 3926.90.9880 | 5.3 | 9505.90.40 | 0.0 |
| Axis | K93-0116087-4 | 1999/07/21 | 2000/06/02 | 2113-3600 | Mickey Pick | 3926.90.9880 | 5.3 | 9505.90.40 | 0.0 |
| Capital | K93-0113693-2 | 1999/05/14 | 2000/03/24 | 205-2109 | WCFiligree Stairway | 3926.90.9880 | 5.3 | 9505.90.40 | 0.0 |
| Capital | K93-0113693-2 | 1999/05/14 | 2000/03/24 | 205-9292 | WC Stacked Hearts | 3926.90.9880 | 5.3 | 9505.90.40 | 0.0 |
| Capital | K93-0113693-2 | 1999/05/14 | 2000/03/24 | 301-1507 | WC Crystal Sep Set | 3924.10.2000 | 6.5 | 9505.90.40 | 0.0 |
| Capital | K93-0113693-2 | 1999/05/14 | 2000/03/24 | 301-1509 | WC Crystal Sep Set | 3924.10.2000 | 6.5 | 9505.90.40 | 0.0 |
| Capital | K93-0113693-2 | 1999/05/14 | 2000/03/24 | 303-2197 | WC 7" Crystal Pillars | 3924.10.5000 | 3.4 | 9505.90.40 | 0.0 |
| Capital | K93-0113693-2 | 1999/05/14 | 2000/03/24 | 303-3712 | WC 9" Grecian Pillar | 3924.10.5000 | 3.4 | 9505.90.40 | 0.0 |
| Capital | K93-0113931-6 | 1999/05/23 | 2000/04/07 | 201-1450 | WC Base | 3924.10.5000 | 3.4 | 9505.90.40 | 0.0 |
| Capital | K93-0113931-6 | 1999/05/23 | 2000/04/07 | 201-1473 | WC Base | 3924.10.5000 | 3.4 | 9505.90.40 | 0.0 |
| Capital | K93-0113931-6 | 1999/05/23 | 2000/04/07 | 201-1490 | WC Base | 3924.10.5000 | 3.4 | 9505.90.40 | 0.0 |
| Capital | K93-0113931-6 | 1999/05/23 | 2000/04/07 | 201-7331 | WC Base | 3924.10.5000 | 3.4 | 9505.90.40 | 0.0 |
| Capital | K93-0113931-6 | 1999/05/23 | 2000/04/07 | 201-7332 | WC Base | 3926.90.9880 | 5.3 | 9505.90.40 | 0.0 |
| Capital | K93-0113931-6 | 1999/05/23 | 2000/04/07 | 205-1674 | WC Heart | 3926.90.9880 | 5.3 | 9505.90.40 | 0.0 |
| Capital | K93-0113931-6 | 1999/05/23 | 2000/04/07 | 205-1674 | WC Heart | 3924.10.5000 | 3.4 | 9505.90.40 | 0.0 |
| Capital | K93-0113931-6 | 1999/05/23 | 2000/04/07 | 205-2311 | WC Stairway | 3924.10.5000 | 3.4 | 9505.90.40 | 0.0 |
| Capital | K93-0113931-6 | 1999/05/23 | 2000/04/07 | 205-2315 | WC Stairway | 3926.90.9880 | 5.3 | 9505.90.40 | 0.0 |
| Capital | K93-0113931-6 | 1999/05/23 | 2000/04/07 | 205-2315 | WC Stairway | 3926.90.9880 | 5.3 | 9505.90.40 | 0.0 |
| Capital | K93-0113931-6 | 1999/05/23 | 2000/04/07 | 205-9292 | WC Stacked Hearts | 3924.10.5000 | 3.4 | 9505.90.40 | 0.0 |
| Capital | K93-0113931-6 | 1999/05/23 | 2000/04/07 | 301-1509 | WC Separator | 3924.10.2000 | 6.5 | 9505.90.40 | 0.0 |
| Capital | K93-0113931-6 | 1999/05/23 | 2000/04/07 | 303-2197 | WC Pillars | 3924.10.5000 | 3.4 | 9505.90.40 | 0.0 |
| Capital | K93-0113931-6 | 1999/05/23 | 2000/04/07 | 303-3710 | WC Pillars | 3924.10.5000 | 3.4 | 9505.90.40 | 0.0 |
| Capital | K93-0114373-0 | 1999/06/03 | 2000/04/14 | 201-1473 | WC Crystal Base | 3926.90.9880 | 5.3 | 9505.90.40 | 0.0 |
| Capital | K93-0114373-0 | 1999/06/03 | 2000/04/14 | 201-7332 | WC Romantic Base | 3926.90.9880 | 5.3 | 9505.90.40 | 0.0 |
| Capital | K93-0114373-0 | 1999/06/03 | 2000/04/14 | 303-3712 | WC 9" Grecian Pillar | 3924.10.5000 | 3.4 | 9505.90.40 | 0.0 |

Stipulation

Summons: November 21, 2000
Protest No. 3901-00-100665

Wilton Industries, Inc. v. United States, 00-11-00528
Before: Honorable Delissa A. Ridgway, Joined Issue Calendar

## SCHEDULE A

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Capital | K93-0114622-0 | 1999/06/08 | 205-1218 | WCFiligree Stairway | 5.3 | 9505.90.40 | 0.0 |
| Capital | K93-0114622-0 | 1999/06/08 | 205-2109 | WCFiligree Bridge & S | 5.3 | 9505.90.40 | 0.0 |
| Capital | K93-0114622-0 | 1999/06/08 | 301-1513 | WC13"RoundCrysSep | 6.5 | 9505.90.40 | 0.0 |
| | | | | | | | |
| Capital | K93-0114673-3 | 1999/06/08 | 201-1490 | WC Crystal Lk Base | 5.3 | 9505.90.40 | 0.0 |
| Capital | K93-0114673-3 | 1999/06/08 | 201-1490 | WC Crystal Lk Base | 5.3 | 9505.90.40 | 0.0 |
| Capital | K93-0114673-3 | 1999/06/08 | 205-1218 | WCFiligree Stairway | 5.3 | 9505.90.40 | 0.0 |
| Capital | K93-0114673-3 | 1999/06/08 | 205-1674 | WC5 1/2" Heart | 5.3 | 9505.90.40 | 0.0 |
| Capital | K93-0114673-3 | 1999/06/08 | 205-2311 | WCCrystal Bridge/Sta | 5.3 | 9505.90.40 | 0.0 |
| Capital | K93-0114673-3 | 1999/06/08 | 205-9292 | WC Stacked Hearts | 5.3 | 9505.90.40 | 0.0 |
| Capital | K93-0114673-3 | 1999/06/08 | 2103-1139 | WC Carousel SepSet | 6.5 | 9505.90.40 | 0.0 |
| Capital | K93-0114673-3 | 1999/06/08 | 301-1507 | WC 7" Round CrysSep | 6.5 | 9505.90.40 | 0.0 |
| Capital | K93-0114673-3 | 1999/06/08 | 303-2196 | WC 5" Crystal Pillar | 3.4 | 9505.90.40 | 0.0 |
| Capital | K93-0114673-3 | 1999/06/08 | 303-3712 | WC 7" Grecian Pillar | 3.4 | 9505.90.40 | 0.0 |
| Capital | K93-0114673-3 | 1999/06/08 | 303-3712 | WC 9" Grecian Pillar | 3.4 | 9505.90.40 | 0.0 |
| | | | | | | | |
| Capital | K93-0114983-6 | 1999/06/25 | 303-2171 | WC 3" Crystal Pillar | 3.4 | 9505.90.40 | 0.0 |
| Capital | K93-0114983-6 | 1999/06/25 | 303-2196 | WC 5" Crystal Pillar | 3.4 | 9505.90.40 | 0.0 |
| Capital | K93-0114983-6 | 1999/06/25 | 303-2197 | WC Pillars | 3.4 | 9505.90.40 | 0.0 |
| | | | | | | | |
| Capital | K93-0115253-3 | 1999/07/01 | 205-2109 | WCFiligree Bridge & S | 5.3 | 9505.90.40 | 0.0 |
| Capital | K93-0115253-3 | 1999/07/01 | 2103-1139 | WC Carousel SepSet | 3.4 | 9505.90.40 | 0.0 |
| Capital | K93-0115253-3 | 1999/07/01 | 301-1507 | WC11" RoundCrysSep | 6.5 | 9505.90.40 | 0.0 |
| | | | | | | | |
| Capital | K93-0115479-4 | 1999/07/08 | 201-1450 | WC Base | 5.3 | 9505.90.40 | 0.0 |
| Capital | K93-0115479-4 | 1999/07/08 | 201-1473 | WCBase | 5.3 | 9505.90.40 | 0.0 |
| Capital | K93-0115479-4 | 1999/07/08 | 201-7331 | WC Heart Base | 5.3 | 9505.90.40 | 0.0 |
| Capital | K93-0115479-4 | 1999/07/08 | 201-7331 | WC Heart Base | 5.3 | 9505.90.40 | 0.0 |
| Capital | K93-0115479-4 | 1999/07/08 | 201-7332 | WC Romantic Base | 5.3 | 9505.90.40 | 0.0 |
| Capital | K93-0115479-4 | 1999/07/08 | 205-1006 | Seed Pearl Heart | 5.3 | 9505.90.40 | 0.0 |
| Capital | K93-0115479-4 | 1999/07/08 | 205-1006 | Seed Pearl Heart | 5.3 | 9505.90.40 | 0.0 |
| Capital | K93-0115479-4 | 1999/07/08 | 205-1218 | WCFiligree Stairway | 5.3 | 9505.90.40 | 0.0 |
| Capital | K93-0115479-4 | 1999/07/08 | 205-1218 | WCFiligree Stairway | 5.3 | 9505.90.40 | 0.0 |
| Capital | K93-0115479-4 | 1999/07/08 | 301-1507 | 7"Crystal Sep | 6.5 | 9505.90.40 | 0.0 |
| Capital | K93-0115479-4 | 1999/07/08 | 301-1509 | WC9"Crystal Sep | 6.5 | 9505.90.40 | 0.0 |
| | | | | | | | |
| Capital | K93-0115801-9 | 1999/07/15 | 1007-9088 | WC 1 7/8" Glitter Bells | 5.3 | 9505.90.40 | 0.0 |

Stipulation

2

Summons: November 21, 2000
Protest No. 3901-00-100665

**Wilton Industries, Inc. v. United States, 00-11-00528**
**Before: Honorable Delissa A. Ridgway, Joined Issue Calendar**
**SCHEDULE A**

3

| Company | Entry No. | Date | Date | Item No. | Description | HTS | Rate | HTS | Rate |
|---|---|---|---|---|---|---|---|---|---|
| Capital | K93-0115801-9 | 1999/07/15 | 2000/05/26 | 205-1673 | WC Heart | 3926.90.9880 | 5.3 | 9505.90.4000 | 0.0 |
| Capital | K93-0115801-9 | 1999/07/15 | 2000/05/26 | 205-1674 | WC Crystal Heart | 3926.90.9880 | 5.3 | 9505.90.4000 | 0.0 |
| Capital | K93-0115801-9 | 1999/07/15 | 2000/05/26 | 205-2109 | WCFilligree Bridge & S | 3926.90.9880 | 5.3 | 9505.90.4000 | 0.0 |
| Capital | K93-0115801-9 | 1999/07/15 | 2000/05/26 | 205-9292 | WC Stacked Hearts | 3926.90.9880 | 5.3 | 9505.90.4000 | 0.0 |
| Capital | K93-0115801-9 | 1999/07/15 | 2000/05/26 | 303-2196 | WC 5" Crystal Pillar | 3924.10.5000 | 3.4 | 9505.90.4000 | 0.0 |
| Capital | K93-0115801-9 | 1999/07/15 | 2000/05/26 | 303-3710 | WC7" Grecian Pillar | 3924.10.5000 | 3.4 | 9505.90.4000 | 0.0 |
| Ho Cheong | K93-0113588-4 | 1999/04/12 | 2000/03/24 | 202-314 | Cross Ornament | 3926.90.9880 | 5.3 | 9505.90.4000 | 0.0 |
| Ho Cheong | K93-0113588-4 | 1999/04/12 | 2000/03/24 | 202-314 | Cross Ornament | 3926.90.9880 | 5.3 | 9505.90.4000 | 0.0 |
| King's Flair | K93-0114003-3 | 1999/05/13 | 2000/03/24 | 2113-1801 | Cake Topper | 3926.90.9880 | 5.3 | 9505.90.4000 | 0.0 |
| Oscar | K93-0114642-8 | 1999/06/02 | 2000/04/14 | 201-7846 | Petite Base | 3926.90.9880 | 5.3 | 9505.90.4000 | 0.0 |
| Oscar | K93-0114642-8 | 1999/06/02 | 2000/04/14 | 201-7846 | Petite Base | 3926.90.9880 | 5.3 | 9505.90.4000 | 0.0 |
| Oscar | K93-0114980-2 | 1999/06/16 | 2000/04/28 | 201-1815 | Floral Base | 3926.90.9880 | 5.3 | 9505.90.4000 | 0.0 |
| Oscar | K93-0115335-8 | 1999/06/30 | 2000/05/12 | 201-7847 | Petite Base | 3926.90.9880 | 5.3 | 9505.90.4000 | 0.0 |
| Oscar | K93-0115335-8 | 1999/06/30 | 2000/05/12 | 2113-2366 | Balloon Topper | 3926.90.9880 | 5.3 | 9505.90.4000 | 0.0 |
| Union | K93-0113715-3 | 1999/05/07 | 2000/03/17 | 201-304 | WCscroll base-Ivory | 3926.90.9880 | 5.3 | 9505.90.4000 | 0.0 |
| Union | K93-0113715-3 | 1999/05/07 | 2000/03/17 | 201-305 | WCscroll base-Ivory | 3926.90.9880 | 5.3 | 9505.90.4000 | 0.0 |
| Union | K93-0113715-3 | 1999/05/07 | 2000/03/17 | 205-1323 | WCclear curved panel | 3926.90.9880 | 5.3 | 9505.90.4000 | 0.0 |
| Union | K93-0113715-3 | 1999/05/07 | 2000/03/17 | 301-1387 | WC17" crystal look tie | 3924.10.2000 | 6.5 | 9505.90.4000 | 0.0 |
| Union | K93-0113715-3 | 1999/05/07 | 2000/03/17 | 301-809 | WCclown seperator se | 3924.10.2000 | 6.5 | 9505.90.4000 | 0.0 |
| Union | K93-0114087-6 | 1999/05/04 | 2000/03/24 | 201-1303 | WCscroll base | 3926.90.9880 | 5.3 | 9505.90.4000 | 0.0 |
| Union | K93-0114087-6 | 1999/05/04 | 2000/03/24 | 303-2129 | WC13-3/4" Roman pill | 3924.10.5000 | 3.4 | 9505.90.4000 | 0.0 |
| Union | K93-0114087-6 | 1999/05/04 | 2000/03/24 | 303-2151 | WC5" lattice column | 3924.10.5000 | 3.4 | 9505.90.4000 | 0.0 |
| Union | K93-0114087-6 | 1999/05/04 | 2000/03/24 | 303-452 | WC4-1/2" arched pillar | 3924.10.5000 | 3.4 | 9505.90.4000 | 0.0 |
| Union | K93-0114087-6 | 1999/05/04 | 2000/03/24 | 303-657 | WC8-1/2" arched pillar | 3924.10.5000 | 3.4 | 9505.90.4000 | 0.0 |
| Union | K93-0114087-6 | 1999/05/04 | 2000/03/24 | 303-8136 | WC10-1/4" Roman pill | 3924.10.5000 | 3.4 | 9505.90.4000 | 0.0 |
| Union | K93-0114087-6 | 1999/05/04 | 2000/03/24 | 303-9719 | WCarched Roman pill | 3924.10.5000 | 3.4 | 9505.90.4000 | 0.0 |
| Union | K93-0114087-6 | 1999/05/04 | 2000/03/24 | 303-9720 | WC13" arched Romar | 3924.10.5000 | 3.4 | 9505.90.4000 | 0.0 |
| Union | K93-0114087-6 | 1999/05/04 | 2000/03/24 | 303-9794 | WC7-1/2" legs | 3924.10.5000 | 3.4 | 9505.90.6000 | 0.0 |
| Union | K93-0114416-3 | 1999/05/26 | 2000/04/07 | 1001-9439 | WCfilligree bell 2-3/4" | 3926.90.9880 | 5.3 | 9505.90.4000 | 0.0 |

Stipulation

Summons: November 21, 2000
Protest No. 3901-00-100665

4

**Wilton Industries, Inc. v. United States, 00-11-00528**
Before: Honorable Delissa A. Ridgway, Joined Issue Calendar

## SCHEDULE A

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Union | K93-0114418-3 | 1999/05/26 | 2000/04/07 | 1102-7750 | WC Anniv 25th | 3926.90.9880 | 5.3 | 9505.90.40 | 0.0 |
| Union | K93-0114418-3 | 1999/05/26 | 2000/04/07 | 1004-2801 | WCmedium scroll | 3926.90.9880 | 5.3 | 9505.90.40 | 0.0 |
| Union | K93-0114418-3 | 1999/05/26 | 2000/04/07 | 1007-9061 | WC1-3/4" glitter lace b | 3926.90.9880 | 5.3 | 9505.90.40 | 0.0 |
| Union | K93-0114418-3 | 1999/05/26 | 2000/04/07 | 1102-7750 | WC Anniv 25th | 3926.90.9880 | 5.3 | 9505.90.40 | 0.0 |
| Union | K93-0114418-3 | 1999/05/26 | 2000/04/07 | 201-1007 | WC Double Ring Set | 3926.90.9880 | 5.3 | 9505.90.40 | 0.0 |
| Union | K93-0114418-3 | 1999/05/26 | 2000/04/07 | 201-1303 | WCscroll base | 3926.90.9880 | 5.3 | 9505.90.40 | 0.0 |
| Union | K93-0114418-3 | 1999/05/26 | 2000/04/07 | 201-1546 | WC Curved Panel Bas | 3926.90.9880 | 5.3 | 9505.90.40 | 0.0 |
| Union | K93-0114418-3 | 1999/05/26 | 2000/04/07 | 303-2129 | WC13-3/4" Roman pill | 3924.10.5000 | 3.4 | 9505.90.40 | 0.0 |
| Union | K93-0114418-3 | 1999/05/26 | 2000/04/07 | 303-452 | WC4-1/2" arched pilla | 3924.10.5000 | 3.4 | 9505.90.40 | 0.0 |
| Union | K93-0114418-3 | 1999/05/26 | 2000/04/07 | 303-7725 | WC4" swan pillar | 3924.10.5000 | 3.4 | 9505.90.40 | 0.0 |
| Union | K93-0114418-3 | 1999/05/26 | 2000/04/07 | 303-9794 | WC7-1/2" legs | 3924.10.5000 | 3.4 | 9505.90.40 | 0.0 |
| Union | K93-0114942-2 | 1999/06/10 | 2000/04/21 | 1004-2801 | WCmedium scroll | 3926.90.9880 | 5.3 | 9505.90.40 | 0.0 |
| Union | K93-0114942-2 | 1999/06/10 | 2000/04/21 | 201-1007 | WC Double Ring Set | 3926.90.9880 | 5.3 | 9505.90.40 | 0.0 |
| Union | K93-0114942-2 | 1999/06/10 | 2000/04/21 | 201-1007 | WC Double Ring Set | 3926.90.9880 | 5.3 | 9505.90.40 | 0.0 |
| Union | K93-0114942-2 | 1999/06/10 | 2000/04/21 | 201-1546 | WC Curved Panel Bas | 3924.10.5000 | 3.4 | 9505.90.40 | 0.0 |
| Union | K93-0114942-2 | 1999/06/10 | 2000/04/21 | 205-1528 | WC4"heart filigree | 3924.10.5000 | 3.4 | 9505.90.40 | 0.0 |
| Union | K93-0114942-2 | 1999/06/10 | 2000/04/21 | 301-9450 | WCtier separator set | 3924.10.2000 | 6.5 | 9505.90.40 | 0.0 |
| Union | K93-0114942-2 | 1999/06/10 | 2000/04/21 | 303-2131 | WC3" lattice column | 3924.10.5000 | 3.4 | 9505.90.40 | 0.0 |
| Union | K93-0114942-2 | 1999/06/10 | 2000/04/21 | 303-657 | WC6-1/2" arched pilla | 3924.10.5000 | 3.4 | 9505.90.40 | 0.0 |
| Union | K93-0115074-3 | 1999/06/17 | 2000/04/28 | 1004-2100 | WCvertical filigree | 3924.10.5000 | 3.4 | 9505.90.40 | 0.0 |
| Union | K93-0115074-3 | 1999/06/17 | 2000/04/28 | 205-1323 | WC Curved Base | 3926.90.9880 | 5.3 | 9505.90.40 | 0.0 |
| Union | K93-0115074-3 | 1999/06/17 | 2000/04/28 | 301-3517 | WCharvest cherub se | 3924.10.2000 | 6.5 | 9505.90.40 | 0.0 |
| Union | K93-0115074-3 | 1999/06/17 | 2000/04/28 | 301-909 | WC Clown Sep Set | 3924.10.2000 | 6.5 | 9505.90.40 | 0.0 |
| Union | K93-0115074-3 | 1999/06/17 | 2000/04/28 | 303-1982 | WC 6 arched pillar/6 c | 3924.10.5000 | 3.4 | 9505.90.40 | 0.0 |
| Union | K93-0115965-2 | 1999/07/15 | 2000/05/26 | 1001-9421 | WCfiligree bell 2" | 3926.90.9880 | 5.3 | 9505.90.40 | 0.0 |
| Union | K93-0115965-2 | 1999/07/15 | 2000/05/26 | 1007-9109 | WC5" glitter lace bell | 3926.90.9880 | 5.3 | 9505.90.40 | 0.0 |
| Union | K93-0115965-2 | 1999/07/15 | 2000/05/26 | 201-1007 | WC Double Wed Ring | 3926.90.9880 | 5.3 | 9505.90.40 | 0.0 |
| Union | K93-0115965-2 | 1999/07/15 | 2000/05/26 | 201-1546 | WC Curved Base | 3926.90.9880 | 5.3 | 9505.90.40 | 0.0 |
| Union | K93-0115965-2 | 1999/07/15 | 2000/05/26 | 205-1501 | WC7" heart filigree | 3924.10.5000 | 3.4 | 9505.90.40 | 0.0 |
| Union | K93-0115965-2 | 1999/07/15 | 2000/05/26 | 205-8298 | WCpetite garden hous | 3924.10.5000 | 3.4 | 9505.90.40 | 0.0 |
| Union | K93-0115965-2 | 1999/07/15 | 2000/05/26 | 205-8298 | WCpetite garden hous | 3924.10.5000 | 3.4 | 9505.90.40 | 0.0 |
| Union | K93-0115965-2 | 1999/07/15 | 2000/05/26 | 2815-101 | Teen Doll Pick | 3924.10.5000 | 3.4 | 9505.90.40 | 0.0 |
| Union | K93-0115965-2 | 1999/07/15 | 2000/05/26 | 303-2151 | WC5" lattice column | 3924.10.5000 | 3.4 | 9505.90.40 | 0.0 |
| Union | K93-0115965-2 | 1999/07/15 | 2000/05/26 | 303-657 | WC6-1/2" arched pilla | 3924.10.5000 | 3.4 | 9505.90.40 | 0.0 |

Stipulation

Summons: November 21, 2000
Protest No. 3901-00-100665

Wilton Industries, Inc. v. United States, 00-11-00528
Before: Honorable Delissa A. Ridgway, Joined Issue Calendar
SCHEDULE A

| Union | K93-0115865-2 | 1999/07/15 | 2000/05/26 | 303-9720 | WC13"arched pillar | 3924.10.5000 | 3.4 | 9505.90.40 | 0.0 |

Stipulation

5

## NOTICE OF ENTRY AND SERVICE

This is a notice that an order or judgment was entered in the docket of this action, and was served upon the parties on the date shown below.

Service was made by depositing a copy of this order or judgment, together with any papers required by USCIT Rule 79(c), in a securely closed envelope, proper postage attached, in a United States mail receptacle at One Federal Plaza, New York, New York 10278 and addressed to the attorney of record for each party at the address on the official docket in this action, except that service upon the United States was made by personally delivering a copy to the Attorney-In-Charge, International Trade Field Office, Civil Division, United States Department of Justice, 26 Federal Plaza, New York, New York 10278 or to a clerical employee designated, by the Attorney-In-Charge in a writing filed with the clerk of the court.

or

Service was made electronically, by the Court's CM/ECF system, upon those parties that have filed a Notice of Consent to Electronic Service.

Tina Potuto Kimble
Clerk of the Court

Date: _____     By: _____
                                          Deputy Clerk